Marc Toberoff (CA State Bar No. 188547)
   *mtoberoff@toberoffandassociates.com*
Douglas Fretty (CA State Bar No. 279829)
   *dfretty@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Attorneys for Plaintiffs Deanna Brown-Thomas, Yamma Brown,
Venisha Brown, Michael D. Brown, Nicole C. Brown, Jeanette Mitchell
Bellinger, Sarah LaTonya Fegan, Ciara Pettit and Cherquarius Williams

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA BROWN-THOMAS, an individual; YAMMA BROWN, an individual; VENISHA BROWN, an individual; MICHAEL D. BROWN, an individual; NICOLE C. BROWN, an individual; JEANETTE MITCHELL BELLINGER, an individual; SARAH LATONYA FEGAN, an individual; CIARA PETTIT, an individual; and CHERQUARIUS WILLIAMS, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> TOMMIE RAE HYNIE a.k.a. TOMMIE RAE BROWN, an individual; JAMES J. BROWN II, an individual; RUSSELL L. BAUKNIGHT, as the Personal Representative of the Estate of James Brown and Trustee of The James Brown "I Feel Good" Trust; DAVID C. SOJOURNER, JR., as the Limited Special Administrator of the Estate of James Brown and Limited Special Trustee of The James Brown "I Feel Good" Trust; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 2:18-CV-00307 <br><br> **COMPLAINT FOR**: <br><br> [1]  DECLARATORTY RELIEF (28 U.S.C. § 2201); <br> [2] ACCOUNTING; <br> [3] CONVERSION; <br> [4] UNJUST ENRICHMENT; <br> [5] INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; <br> [6] NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; <br> [7] VIOLATION OF CALIFORNIA BUS. AND PROF. CODE §§ 17200 *ET SEQ.* and §§ 17500 *ET SEQ*; and CALIFORNIA COMMON LAW UNFAIR COMPETITION <br><br> **DEMAND FOR JURY TRIAL** |

---

COMPLAINT

Plaintiffs Deanna Brown-Thomas, Yamma Brown, Venisha Brown, Michael D. Brown, Nicole C. Brown, Jeanette Mitchell Bellinger, Sarah LaTonya Fegan, Ciara Pettit and Cherquarius Williams (hereinafter, the "Plaintiffs"), by and through their attorneys of record, hereby allege as follows:

### JURISDICTION AND VENUE

1.     This is a civil action for declaratory and injunctive relief under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.* (hereinafter, "the Copyright Act"), for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and for related state-law claims.

2.     This Court has original subject matter jurisdiction over the claims set forth in this complaint pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq.*, 28 U.S.C. §§ 1331, 1332, and 1338(a) and (b), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

3.     This Court has supplemental jurisdiction over the related state claims herein pursuant to 28 U.S.C. § 1367(a) in that these claims form part of the same case and controversy as the federal claims herein.

4.     This Court has personal jurisdiction over the defendants in that defendants are regularly doing business in the State of California and in this district, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

5.     Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(a) because a substantial part of the events and the wrongful conduct giving rise to this action occurred in this district, upon information and belief Defendants TOMMIE RAE HYNIE and her son JAMES BROWN II maintain residences in this district, and all Defendants are otherwise subject to this Court's personal jurisdiction with respect to this action.

6.     The federal termination rights and interests under the Copyright

1   Act, 17 U.S.C. §§ 304 (c) and 203(a), and the proceeds therefrom, at issue in this

2   action are not the subject of the probate and other proceedings in South Carolina

3   regarding Brown's will and trust, or of any other past or pending proceeding.

4                          **NATURE OF THE ACTION**

5          7.      The legendary singer-songwriter James Joseph Brown a.k.a. James

6   Brown (hereinafter "Brown") died on Christmas Day, December 25, 2006.

7   Defendant TOMMIE RAE HYNIE (hereinafter, "HYNIE"), his estranged

8   purported wife, from a notoriously bigamous marriage, was not named as a

9   beneficiary in Brown's will, to no one's surprise. Nor was her son, whom she

10  conspicuously named JAMES JOSEPH BROWN II (hereinafter "JAMES II").

11  HYNIE therefore embarked on a series of duplicitous business machinations

12  calculated to (i) deprive Brown's children of their rightful interests in Brown's

13  music under the Copyright Act and (ii) divert the financial proceeds from such

14  interests to herself, in violation of the Copyright Act and state common law.

15  Each of these wrongful acts by Defendants threatens irreparable harm to

16  Brown's family, and must be swiftly brought to an end.

17         8.      Plaintiffs are Brown's biological children, and as to two deceased

18  children, grandchildren, and, as such, qualify as Brown's statutory heirs under

19  the Copyright Act.

20         9.      Defendant HYNIE claims to be Brown's surviving spouse, despite

21  having concealed from Brown that she was, in fact, married to another man

22  when she married Brown. Nonetheless, HYNIE, in an unrelated South Carolina

23  probate action challenging Brown's will and trust, somehow obtained a spousal

24  ruling in her favor. In that action, JAMES II was also perfunctorily declared to

25  be Brown's biological child, despite widespread skepticism.

26         10.     For purposes of this copyright action, however, Plaintiffs assume

27  and in no way seek to re-litigate HYNIE's and JAMES II's purported status as

28  Brown's surviving spouse and child, respectively, though this is unsupported by

the facts or law, and Plaintiffs otherwise reserve all rights, defenses and remedies as to these issues.

11.    As Brown's alleged widow and child, HYNIE and JAMES II purport to constitute a majority of Brown's statutory heirs under the U.S. Copyright Act, and, as such, to allegedly control Brown's "termination rights" under Sections 304(c)(1) and 203(a) of the Copyright Act, regarding the copyrights to hundreds of valuable musical compositions authored or co-authored by Brown (hereinafter, the "Composition(s)").

12.    The termination interest is without doubt *the* most important interest under the Copyright Act, after copyright itself. Pursuant to the Act, the termination interest belongs to the author, and upon the author's death to his statutorily defined heirs, principally his surviving spouse, children, and, in the case of any deceased child, grandchildren. 17 U.S.C. §§ 304 and 203. Thus, notwithstanding HYNIE's alleged spousal status, Brown's children and his grandchildren (in the case of two deceased children), most of whom constitute Plaintiffs, are entitled to an undivided *50% of the copyright termination interests in the Compositions*, 17 U.S.C. §§ 304(c)(2)(B), 203(a)(2)(B). In turn, HYNIE and JAMES II have an absolute concomitant duty under state common law to account to these co-owners for *50% of all proceeds from Brown's termination interests*.

13.    In violation of the Copyright Act and their common-law duties, HYNIE and JAMES II have conspired with the other Defendants (the personal representative and trustee and the limited special administrator and special trustee of Brown's estate and trust, respectively) to usurp Plaintiffs' rights and interests in Brown's Compositions, and to divert for Defendants' sole benefit the financial proceeds they are obligated to share with Plaintiffs. Plaintiffs are informed and believe and based thereon allege that, among other brazen conduct, Defendants have concealed illegal back-room agreements deliberately

designed to destroy, circumvent and/or dilute Plaintiffs' interests. Defendants'

illicit trafficking in the termination interests violates the Copyright Act and the

strong legislative policies behind its termination provisions. Decisive Court

intervention is needed to prevent Defendants from destroying Plaintiffs'

valuable copyright interests in the Compositions, and their state common-law

rights to an allocate share of the proceeds derived therefrom.

## PARTIES

14.    Plaintiff DEANNA BROWN THOMAS is the biological daughter

of James Brown, and is an individual and citizen of, and resides in, the State of

South Carolina, in the County of Aiken, and is and at all times has been a citizen

of the United States.

15.    Plaintiff YAMMA BROWN is the biological daughter of James

Brown, and is an individual and citizen of, and resides in, the State of Georgia,

in the County of Cobb, and is and at all times has been a citizen of the United

States.

16.    Plaintiff VENISHA BROWN is the biological daughter of James

Brown, and is an individual and citizen of, and resides in, the State of South

Carolina, in the County of Aiken, and is and at all times has been a citizen of the

United States.

17.    Plaintiff MICHAEL D. BROWN is the biological son of James

Brown, and is an individual and citizen of, and resides in, the State of California,

in the County of Sacramento, and is and at all times has been a citizen of the

United States.

18.    Plaintiff NICOLE C. BROWN is the biological daughter of James

Brown, and is an individual and citizen of, and resides in, Vancouver, British

Columbia and is and at all times has been a citizen of Canada.

19.    Plaintiff JEANETTE MITCHELL BELLINGER is the biological

daughter of James Brown, and is an individual and citizen of, and resides in, the

State of Georgia in the County of Richmond, and is and at all times has been a citizen of the United States.

20.    Plaintiff SARAH LATONYA FEGAN is the biological granddaughter of James Brown, and is an individual and citizen of, and resides in, the State of Georgia in the County of Richmond, and is and at all times has been a citizen of the United States.

21.    Plaintiff CIARA PETTIT is the biological granddaughter of James Brown, and is an individual and citizen of, and resides in, the State of Texas, in the County of Harris, and is and at all times has been a citizen of the United States.

22.    Plaintiff CHERQUARIUS WILLIAMS is the biological granddaughter of James Brown, is an individual and citizen of, and resides in, the State of Texas, in the County of Harris, and is and at all times has been a citizen of the United States.

23.    Plaintiffs are informed and believe and based thereon allege that Defendant HYNIE is an individual and citizen of, and resides or until recently resided in, the State of California, in the County of Los Angeles, and is and at all times has been a citizen of the United States.

24.    Plaintiffs are informed and believe and based thereon allege that Defendant JAMES J. BROWN II is HYNIE's son (currently, age 16), and is an individual and citizen of, and resides or until recently resided in, the State of California, in the County of Los Angeles, and is and at all times has been a citizen of the United States.

25.    Plaintiffs are informed and believe and based thereon allege that Defendant RUSSELL L. BAUKNIGHT is the Personal Representative of the Estate of James Brown a.k.a. James Joseph Brown (hereinafter, the Estate"), and the Trustee of the James Brown Irrevocable Trust, u/a/d August 1, 2000 (hereinafter, the "Trust") (hereinafter, Mr. Bauknight is referred to in both

capacities as the "Personal Representative").

26.     Plaintiffs are informed and believe and based thereon allege that Defendant DAVID C. SOJOURNER, JR. is the Limited Special Administrator of the Estate, and the Limited Special Trustee of the Trust (hereinafter Mr. Sojourner is referred to in both capacities as the "LSA"), appointed in October, 2013 to defend the Estate and Trust against numerous claims *by HYNIE*. (The LSA and the Personal Representative are hereinafter collectively referred to as the "Estate and Trust Fiduciaries.")

27.     Plaintiffs are informed and believe and based thereon allege that the fictitiously named Defendants captioned hereinabove as Does 1 through 10, inclusive, and each of them (hereinafter "DOE(S)") were in some manner responsible or legally liable for the actions, damages, events, transactions, and circumstances alleged herein. The true names and capacities of such fictitiously named defendants, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiffs, and Plaintiffs will amend this Complaint to assert the true names and capacities of such fictitiously named Defendants when the same have been ascertained. For convenience, each reference herein to a named Defendant or to Defendants shall also refer to the Doe Defendants and each of them.

28.     Plaintiffs are informed and believe and based thereon allege that each of the Defendants was the agent, partner, servant, employee, or employer of each of the other Defendants herein, and that at all times herein mentioned, each of the Defendants was acting within the course and scope of such employment, partnership and/or agency and that each of the Defendants is jointly and severally responsible for the damages hereinafter alleged.

//

//

//

**STATUTORY BACKGROUND**

29.    James Brown was not only a talented singer and performer; he was a prolific songwriter, authoring or co-authoring approximately nine hundred (900) musical Compositions. Plaintiffs are informed and believe and based thereon allege that Brown long ago assigned the copyrights to most of his Compositions to various music publishers of which Warner-Chappell Music, Inc. is the principal successor.

30.    The U.S. Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. (the "Copyright Act" or "Act"), provides an author and certain statutorily defined heirs of the author (principally, the surviving spouse, children and, in the case of a deceased child, grandchildren) with the inalienable right to recapture the copyright to the author's creative material, after a lengthy waiting period, by statutorily terminating without cause prior transfer(s) of such copyright, so long as the proscribed statutory notice of termination is served on the prior grantee or successor grantee and filed with the U.S. Copyright Office, within delineated time windows.

31.    Section 304(c) of the Copyright Act provides for the termination of pre-1978 transfers of copyright or rights under copyright by the author or author's heirs during a five (5) year period, commencing fifty-six (56) years after the date a work first secured a statutory copyright by registration or publication. 17 U.S.C. § 304(c)(3). Section 203(a) of the Copyright Act provides for the termination of post-1977 transfers of copyright or rights under copyright by the author during a five (5) year period commencing thirty-five (35) years after the date the subject copyright or rights under copyright were transferred. *Id*. § 203(a)(3). In every case, the requisite notice of termination must spell out the "effective date" of termination, within the five-year termination "window," when the previously transferred copyright or rights under copyright will be recaptured by the author or his statutory heirs.

32.    Congress carefully limited the class of persons who can exercise termination rights. If living, the author alone can exercise termination rights. If the author is deceased, the termination rights are shared by the author's surviving spouse, children, and, in the case of any deceased child, grandchildren. *Id*. §§ 304(c)(1)-(2), 203(a)(1)-(2). Importantly, an author's testamentary intent and will are irrelevant to the operation of the Copyright Act's termination provisions and to the rights and interests of the author's *statutory heirs* as designated by the Act.

33.    If an author is survived by a spouse and children, the surviving spouse is deemed to own 50% of the termination interest, and the author's surviving children, and the grandchild(ren) of any deceased child, own collectively the other 50% of the termination interest on a *per stirpes* basis. *Id*. §§ 304(c)(2)(A)-(C), 203(a)(2)(A)-(C). Notably, the termination right can only be exercised by those persons that collectively own more than one-half of the termination interest. *Id*. §§ 304(c)(1), 203(a).

34.    The copyright interests in a work recaptured via statutory termination are *co-owned* by the statutory heirs in the same proportion as their share of the termination interests set forth above, *id*. §§ 304(c)(6), 203(b), and such co-ownership interest vests upon the *service* of the applicable notice of termination. *Id*. §§ 304(c)(6)(B) and 203(b)(2).

35.    Congress was very protective of the termination interest and, to that end, enacted a number of provisions to prevent any waiver, encumbrance and/or interference with the termination interest.

36.    First, "[t]ermination of the [prior copyright] grant may be effected notwithstanding *any* agreement to the contrary, including an agreement to make a will or to make a future grant." *Id*. §§ 304(c)(5), 203(a)(5)(emphasis added).

37.    Second, "[a] further grant, or agreement to make a further grant, of any right covered by a terminated grant is valid only if made after the effective

date of the termination[,]" except that such a grant or agreement may be made "after the notice or termination has been served" with "the original grantee or such grantee's successor in title." *Id*. §§ 304(c)(6)(D), 203(b)(4).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

38.    HYNIE worked as a Janis Joplin impersonator in Las Vegas, Nevada and as a back-up singer in the James Brown Revue. Much controversy surrounded HYNIE'S purported marriage to Brown in December, 2001 because at the time HYNIE was married to another man (Javed Ahmed), a fact she intentionally concealed from Brown. Although HYNIE'S 1997 marriage to Ahmed was eventually annulled in 2004, this was long after her purported marriage to Brown, and Brown and Hynie *never* remarried.

39.    In fact, in 2004 when Brown found out about HYNIE'S secret 1997 marriage to another man, he commenced legal action in South Carolina to annul his bigamous marriage to HYNIE, while HYNIE counterclaimed for a divorce. The two eventually settled that action in an August 16, 2004 consent order, wherein HYNIE even agreed to "forever waive any claim to a *common-law* marriage to [Brown]" (emphasis added). Plaintiffs are informed and believe and thereon allege that not long after Brown's death, HYNIE and her son JAMES II, who is a minor, moved in with a new man previously unknown to Brown's family.

40.    HYNIE'S claim that JAMES II was Brown's biological child has likewise been engulfed in controversy. Plaintiffs are informed and believe and on that basis allege that Brown had a vasectomy in the 1980s to specifically avoid paternity suits, and that JAMES II is the only child born in the over-twenty-year period between Brown's vasectomy and his death to claim Brown was his biological father.

//

//

Prior Probate Proceedings

41.    James Brown died on December 25, 2006 in Atlanta, Georgia. Brown's last will and testament (hereinafter, the "Will") conspicuously *omits* HYNIE and JAMES II as beneficiaries. The Trust established by Brown prior to his death Brown also omitted HYNIE and JAMES II as beneficiaries. Brown's Will covered the disposition of his personal assets (*e.g.*, cars, clothing, jewelry), while his Trust covered the disposition of his music, commercial and real estate assets.

42.    In or about January 2007, Brown's Will was submitted for informal probate in the Probate Court in Aiken County, South Carolina.

43.    As neither HYNIE nor her son was named as a beneficiary of the Will or Trust, HYNIE filed petitions in December, 2007 to set aside Brown's Will and Trust, alleging undue influence and fraud, whereupon the Probate Court transferred the matter to the South Carolina Court of Common Pleas.

44.    In or about November 2015, the LSA, on behalf of the Estate and Trust, vigorously appealed the Spousal Orders to the South Carolina Court of Appeals, and demonstrated in its subsequent appellate briefing why the Spousal Orders had no basis in fact or law. While that appeal was pending, however, the Estate and Trust Fiduciaries suddenly reversed course, and on March 8, 2017, entered into a written settlement agreement with HYNIE (hereinafter, the "Purported Settlement Agreement"). Therein, HYNIE agreed to dismiss her claims against the Estate and Trust, and the LSA agreed to withdraw its appeal of the Spousal Orders in exchange for HYNIE'S transfer to the Trust of sixty-five percent (65%) of all proceeds from her copyright termination rights.

45.    In moving to dismiss HYNIE's claims and the LSA's appeal, HYNIE and the LSA attached a copy of the Purported Settlement Agreement to their motion papers. However, the terms of the Purported Settlement Agreement were facially implausible, and HYNIE's paltry consideration for the agreement

strongly suggested that there was much more to Defendants' bargain.
Accordingly, Plaintiffs Deanna Brown Thomas, Yamma Brown and Venisha
Brown, who were named as beneficiaries in Brown's Will, repeatedly requested
that the Estate and Trust Fiduciaries disclose any undisclosed terms and
agreements with HYNIE, but their requests for transparency were ignored.

46.    In June, 2017, these Plaintiffs moved in the South Carolina trial
court for an order compelling the Estate and Trust Fiduciaries to disclose the
complete terms of all agreements between HYNIE and the Estate and Trust
Fiduciaries. Both HYNIE and the Estate and Trust Fiduciaries vigorously
opposed this motion, arguing they had no duty to disclose their terms, leading to
the inescapable conclusion that, while purporting to disclose all terms in the
Purported Settlement Agreement, they had, in fact, concealed numerous terms in
a parallel document(s) (hereinafter, the "Concealed Terms"), perpetuating a
fraud on both Plaintiffs and the court. Indeed, at an October 31, 2017 hearing of
Plaintiffs' motion to compel disclosure, the Estate and Trust Fiduciaries
indicated that there were undisclosed terms. Notwithstanding all of the above,
the South Carolina trial court once again sided with HYNIE, and cursorily
denied Plaintiffs' motion to compel disclosure, without analysis or any
explanation.

47.    Plaintiffs are informed and believe and on that basis allege that the
Concealed Terms demonstrate that the Defendants have conspired to unlawfully
deprive Plaintiffs of their valuable termination interests in Brown's
Compositions in violation of the Copyright Act, and/or to convert and
substantially dilute Plaintiffs' rightful share of the proceeds from these co-
owned interests, in violation of state common law.

Defendants' Conspiracy to Undermine Plaintiffs' Termination Interests

48.    Before the 2017 Concealed Terms, Defendants had engaged in a
pattern of deceptive and unethical conduct, as part of a scheme to induce

Plaintiffs to waive or sign away their termination interests in the Compositions, and to otherwise undermine Plaintiffs' state common-law rights to a large share of the proceeds from such interests. Beginning in or about September, 2013, Peter Afterman, a music industry "consultant" on the payroll of the Estate and/or Trust (hereinafter, the "Estate's Music Consultant"), and acting in concert with Defendants, approached Plaintiffs, without their copyright counsel's knowledge, to induce Plaintiffs to fire their copyright counsel and to sign away or repudiate their copyright termination interests, without adequate independent legal representation. Plaintiff is informed and believes and based thereon alleges that this illicit campaign was orchestrated by Defendants, their agents and/or counsel.

49.    The ancillary purpose of Defendants' scheme was to persuade enough of Brown's children/grandchildren to waive or repudiate their termination interests for relatively small amounts of cash, and thereby *preclude* the requisite majority of Brown's statutory heirs needed to exercise termination rights under the Copyright Act. Defendants deliberately concealed the underhanded nature of these proposals by orchestrating their pressure campaign through go-betweens who falsely professed to be working in Plaintiffs' best interests. To further forestall Plaintiffs from obtaining independent legal advice, Defendants hid their predatory actions from Plaintiffs' California copyright counsel who, as Defendants were well aware, specifically represented Plaintiffs' termination interests. Ultimately, Defendants' scheme failed when Plaintiffs' copyright counsel got wind of it.

50.    Just prior to that time, Defendants HYNIE and her son JAMES II, banking on HYNIE'S spousal claim, purported to exercise Brown's termination rights as to approximately one hundred and thirty-eight (138) Compositions by serving notices of termination dated August 26, 2013, August 28, 2013 and August 29, 2013, respectively (the "2013 Hynie Terminations") on Warner/Chapell Music., Inc. ("WCM"), the successor music publisher to the

original grantees of the Compositions. Plaintiffs are informed and believe, and on that basis allege, that the Estate's Music Consultant who illicitly approached Plaintiffs, assisted HYNIE with her notices of termination, demonstrating further conflicts of interest and collusion between HYNIE and the Estate and Trust Fiduciaries.

51.    Even though Brown's children (and, in the case of two deceased children, grandchildren) own an absolute undivided 50% share of the copyrights recaptured via the 2013 Hynie Terminations and any proceeds therefrom, HYNIE deliberately did not disclose the 2013 Hynie Terminations to Plaintiffs, and in furtherance of her concealment, she waited until 2015 to publicly record such notices of termination with the Copyright Office.

52.    On or about August 1, 2015, Defendants HYNIE and JAMES II, unbeknownst to Plaintiffs, entered into an agreement in California to transfer back to WCM five (5) of the earliest Compositions subject to the 2013 Hynie Terminations for $1,875,000 (the "WCM Agreement"). Plaintiffs are informed and believe, and on that basis allege, that the Estate's Music Consultant participated in the negotiation of the WCM Agreement, which conspicuously favored the Estate and Trust Fiduciaries by leaving intact the Estate/Trust's approximately 50% royalty interest in the Compositions ($1,875,000 of additional value), strongly indicating the undisclosed involvement of the Estate and Trust Fiduciaries in this transaction, as well. In other words, under the WCM Agreement, HYNIE and JAMES II gratuitously agreed, notwithstanding their notices of termination, that the Estate/Trust shall receive roughly 50% of the proceeds from the five terminated Compositions, severely diminishing the participation of Brown's statutory heirs, including Plaintiffs, in the proceeds from their termination interests. Nowhere in the WCM Agreement does HYNIE and/or JAMES II receive any consideration for this valuable concession, leaving open the possibility that Defendants made an undisclosed side-deal whereby

HYNIE is to be paid additional sums out of the Estate/Trust's 50% royalties. Such an arrangement would permit Defendants to convert a substantial portion of the revenues from the Compositions that, by law, would otherwise be divided among *all* of Brown's statutory heirs, including Plaintiffs.

53.    Furthermore, although the WCM Agreement, at WCM's insistence and as required by law, obligated HYNIE to pay 50% of the proceeds from the agreement to Brown's children (and in the case of two deceased children, grandchildren), including Plaintiffs, HYNIE also initially concealed the WCM Agreement from Plaintiffs and their copyright counsel, and failed to voluntarily pay Plaintiffs their allocate share of the proceeds from that agreement.

54.    Instead, in or about September – December, 2015, HYNIE, through her counsel and go-betweens, dangled the money before Plaintiffs that, unbeknownst to Plaintiffs, was already owed to them under the undisclosed WCM Agreement, in a renewed effort to circumvent Plaintiffs' copyright counsel and persuade Plaintiffs to forego their termination interests in the Compositions. To this end, HYNIE, through her counsel, engaged in extortionate strong-arm tactics, telling Plaintiffs, through go-betweens, that they will not receive their share of these proceeds unless they play ball.

55.    HYNIE further attempted to coerce Plaintiffs by threatening that unless they capitulate she would unilaterally enter into a private agreement with the Estate and Trust Fiduciaries *not to exercise* her alleged termination rights in exchange for payments to her alone. According to HYNIE's threats, such an agreement would block Brown's children and grandchildren from receiving their 50% share of the proceeds from the termination interests in the hundreds of Compositions for which notices of termination had not yet been served by HYNIE and JAMES II. That is, while HYNIE would keep 100% (instead of 50%) of the financial proceeds from *leveraging* the termination interests shared with Plaintiffs, by agreeing *not to exercise* termination rights, Plaintiffs would

ultimately receive nothing for their valuable interests.

56.    To further her scheme, HYNIE once again concealed her proposals from Plaintiffs' copyright counsel, and, in fact, pressured Plaintiffs to sever ties with said counsel. To intercede and interfere with Plaintiffs' attorney-client relationship, HYNIE'S counsel initiated back-channel communications with Plaintiffs' contingency lawyers in the unrelated South Carolina probate proceeding (who had no right to collect fees on Plaintiffs' valuable copyright interests) and wrongly offered these attorneys a path to collect fees on Plaintiffs' termination interests if they induced Plaintiffs to fire their copyright counsel and advised them to cooperate with HYNIE. Egregiously, HYNIE coupled these back-channel overtures with repeated derogatory misrepresentations to Plaintiffs regarding their copyright counsel, to induce Plaintiffs to instead allow their probate attorneys to handle their copyright termination interests, despite such counsel's total inexperience with copyright law.

57.    It was only after this scheme failed and Plaintiffs' copyright counsel learned of the WCM Agreement that HYNIE, under pressure from WCM and the threat of legal action, reluctantly provided Plaintiffs with a copy of the WCM Agreement and, after lengthy delays, their share of the proceeds from the WCM Agreement. Throughout, HYNIE maintained falsely that she owed no duty of disclosure to Plaintiffs, just as she and the other Defendants now assert with respect to the Concealed Terms.

58.    Plaintiffs are informed and believe and based thereon allege that HYNIE and the other Defendants have entered into further as-yet-undiscovered transactions to license, grant, and/or make other economic use of the termination interests in the Compositions that they have deliberately failed to disclose to Plaintiffs that result in proceeds payable to Plaintiffs, and/or dilute and convert Plaintiffs' share of proceeds from the termination interests.

1        Improper Agreements That Traffic in Statutory Termination Rights

2        59.    HYNIE'S recent Purported Settlement Agreement on its face

3    assigns to the Trust *the majority of the proceeds* from the federal termination

4    rights and interests, pre-encumbering the termination right in violation of the

5    terms and legislative objectives of the Copyright Act's termination provisions.

6    17 U.S.C. §§ 304(c)(5), 203(a)(5).

7        60.    Plaintiffs are informed and believe and on that basis allege that in

8    the Concealed Terms, HYNIE, as previously threatened, improperly used the

9    leverage of the federal termination interests she shares with Plaintiffs to extract

10   significant compensation from the Estate and Trust Fiduciaries in exchange for

11   her agreement *not to exercise* the termination rights as to many Compositions,

12   resulting in HYNIE pocketing 100% of such proceeds, instead of 50%, and

13   wrongfully depriving Plaintiffs of their termination interests under the Act.

14       61.    Plaintiffs are further informed and believe and on that basis allege

15   that in the Concealed Terms HYNIE and JAMES II agreed, in exchange for

16   compensation, to leave intact (as in the WCM Agreement) the Estate/Trust's

17   approximately 50% royalty interests as to any Compositions for which notices of

18   termination have been served and/or would be served by them, wrongfully

19   diluting and diverting Plaintiffs' fair share under state common law of the

20   proceeds from their termination interests.

21       62.    Plaintiffs are further informed and believe and on that basis allege

22   that in the Concealed Terms, HYNIE and JAMES II promised to assign to the

23   Estate and/or Trust certain copyright interests to be recovered from the 2013

24   Hynie Terminations (excluding the five Compositions assigned in the WCM

25   Agreement) and/or from any further notices of termination as to the remaining

26   Compositions, in further violation of the Copyright Act, *id*. §§ 304(c)(6)(D),

27   203(b)(4).

28       63.    Plaintiffs are informed and believe and based thereon allege that the

wrongful conduct of HYNIE alleged herein was carried out as part of a conspiracy with and/or in conjunction with the other Defendants, and that Defendants have agreed to assist one another in a joint scheme to circumvent Plaintiffs' termination interests and to convert all or part of Plaintiffs' share of the proceeds from the Compositions.

64.     As a direct and proximate result of Defendants' actions, Plaintiffs will suffer imminent and irreparable harm, much of which cannot be reasonably or adequately measured or compensated in damages.

65.     Significantly, Defendants admitted in their Purported Settlement Agreement that the copyright termination rights and interests in the Compositions at issue herein are totally "outside of the probate estate" and the scope of the South Carolina proceedings, and "not directly subject to [HYNIE'S] Undue Influence and Spousal Claims" against Brown's Estate. Accordingly, by this action Plaintiffs do not seek to litigate any interest or rulings that are the subject of the South Carolina proceedings, including the Spousal Orders. Instead, the focus of this action is to adjudicate the distinctly federal rights and interests under the termination provisions and other salient provisions of the Copyright Act, and to ensure that Plaintiffs receive their *per stirpes* share under state common law of the proceeds attributable to the termination interests.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief - Against All Defendants)

66.     Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 65 inclusive, as though fully set forth herein.

67.     By reason of the foregoing, an actual and justiciable controversy has arisen and now exists between Plaintiffs and Defendants in that Plaintiffs contend and Defendants deny that Defendants' agreements regarding the statutory termination rights and interests in the Compositions, are void and unenforceable, including as in violation of the Copyright Act.

68.    The Copyright Act expressly mandates that "[t]ermination … may be effected *notwithstanding any agreement to the contrary*, including an agreement to make a will or to make a future grant." 17 U.S.C. §§ 304(c)(5), 203(a)(5) (emphasis added). This intentionally broad provision bars *any* agreement which settles, waives, releases, transfers, hypothecates or otherwise encumbers the termination right and interest. Any such agreement must be deemed void and unenforceable as a matter of law and public policy. *Id.*

69.    In the Purported Settlement Agreement, HYNIE expressly agreed to transfer to the Trust *the majority of all proceeds and benefits* from the federal termination rights and interests, inclusive of the proceeds from any copyright interests to be recaptured via the 2013 Hynie Terminations.

70.    Plaintiffs are informed and believe and based thereon allege that in the Concealed Terms, HYNIE and JAMES II also agreed to transfer to the Estate or Trust some or all of the copyright interests in Compositions to be recaptured via notices of termination, including the 2013 Hynie Terminations (except the five Compositions HYNIE had already transferred in the WCM Agreement) or, alternatively, to give the Estate or Trust approval over the disposition of such copyright interests.

71.    Plaintiffs are informed and believe and based thereon allege that in the Concealed Terms, HYNIE, as threatened, improperly agreed, in exchange for a substantial fixed payment and/or ongoing contingent participation in revenues from the Compositions, that she would *not* exercise the termination rights as to some or all of the remaining Compositions as to which she had not yet served termination notices, to circumvent Plaintiffs' statutory termination interests while using the leverage of termination to enhance HYNIE's compensation.

72.    Plaintiffs are informed and believe and based thereon allege that Defendants' improper agreements convert Plaintiffs' share of the financial proceeds from their termination interests in the Compositions, encumbering,

---

diluting and/or effectively destroying Plaintiffs' termination interests.

73.    All of HYNIE'S aforementioned agreements are void *ab initio* and unenforceable as they directly or indirectly settle, waive, hypothecate and/or encumber the termination rights and interests in violation of the comprehensive prohibitions of 17 U.S.C. §§ 304(c)(5) or 203(a)(5), respectively.

74.    The Copyright Act additionally provides that "[a] further grant, or agreement to make a further grant, of any right covered by a terminated grant is valid only if made after the effective date of the termination." *Id*. §§ 304(c)(6)(D), 203(b)(4). The sole exception to this timing restriction applies to copyright re-grants to the terminated grantee or its successor (in this case, WCM): "an agreement for such a further grant may be made between the author or [his statutory heirs] and the original [terminated] grantee or [its] successor in title, after the notice of termination has been served." *Id.* § 304(c)(6)(D); *accord id.* § 203(b)(2)-(4). The Act thus (i) forbids agreements regarding the copyright termination interest until *after* the applicable notice of termination has been served, and (ii) establishes an exclusive period of time (from the date a termination notice has been served until its effective termination date) in which *solely* the terminated copyright grantee or its successor, here WCM, may enter into an agreement with the author or his/her statutory heirs as to the relevant copyright termination interest. The statute thus categorically *bars third parties* like the Estate and Trust Fiduciaries from trafficking in future copyright termination interests until the applicable notice of termination has been served, and even then, only after the exclusive bargaining period afforded to terminated grantees or their successors has expired. Any restriction or limitation of these rights and interests must be deemed void and unenforceable as a matter of law under 17 U.S.C. §§ 304(c)(6)(D) or 203(b)(4), respectively.

75.    As HYNIE and JAMES II are prohibited from transferring any portion of the termination interest in a Composition until after the applicable

notice of termination has been served and, with respect to third parties like the Estate/Trust, only until after the effective termination date, HYNIE's disclosed agreement to transfer to the Trust *the majority* of the proceeds from the termination interests (inclusive of the 2013 Hynie Terminations) or Concealed Terms to transfer the copyright interests to be recaptured via notices of termination (inclusive of the 2013 Hynie Terminations) prior to the effective dates thereof, violates both prongs of 17 U.S.C. §§ 304(c)(6)(D) or 203(b)(4), harming Plaintiffs (Brown's statutory heirs) and WCM (Brown's successor grantee), both of which the statute plainly seeks to protect.

76.    A declaration of this Court is warranted under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*., to establish the parties' respective rights and obligations with respect to their copyright termination rights and interests in the Compositions. This declaration should establish that HYNIE's Purported Settlement Agreement to sell a majority of the proceeds from the termination interests is void and unenforceable as a matter of law and public policy. 17 U.S.C. §§ 304(c)(5), (c)(6)(D) and 203(a)(5), (b)(4). The declaration should further establish that any agreement by HYNIE and/or JAMES II, in the Concealed Terms or otherwise, *not* to exercise the termination right(s) as to any Composition(s) is void, unenforceable and prohibited as a matter of law and public policy. *Id*. The declaration should further establish that any agreement by HYNIE, in the Concealed Terms or otherwise, (i) to transfer to anyone the future copyright interests to be recaptured via statutory termination before exercising the respective termination right in any Composition, or (ii) to transfer to anyone that is not an original grantee or its successor-grantee the future copyright interests in any Composition to be recaptured via statutory termination, after service of the applicable termination notice, but before its termination date, is void, unenforceable and prohibited as a matter of law and public policy. 17 U.S.C. §§ 304(c)(6)(D) and 203(b)(4). The declaration should further establish

that any agreement by any Defendant that directly or indirectly diverts and/or converts Plaintiffs' share of the financial proceeds as a co-owner of the termination interests in the Compositions is void, unenforceable and prohibited as a matter of law and public policy under the Act and state common law.

77.    Plaintiffs are entitled to a preliminary injunction, during the pendency of this action, and thereafter to a permanent injunction, enjoining Defendants, their officers, agents and employees, and all persons acting in concert with them, from entering into or performing any agreement which directly or indirectly settles, waives, conveys or encumbers the termination rights and interests with respect to the Compositions, including any agreement by HYNIE and/or JAMES II not to exercise the termination rights and/or any agreement by HYNIE and/or JAMES II prior to the effective date of statutory termination to transfer or pre-assign to third parties, like the Estate and/or Trust, copyright termination interests in the Compositions or the proceeds from such termination interests.

## SECOND CLAIM FOR RELIEF

### (Accounting - Against All Defendants)

78.    Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 65 inclusive, as though fully set forth herein.

79.    Plaintiffs, as Brown's biological children (and in the case of two deceased children, grandchildren), own a substantial portion of the copyright termination interests in the Compositions under sections 304(c) and 203(a) of the Copyright Act. In turn, under state common law, Defendants HYNIE and JAMES II owe an absolute duty to disclose, account and remit to Plaintiffs their *per stirpes* share of any and all proceeds paid or payable in consideration for the copyright termination interests in the Compositions.

80.    Defendants have breached their duty to render such accounting to Plaintiffs and to remit to Plaintiffs their share of revenues derived from the

termination interests in the Compositions. HYNIE and JAMES II intentionally concealed from Plaintiffs the three notices of termination that HYNIE and JAMES II served in August 2013 covering approximately one hundred and thirty-eight (138) Compositions, and intentionally concealed their subsequent agreement with WCM to transfer five (5) of the terminated Compositions back to WCM for significant compensation, until forced to disclose this information and to pay Plaintiffs their allocate share of this compensation.

81.    Plaintiffs are informed and believe and on that basis allege that Defendants have engaged in additional undisclosed and as-yet-undiscovered transactions and agreements regarding the valuable termination interests in the Compositions by which HYNIE has been compensated for purporting to waive, abrogate, transfer, or otherwise encumber the termination rights and interests, or by which Defendants have otherwise diverted proceeds attributable to the termination interests shared by Plaintiffs.

82.    Plaintiffs are entitled to an order requiring HYNIE and JAMES II to account to Plaintiffs with respect to all compensation or proceeds paid or payable to HYNIE and/or JAMES II with respect to the Compositions, and for an order requiring all Defendants to provide to Plaintiffs their complete, detailed books and records of account concerning the Compositions, the copyrights and any rights under copyright therein.

### THIRD CLAIM FOR RELIEF

### (Conversion - Against All Defendants)

83.    Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 65 inclusive and paragraphs 78 through 82 inclusive, as though fully set forth herein.

84.    Defendants' actions, as alleged herein, constitute conversion of the property and interests of Plaintiffs. Each Plaintiff possesses a right under state common law to receive a *per stirpes* share of any and all proceeds paid or

payable in consideration for the termination interests they share in the Compositions. Plaintiffs are informed and believe and based thereon allege that Defendants have intentionally and substantially harmed Plaintiffs' rights and interests, by entering into undisclosed agreements or transactions for the purpose of diverting Plaintiffs' *per stirpes* shares of the proceeds from the Compositions, and dividing such shares among the Defendants, as alleged hereinabove.

85.    Plaintiffs have not consented to any of Defendants' conduct aimed at converting Plaintiffs' property and interests.

86.    As a direct and proximate result of Defendants' acts of conversion, Plaintiffs have sustained damages in an amount to be adjudicated at trial, plus prejudgment interest.

87.    Defendants' conduct alleged herein was purposeful and intentional and was engaged in to deprive Plaintiffs of property or legal rights or to otherwise cause injury; was despicable conduct committed in conscious disregard of Plaintiffs' rights; and was performed with fraud, oppression, and malice, so as to justify an award of exemplary or punitive damages in an amount according to proof at trial.

88.    Defendants' wrongful acts will continue unless enjoined by this Court. Plaintiffs have no adequate remedy at law for such continuing wrongful conduct and are suffering irreparable damages as a result of the aforesaid acts of Defendants. Plaintiffs are entitled to a preliminary injunction, during the pendency of this action, and thereafter to a permanent injunction, prohibiting Defendants, and all persons acting in concert or participation with them, from engaging in such further conversion of Plaintiffs' property and interests as alleged herein.

//

//

//

**FOURTH CLAIM FOR RELIEF**

**(Unjust Enrichment - Against All Defendants)**

89.    Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 65 inclusive and paragraphs 78 through 88 inclusive, as though fully set forth herein.

90.    Defendants owe Plaintiffs an absolute duty under state common law to remit to Plaintiffs their *per stirpes* share of any and all proceeds paid or payable in connection with the termination interests in the Compositions. Plaintiffs are informed and believe and based thereon allege that despite this duty Defendants have systematically concealed from Plaintiffs transactions relating to the termination interests in the Compositions and have retained or diverted to themselves Plaintiffs' share of proceeds derived from such interests, as alleged herein.

91.    As a direct and proximate result of Defendants' wrongful conduct, Defendants have been unjustly enriched by their withholding, retention and/or diversion of proceeds received pursuant to the licensing, transfer, or other economic use of the termination interests in the Compositions. Plaintiffs are entitled to restitutionary disgorgement of all funds by which Defendants have been unjustly enriched, in an amount to be adjudicated at trial, plus prejudgment interest.

**FIFTH CLAIM FOR RELIEF**

**(Intentional Interference with Prospective Economic Advantage –**

**Against All Defendants)**

92.    Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 65 inclusive and paragraphs 78 through 91 inclusive, as though fully set forth herein.

93.    Plaintiffs have developed an economic relationship with music publishers, including without limitation WCM, that are aware of the termination

interests in the Compositions and are potential grantees or licensees of the Compositions. Plaintiffs' relationships with such third-parties are based on the fact that they possess termination interests in the Compositions, a substantial undivided interest in any Composition copyrights recaptured via termination, and a substantial share of any proceeds from the termination interests, and such interests are expected to result in substantial economic benefit to Plaintiffs.

94. At all relevant times, Defendants were aware of Plaintiffs' relationships with such third-party music publishers, including WCM. Nevertheless, and despite Plaintiffs' status as co-owners of the termination interests, Defendants have dealt with such music publishers in a secretive fashion, and a total lack of transparency, and have intentionally kept Plaintiffs in the dark so as to manipulate any transaction regarding the termination interests to Defendants' benefit and Plaintiffs' detriment by diverting or otherwise diminishing Plaintiffs' proceeds therefrom, as alleged herein. Plaintiffs are informed and believe and based thereon allege that to further their wrongful objectives, Defendants have also portrayed Plaintiffs to such third party publishers, like WCM, in a negative, adversarial light to deter such third parties from openly communicating with Plaintiffs as to transactions relating to their termination interests.

95. By their wrongful conduct, Defendants intended to disrupt Plaintiffs' relationships with potential licensees and/or grantees such as WCM, in order to divert Plaintiffs' economic interest in the Compositions to Defendants. Defendants knew that by their conduct disruption of Plaintiffs' relationships with such potential licensees and/or grantees was certain or substantially certain to occur, and, as intended, Defendants' conduct has disrupted Plaintiffs' relationships with such third parties, including WCM.

96. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer economic damages in an amount to be

1  adjudicated at trial, plus prejudgment interest.

2       97.    Defendants' conduct alleged herein was intentional and was

3  engaged in for the purpose of depriving Plaintiffs of property or legal rights or to

4  otherwise cause injury; was despicable conduct committed in conscious

5  disregard of Plaintiffs' rights; and was performed with fraud, oppression, and

6  malice, so as to justify an award of exemplary or punitive damages in an amount

7  according to proof at trial.

8       98.    Defendants' wrongful acts will continue unless enjoined by the

9  Court. Plaintiffs have no adequate remedy at law for such continuing wrongful

10 conduct and are suffering irreparable damage as a result of the aforesaid acts of

11 Defendants. Plaintiffs are entitled to a preliminary injunction, during the

12 pendency of this action, and thereafter to a permanent injunction, prohibiting

13 Defendants, and all persons acting in concert or participation with them, from

14 engaging in such further interference with Plaintiffs' economic relationships as

15 alleged herein.

16             **SIXTH CLAIM FOR RELIEF**

17       **(Negligent Interference with Prospective Economic Advantage –**

18                **Against All Defendants)**

19       99.    Plaintiffs re-allege and incorporate herein by this reference

20 paragraphs 1 through 65 inclusive and paragraphs 78 through 98 inclusive, as

21 though fully set forth herein.

22       100.   Plaintiffs have developed an economic relationship with music

23 publishers, including without limitation WCM, that are aware of the termination

24 interests in the Compositions and are potential grantees or licensees of the

25 Compositions. Plaintiffs' relationships with such third-parties are based on the

26 fact that they possess termination interests in the Compositions, a substantial

27 undivided interest in any Composition copyrights recaptured via termination,

28 and a substantial share of any proceeds from the termination interests, and such

interests are expected to result in substantial economic benefit to Plaintiffs.

101.   At all relevant times Defendants were or should have been aware of Plaintiffs' relationships with such third-party music publishers, including WCM. Nevertheless, and despite Plaintiffs' status as co-owners of the termination interests, Defendants have dealt with such music publishers in a secretive fashion, and a total lack of transparency, and have intentionally kept Plaintiffs in the dark so as to manipulate any transaction regarding the termination interests to Defendants' benefit and Plaintiffs' detriment by diverting or otherwise diminishing Plaintiffs' proceeds therefrom, as alleged herein. Plaintiffs are informed and believe and based thereon allege that to further their wrongful objectives, Defendants have also portrayed Plaintiffs in a negative, adversarial light to such third-party music publishers, like WCM.

102.   Defendants knew or should have known that their unreasonable and wrongful conduct would disrupt and damage Plaintiffs' relationships with such music publishers. Nevertheless, Defendants failed to use reasonable care when doing business with such third-parties to avoid such disruption and damage, and Defendants' conduct has, in fact, disrupted Plaintiffs' relationships with these potential licensees and/or grantees, including WCM.

103.   As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer economic damages in an amount to be adjudicated at trial, plus prejudgment interest.

104.   Defendants' wrongful acts will continue unless enjoined by the Court. Plaintiffs have no adequate remedy at law for such continuing wrongful conduct and are suffering irreparable damage as a result of the aforesaid acts of Defendants. Plaintiffs are entitled to a preliminary injunction, during the pendency of this action, and thereafter to a permanent injunction, prohibiting Defendants, and all persons acting in concert or participation with them, from engaging in such further interference with Plaintiffs' prospective economic

relationships as alleged herein.

## SEVENTH CLAIM FOR RELIEF

**(Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* and §§ 17500 *et seq.***

**and Common Law Unfair Competition - Against All Defendants)**

105.   Plaintiffs re-allege and incorporate herein by this reference paragraphs 1 through 65 inclusive and paragraphs 78 through 104, as though fully set forth herein.

106.   Plaintiffs are informed and believe and based thereon allege that Defendants, in their dealings with third parties, members of the public, and Plaintiffs, have engaged in unlawful, unfair, and fraudulent conduct regarding Plaintiffs' rights under state common law with respect to the Compositions, including deceptive and unfair practices to deceive and defraud Plaintiffs out of their *per stirpes* share under state common law of proceeds from the termination interests in the Compositions, as alleged herein. Plaintiffs are further informed and believe and based thereon allege that Defendants have, without limitation, entered into and concealed kickback and other back-room dealings between and among themselves that divert and/or funnel proceeds from the Compositions to themselves, in wrongful circumvention of Plaintiffs' rights and interests. Defendants have carried out such unfair business practices by concealing and misrepresenting the true nature of Defendants' transactions, agreements and arrangements concerning the Compositions, as alleged herein.

107.   Plaintiffs are informed and believe and on that basis allege that Defendants have engaged in such concealment and made such false and misleading representations with a willful intention to mislead and misrepresent the nature, characteristics, and qualities of the Compositions and Defendants' transactions regarding the Compositions.

108.   Plaintiffs are informed and believe and on that basis allege that Defendants' misrepresentations and concealment were intended to deceive,

1  cause confusion and mistake, and were likely to deceive, cause confusion and

2  mistake, all contrary to the public interest.

3    109.   Defendants' wrongful conduct, acts, and omissions alleged herein

4  constitute unlawful, fraudulent, and unfair business practices and unfair

5  competition under California Business and Professions Code §§ 17200 *et seq.*

6  and §§ 17500 *et seq.* and under the common law.

7    110.   As a direct and proximate result of Defendants' conduct, acts, and

8  omissions alleged herein, Plaintiffs are entitled to restitution of the income,

9  gains, compensation, profits, and advantages obtained, received, or to be

10  received by Defendants arising from their exploitation of any rights in the

11  Compositions achieved through false and misleading representations to third-

12  parties and the public. Plaintiffs are further entitled to an order requiring

13  Defendants, jointly and severally, to render an accounting to ascertain the

14  amount of such proceeds.

15    111.   As a direct and proximate result of Defendants' wrongful conduct,

16  acts, and omissions alleged herein, Plaintiffs have been damaged, and

17  Defendants have been and will continue to be unjustly enriched, in an amount

18  that shall be assessed at trial for which restitution and/or restitutionary

19  disgorgement is appropriate. Such should include a declaration by this Court that

20  Defendants are jointly and severally the constructive trustee(s) for the benefit of

21  Plaintiffs and an order that Defendants convey to Plaintiffs their respective *per*

22  *stirpes* share of any and all proceeds from the Compositions due Plaintiffs.

23    112.   Defendants' wrongful conduct, acts, and omissions have

24  proximately caused and will continue to cause Plaintiffs substantial injury and

25  damage including, without limitation, diminution in the value of Plaintiffs'

26  interests in the Compositions. The harm that Defendants' willful conduct will

27  cause to Plaintiffs is both imminent and irreparable, and the amount of damage

28  sustained by Plaintiffs will be difficult to ascertain if such wrongful conduct is

1   allowed to continue unabated and without restraint.

2      113.    Pursuant to California Business and Professions Code § 17203,

3   Plaintiffs are entitled to an injunction, during the pendency of this action, and

4   thereafter permanently enjoining Defendants, and all persons acting in concert

5   with them, from engaging in such further acts of unfair, fraudulent, and unlawful

6   business practices and unfair competition.

7      114.    Plaintiffs have no adequate remedy at law with respect to

8   Defendants' ongoing unlawful conduct.

9                        **PRAYER FOR RELIEF**

10   WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

11                  ON THE FIRST CLAIM FOR RELIEF

12      1.    For a declaration that the improper terms in Defendants' Purported

13   Settlement Agreement and Concealed Terms relating to the termination interests

14   in the Compositions under the Copyright Act, and any additional agreement by

15   or among Defendants reflecting or in furtherance of those improper terms, are

16   void, unenforceable and prohibited as a matter of law and public policy under

17   Sections 304(c) and 203(a) of the Copyright Act; and

18      2.    For an order preliminarily during the pendency of this action and

19   thereafter permanently enjoining Defendants from entering into any agreement

20   regarding the Compositions which directly or indirectly settles, waives, conveys,

21   hypothecates, diminishes or encumbers the termination rights and interests in the

22   Compositions in contravention of Sections 304(c) and/or 203(a) of the Copyright

23   Act, including (A) any agreement by HYNIE and/or JAMES II (i) not to

24   exercise the termination right as to any Composition; (ii) to transfer to any party

25   the recaptured copyright expectancy in any Composition prior to service of the

26   respective notice of termination relating to that Composition; and/or (iii) to pre-

27   assign the proceeds from the termination interest in any Composition; and (B)

28   any agreement by HYNIE and/or JAMES II after the service of a notice of

termination with respect to any Composition, but before the effective
termination date in such notice (i) to transfer the copyright expectancy from such
termination to any third party that is not a terminated original grantee or
successor grantee of the Composition, including the Estate and/or Trust; (ii) to
assign the expected proceeds therefrom to such third party, and/or (iii) to
otherwise encumber the expected interests from such statutory termination.

ON THE SECOND CLAIM FOR RELIEF

3.    For an order requiring that Defendants provide a complete and
accurate accounting to Plaintiffs of all monies, gains, profits, and advantages
Defendants have derived from any rights or interests in the Compositions; and

4.    For an order imposing a constructive trust over all monies, gains,
profits, and advantages Defendants wrongfully or unlawfully derived or shall
derive from any rights or interests in the Compositions.

ON THE THIRD CLAIM FOR RELIEF

5.    For an award of damages in an amount to be adjudicated at trial,
plus prejudgment interest;

6.    For punitive or exemplary damages; and

7.    For an order preliminarily during the pendency of this action and
thereafter permanently enjoining Defendants, and all persons acting in concert
with them, from engaging in any conduct that converts the property and/or
interests of Plaintiffs.

ON THE FOURTH CLAIM FOR RELIEF

8.    For an order requiring that Defendants provide a complete
accounting to Plaintiffs of all monies, gains, profits and advantages Defendants
have derived from any rights or interests in the Compositions;

9.    For an award of damages in an amount to be adjudicated at trial,
plus prejudgment interest; and

10.    For an order imposing a constructive trust over all monies, gains,

and profits Defendants wrongfully or unlawfully derived or shall derive from any rights or interests in the Compositions.

### ON THE FIFTH CLAIM FOR RELIEF

11.    For an award of damages in an amount to be adjudicated at trial, plus prejudgment interest;

12.    For punitive or exemplary damages; and

13.    For an order preliminarily during the pendency of this action and thereafter permanently enjoining Defendants, and all persons acting in concert with them, from engaging in any conduct that interferes with or disadvantages Plaintiffs' negotiations or business dealings with any potential licensee and/or grantee of any rights in the Compositions, including WCM.

### ON THE SIXTH CLAIM FOR RELIEF

14.    For an award of damages in an amount to be adjudicated at trial, plus prejudgment interest; and

15.    For an order preliminarily during the pendency of this action and thereafter permanently enjoining Defendants, and all persons acting in concert with them, from engaging in any conduct that interferes with or disadvantages Plaintiffs' negotiations or business dealings with any potential licensee and/or grantee, including WCM, of any rights in the Compositions.

### ON THE SEVENTH CLAIM FOR RELIEF

16.    For an order requiring that Defendants provide a complete accounting to Plaintiffs of all monies, gains, profits, and advantages Defendants have derived from any rights or interests in the Compositions;

17.    For an order requiring that Defendants provide a complete restitution to Plaintiffs of all monies, gains, profits, and advantages, derived from any rights or interests in the Compositions, and owed to Plaintiffs;

18.    For an order imposing a constructive trust over all monies, gains, profits, and advantages that Defendants wrongfully or unlawfully derived or

shall derive from any rights or interests in the Compositions;

19.    For an order preliminarily during the pendency of this action and thereafter permanently enjoining Defendants, and all persons acting in concert with them, from engaging in such further unfair, fraudulent, and/or unlawful business practices and unfair competition under California Business and Professions Code §§ 17200 *et seq.* and/or §§ 17500 *et seq.*, as alleged hereinabove; and

20.    For such other and further relief and remedies available under California Business and Professions Code §§ 17200 *et seq.* and/or §§ 17500 *et seq.*, which the Court may deem just and proper.

<u>ON ALL CLAIMS FOR RELIEF</u>

21.    For Plaintiffs' costs of suit;

22.    For interest at the highest lawful rate on all sums awarded Plaintiffs other than punitive damages;

23.    For reasonable attorneys' fees; and

24.    For such other and further relief as the Court deems just and appropriate.

Dated: January 12, 2018          TOBEROFF & ASSOCIATES, P.C.


By: _____*/s/ Marc Toberoff*_____
                    Marc Toberoff

Attorneys for Plaintiffs Deanna Brown-Thomas, Yamma Brown, Venisha Brown, Michael D. Brown, Nicole C. Brown, Jeanette Mitchell Bellinger, Sarah LaTonya Fegan, Ciara Pettit and Cherquarius Williams

## **JURY TRIAL DEMANDED**

Plaintiffs hereby request a trial by jury on each claim for relief alleged in the Complaint that is triable by a jury.

Dated: January 12, 2018          TOBEROFF & ASSOCIATES, P.C.

By:   */s/ Marc Toberoff*_____
                    Marc Toberoff

Attorneys for Plaintiffs Deanna Brown-Thomas, Yamma Brown, Venisha Brown, Michael D. Brown, Nicole C. Brown, Jeanette Mitchell Bellinger, Sarah LaTonya Fegan, Ciara Pettit and Cherquarius Williams