# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### AIKEN DIVISION

Deanna Brown-Thomas, *an individual and in her capacity as intestate heir and pending Personal Representative of the estate of her sister, the deceased Venisha Brown*; Yamma Brown, *an individual*; Michael D. Brown, *an individual*; Nicole C. Brown, *an individual*; Jeanette Mitchell Bellinger, *an individual*; Sarah LaTonya Fegan, *an individual*; Ciara Pettit, *an individual*; and Cherquarius Williams, *an individual*,

        Plaintiffs,

        v.

Tommie Rae Hynie, *an individual also known as Tommie Rae Brown*; James J. Brown, II, *an individual*; Russell L. Bauknight, *as the Personal Representative of the Estate of James Brown and Trustee of the James Brown I Feel Good Trust*; David C. Sojourner, Jr., *as the Limited Special Administrator of the Estate of James Brown and Limited Special Trustee of the James Brown I Feel Good Trust*; and Does, *1 through 10, inclusive*,

        Defendants.

Civil Action No.: 1:18-cv-02191-JMC

**ORDER**

"[F]or it is procedure that marks much of the difference between rule by law and rule by fiat."[1]

This matter is before the court for review of Defendant Tommie Rae Hynie ("Defendant Hynie")[2] and Defendant James J. Brown, II's ("Defendant Brown") Motions to Dismiss. (ECF

---

[1] *Wisconsin v. Constantineau*, 400 U.S. 433, 436 (1971).

[2] In their pleadings, Plaintiffs Deanna Brown-Thomas, Yamma Brown, Michael D. Brown, Nicole C. Brown, Jeanette Mitchell Bellinger, Sarah LaTonya Fegan, Ciara Pettit, and Cherquarius Williams's (collectively, "Plaintiffs") assert that Defendant Tommie Rae Hynie's ("Defendant Hynie") last name is "Hynie." (ECF Nos. 1, 89, 96.) Defendant Hynie, on the other hand, uses the last name "Brown." (ECF Nos. 81, 99.) Upon careful consideration of the parties' strong opinions

Nos. 81, 101.) Defendant Hynie's Motion was filed on September 11, 2018, while Defendant

Brown's Motion was filed on August 10, 2018. (ECF Nos. 81, 101.) Within their Motions to

Dismiss, Defendants assert that Plaintiffs Deanna Brown-Thomas, Yamma Brown, Michael D.

Brown, Jeanette Mitchell Bellinger, Sarah LaTonya Fegan, Ciara Pettit, and Cherquarius

Williams's (collectively, "Plaintiffs") Complaint (ECF No. 1) must be dismissed for insufficient

service of process under Federal Rule of Civil Procedure 12(b)(5). (ECF No. 81 at 20; ECF No.

101 at 13.) The court held arguments on this matter on January 22, 2019. (ECF No. 144.) For the

reasons stated herein, the court **DENIES IN PART** Defendant Hynie's Motion to Dismiss (ECF

No. 81) and Defendant Brown's Motion to Dismiss (ECF No. 101), both under Federal Rule of

Civil Procedure 12(b)(5). However, the court **ORDERS** Plaintiffs to properly serve Defendant

Hynie and Defendant Brown pursuant to the provisions of the Hague Convention and laws of the

United Kingdom within one hundred twenty (120) days.

## I. FACTUAL AND PROCEDURAL BACKGROUND

James J. Brown ("James Brown") was an American singer that was born in Barnwell, South

Carolina. *See* Harry Weinger & Cliff White, *Biography About James*, JAMES BROWN,

http://www.jamesbrown.com/bio (last visited Jan. 20, 2019).[3] He married Defendant Hynie in

---

on this matter, and given the number of parties with the last name "Brown," the court will utilize "Hynie" within its orders because the action has been filed in the name of Tommie Rae Hynie (ECF No. 1).

[3] Under the Federal Rules of Evidence, the court is permitted to "take judicial notice on its own." FED. R. EVID. 201(c). Moreover, the court may take judicial notice of a fact "that is not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(1)–(2). Based upon the pleadings, there is no dispute concerning where James Brown ("James Brown") was born or the biographical contents of his website. (ECF Nos. 1, 80, 81, 85, 89, 96, 97, 98, 101, 103, 104.) Additionally, provided that the website on which the facts are based is James Brown's official website, this is a fact that may be "accurately and readily determined" from a source "whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). *See generally Doron Precision Sys., Inc. v. FAAC, Inc.*, 423

December 2001. (ECF No. 1 at 10 ¶ 38.) Through the union of Defendant Hynie and James Brown, Defendant Brown was born in 2001. (ECF No. 81 at 10.) On the morning of December 25, 2006, James Brown died. (ECF No. 1 at 3 ¶ 7.) James Brown's will omitted Defendant Hynie and Defendant Brown. (*Id.* at 11 ¶ 41.) In 2007, Defendant Hynie and Defendant Brown brought challenges to James Brown's will and trust. (*Id.* at 11 ¶ 42.) Defendant Hynie filed for her spousal rights in South Carolina, which would have entitled her to a statutory elective share and a one-half omitted spouse's share, while Defendant Brown asserted his state statutory child share as a lawful heir. (ECF No. 80-1 at 3.) James Brown's adult children also brought challenges to set aside his will. *See Wilson v. Dallas*, 743 S.E.2d 746, 750–51 (S.C. 2013). (*See also* ECF No. 80-1 at 3; ECF No. 80-2 at 29.) As a result of these collective challenges, James Brown's will was submitted to the Probate Court of Aiken County, South Carolina. (ECF No. 1 at 11 ¶ 42.) Eventually, the Probate Court of Aiken County, South Carolina, transferred the administration of James Brown's estate to the Aiken County Court of Common Pleas. (ECF No. 1 at 11 ¶ 43; ECF No. 80-1 at 4.)

Following litigation in the Aiken County Court of Common Pleas, in 2013, the South Carolina Supreme Court reversed the trial court's approval of a family settlement regarding James Brown's estate, upheld the removal of several fiduciaries, and remanded the case for the appointment of new fiduciaries. (ECF No. 85 at 4 (citing *Wilson*, 743 S.E.2d at 768).) On October 1, 2013, the Aiken County Court of Common Pleas appointed Defendant Russell L. Bauknight ("Defendant Bauknight") to serve as the personal representative of the estate and trustee of the

---

F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (taking judicial notice of information "publicly announced on a party's website" because the authenticity was not in dispute, and the information was "capable of accurate and ready determination." (quoting Fed. R. Evid. 201(b))). The court takes judicial notice of the website only for purposes of indicating the birthplace of James Brown. *See Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089, 1093 (E.D. Cal. 2011) ("[J]udicially noticed documents may be considered only for limited purposes.").

trust. (ECF No. 85-1 at 27–29.) On October 10, 2013, Defendant David C. Sojourner, Jr. ("Defendant Sojourner") was appointed as a limited special administrator of James Brown's estate and tasked with defending the estate against challenges. (ECF No. 85-1 at 35–36 ¶¶ 3–4.)

In 2015, the Aiken County Court of Common Pleas determined that Defendant Hynie was the surviving spouse of James Brown. (ECF No. 80-1 at 6.) During that same year, the lower court held that Defendant Brown was the biological son and a lawful heir to James Brown. (ECF No. 101-4.) In 2018, the South Carolina Court of Appeals also held that Defendant Hynie was the surviving spouse of James Brown. *See In re Estate of Brown*, 818 S.E.2d 770, 776 (S.C. Ct. App. 2018) ("Therefore, we find the trial court did not err in finding [Defendant Hynie] was married to Brown.").[4] Currently, Plaintiffs are appealing the spousal status of Defendant Hynie to the South Carolina Supreme Court.[5]

Plaintiffs originally filed their Complaint on January 12, 2018, in the United States District Court for the Central District of California. (ECF No. 1.) First, Plaintiffs seek relief from the court under the Copyright Act, 17 U.S.C. §§ 203, 304, and the Declaratory Judgment Act, 28 U.S.C. § 2201. (*Id.* at 20–22 ¶¶ 74–77.) Plaintiffs allege that Defendants have "conspired . . . to

---

[4] Generally, under the Federal Rules of Evidence, a federal court "may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508–09 (4th Cir. 2015) (citations omitted). *See generally Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record." (citation omitted)); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that '[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'" (citation omitted)).

[5] During a hearing on January 22, 2019, Plaintiffs and Defendants readily acknowledged that Plaintiffs are seeking review of Defendant Hynie's spousal status by the South Carolina Supreme Court. Pursuant to the Federal Rules of Evidence, the court takes judicial notice that this matter is currently pending before the South Carolina Supreme Court. *See* Fed. R. Evid. 201(b). *See also City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1278 (E.D.N.Y. 1995) ("[T]his [c]ourt is required to take judicial notice of the pending state court action.").

usurp [their] rights and interests in [James] Brown's [c]ompositions." (*Id.* at 4 ¶ 13.) Plaintiffs seek a declaration establishing that a "Settlement Agreement" or any "Concealed Terms," specifically among Defendants, is unenforceable and void as a matter of law. (*Id.* at 21 ¶ 76.) Plaintiffs believe that Defendants have wrongfully deprived them of their termination interests pursuant to a Settlement Agreement and Concealed Terms and failed to comply with the appropriate procedures of the Copyright Act. (*Id.* at 17, 20–21 ¶¶ 60–62, 75–76.) Further, Plaintiffs maintain that they are "entitled to a preliminary injunction during the pendency of this action, and thereafter to a permanent injunction . . . ." (*Id.* at 22 ¶ 77.) Secondly, Plaintiffs bring a range of claims arising under South Carolina law. (*Id.* at 22–31 ¶¶ 78–114.) Specifically, Plaintiffs allege the following state law claims: (1) accounting; (2) conversion; (3) unjust enrichment; (4) intentional interference with prospective economic advantage; (5) negligent interference with prospective economic advantage; and (6) common law unfair competition. (*Id.* at 22–23, 27–28, 30 ¶¶ 79, 84, 97, 102, 109.) The United States District Court for the Central District of California transferred this matter to the United States District Court for the District of South Carolina on August 7, 2018. (ECF No. 70.)

Defendant Hynie filed her Motion to Dismiss on September 11, 2018. (ECF No 81.) Defendant Brown filed his Motion to Dismiss on October 10, 2018. (ECF No. 101.) Within their Motions to Dismiss, Defendants bring legal challenges to the court's subject-matter jurisdiction under 28 U.S.C. § 1338(a). (ECF No. 81 at 12–18; ECF No. 101 at 4–10.) In addition, Defendants allege that they were improperly served under Federal Rule of Civil Procedure 4(f), requiring dismissal of Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(5). (ECF No. 81 at 20; ECF No. 101 at 13.) As it relates to insufficient service of process, Defendant Hynie and

Defendant Brown, both of whom reside in the United Kingdom,[6] maintain that Plaintiffs failed to comply with the prescribed methods of service authorized by the Hague Convention. (ECF No. 81 at 20; ECF No. 101 at 13.) Plaintiffs responded to Defendant Hynie and Defendant Brown's Motions to Dismiss on October 4, 2018, and October 24, 2018, respectively. (ECF Nos. 96, 111.) Plaintiffs submit that Defendant Hynie and Defendant Brown's claims concerning insufficient service of process are meritless because they were properly served pursuant to the laws of the United Kingdom. (ECF No. 96 at 23; ECF No. 111 at 28.) Critical to their argument, Plaintiffs contend that they could serve Defendant Hynie and Defendant Brown under any method permitted by Federal Rule of Civil Procedure 4(f). (ECF No. 96 at 24; ECF No. 111 at 29.)

On January 22, 2019, the court heard arguments from Plaintiffs and Defendants regarding the sufficiency of process under the Federal Rules of Civil Procedure. (ECF No. 144.) Although Defendants were conspicuously silent as to whether service of process was proper as to Defendant Brown, they forcefully maintained that service of process was improper as to Defendant Hynie. Nevertheless, Defendants requested that the court dismiss Plaintiffs' Complaint for insufficient service of process as to both Defendant Hynie and Defendant Brown. By contrast, Plaintiffs continued to argue that service of process was proper as to both Defendant Hynie and Defendant Brown and suggested that Plaintiffs were at liberty to choose any delineated method of service under Federal Rule of Civil Procedure 4(f). Plaintiffs also maintained that they were not required to comply with the Hague Convention's mandates. This issue has been extensively briefed by the parties and is now ready for the court's review. *See generally Sauls v. Wyeth Pharm., Inc.*, 846 F.

---

[6] Finally finding consensus, Plaintiffs and Defendants readily agree that Defendant Hynie and Defendant Brown are residing in the United Kingdom. (*See* ECF No. 81 at 20; ECF No. 96 at 23; ECF No. 101 at 13; ECF No. 111 at 28.)

Supp. 2d 499, 501 (D.S.C. 2012) ("The parties have fully briefed the issues, and this matter is ripe for consideration.").

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a moving party may attempt to dismiss a complaint for "insufficient service of process." *See* FED. R. CIV. P. 12(b)(5). *See generally Redding v. Sun Printing Inc.*, C/A No. 5:12–cv–02113–JMC, 2013 WL 2149685, at *2 (D.S.C. May 6, 2013) ("Rule 12(b)(5) of the Federal Rules of Civil Procedure provides that a court may dismiss a claim that fails to comply with the requirements of service of process under Rule 4." (citing FED. R. CIV. P. 12(b)(5))). Rule 4 of the Federal Rules of Civil Procedure provides several ways for a plaintiff to serve a defendant. *See* FED. R. CIV. P. 4(e)–(j). As it relates to serving individuals within foreign countries, Rule 4(f) provides the following:

> Unless federal law provides otherwise, an individual–*other than a minor*, an incompetent person, or a person whose waiver has been filed–may be served at a place not within any judicial district of the United States:
>
> (1) *by any internationally agreed means* that is reasonably calculated to give notice, *such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents*;
>
> (2) *if there is no internationally agreed means*, *or if an international agreement allows but does not specify other means*, by a method that is reasonably calculated to give notice:
>
> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> (C) unless prohibited by the foreign country's law, by:
>
> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>
> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f) (emphasis added). "*A minor . . . who is not within any judicial district of the United States must be served* in the manner prescribed by Rule 4(f)(2)(A), (f)(2)(B), or (f)(3)." Fed. R. Civ. P. 4(g) (emphasis added). Plaintiffs do not have a time limit for serving individuals or minors residing within foreign countries. *See* Fed. R. Civ. P. 4(m) ("This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A)."). "The plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4." *Ballard v. PNC Fin. Servs. Grp., Inc.*, 620 F. Supp. 2d 733, 735 (S.D.W. Va. 2009) (quoting *Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003)).

A federal district court has discretion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(5). *See Ashmore v. Barber*, C/A No. 8:15-cv-04484-JMC, 2016 WL 4555340, at *2 (D.S.C. Sept. 1, 2016) ("The court has discretion to dismiss a case under Fed. R. Civ. P. 12(b)(5) for insufficient service of process." (citation omitted)); *Walker v. Prince George's Cty.*, 2016 WL 1572866, at *2 (D. Md. Apr. 18, 2016) ("The propriety of dismissal under Rule 12(b)(5) is left to the sound and broad discretion of the court." (citing Fed. R. Civ. P. 12(b)(5); *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992))). *See also Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016) ("We review a district court's decision for abuse of discretion, where as here, it dismisses a claim for improper service of process under Rule 12(b)(5)." (citation omitted)); *Danik v. Hous. Auth. of Balt. City*, 396 F. App'x 15, 16 (4th Cir. 2010) ("We review for abuse of discretion a district court's grant of a motion to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5)." (citing *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010); *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 708 (4th Cir. 1993))). "Generally, when service of process gives the defendant actual notice of the pending action, [a] court[] may construe Rule 4

liberally to effectuate service and uphold the jurisdiction of the court." *O'Meara v. Waters*, 464 F. Supp. 2d 474, 476 (D. Md. 2006) (citing *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984); *Karlsson v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963)). "Although insufficient service of process does not necessarily warrant dismissal, the court may dismiss the complaint for failure to comply with Rule 4 or quash the service, thereby permitting the plaintiff to attempt to properly serve the defendant." *Miller v. Balt. City Bd. of Sch. Comm'rs*, 883 F. Supp. 2d 513, 516 (D. Md. 2011) (citing *Vorhees v. Fischer & Krecke*, 697 F.2d 574, 575–76 (4th Cir. 1983)). In some instances, it is improper to dismiss a complaint when the plaintiff can properly serve the defendant. *See Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 526–27 (M.D.N.C. 1996) ("Dismissal under Rule 12(b)(5) is 'not justified where it appears that service can be properly made.'" (quoting *Coastal Neuro-Psychiatric Assocs., P.A. v. Onslow Cty. Hosp. Auth.*, 607 F. Supp. 49, 50 (E.D.N.C. 1985))). Nevertheless, a federal court may not ignore the "plain requirements of effecting service" under Rule 4 of the Federal Rules of Civil Procedure. *O'Meara*, 464 F. Supp. 2d at 476 (citing *Armco*, 733 F.2d at 1089).

### III. DISCUSSION

A. <u>Service of Process upon Defendant Hynie</u>

Defendant Hynie argues that Plaintiffs' Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) because, as required by Rule 4(f)(1), she was not served pursuant to the procedures of the Hague Convention. (ECF No. 81 at 20.) Plaintiffs, however, adopt a wholly different theory. (ECF No. 96 at 23–24.) Plaintiffs maintain that they are at liberty to serve a foreign individual under any of the methods delineated within Rule 4(f). (*Id.* at 23 ("Rule 4(f) allows service on a party located abroad through a variety of means, including 'as prescribed by the foreign country's laws for service in that country.'" (quoting FED. R. CIV. P. 4(f)(2)(A)).)

Plaintiffs' argument is not only unavailing, it is in tension with the express mandates of Rule 4, while Defendant Hynie's argument selectively interprets the Hague Convention. Neither argument can withstand legal muster.

A foreign individual may only be served under Rule 4(f)(2) if "*there is no internationally agreed means*, or if an international agreement allows but does not specify other means, . . . ." FED. R. CIV. P. 4(f)(2) (emphasis added). Federal courts have routinely recognized that a plaintiff cannot, at his or her own behest, choose to follow Rule 4(f)(2), as opposed to Rule 4(f)(1), if an international agreement exists between two different countries. *See Ultra Records, LLC v. Chee Yee Teoh*, 2017 WL 1753485, at *1 (S.D.N.Y. Apr. 18, 2017) ("Service on a foreign defendant pursuant to the Hague Convention . . . is 'mandatory' when serving a defendant who resides in a foreign country that is a signatory to the Convention." (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988))). *See also Fed. Ins. Co. v. Cessna Aircraft Co.*, No. 16-2755-JWL, 2017 WL 2905576, at *2 (D. Kan. July 7, 2017) ("If there is no internationally agreed means of service or an international agreement allows but does not specify other means (as here under the Convention), Rule 4(f)(2) . . . allows for service by a method reasonably calculated to give notice . . . ."); *Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, CV 16-04502-BRO (MRWx), 2016 WL 7479373, at *3 (C.D. Cal. Sept. 8, 2016) ("Under Rule 4(f)(2), if a country is not a signatory to the Hauge Convention a plaintiff may serve a foreign individual 'by a method that is reasonably calculated to give notice.'" (quoting FED. R. CIV. P. 4(f)(2))); *Tatung Co., Ltd. v. Shu Tze Hsu*, No. SA CV 13–1743–DOC (ANx), 2016 WL 7634672, at *2 (C.D. Cal. Aug. 18, 2016) ("Because there are no applicable international agreements, Rule 4(f)(2) applies."). Only when a nation has refused to adopt the Hague Convention may a plaintiff not attempt service under its procedures. *See Nuance Commc'ns, Inc. v. Abbyy Software House*,

626 F.3d 1222, 1238 (Fed. Cir. 2010).

Turning to the case at hand, the United Kingdom, the undisputed residence of Defendant Hynie and Defendant Brown, is a signatory to the Hague Convention with the United States of America. *See Baskett v. Autonomous Research LLP*, C/A No. 17-CV-9237 (VSB), 2018 WL 4757962, at *12 (S.D.N.Y. Sept. 28, 2018) ("Compliance with the Hague Convention, to which both the United States and the United Kingdom are signatories, is mandatory in all cases in which it applies." (citing *Volkswagenwerk*, 486 U.S. at 705)); *Thomas & Thomas Rodmakers, Inc. v. Sharpe's, Inc.*, No. 1:06-CV-421, 2007 WL 1057382, at *3 (S.D. Ohio Apr. 5, 2007) ("Compliance with the Hague Convention . . . to which both the United States and the United Kingdom are signatories, is mandatory in all cases in which it applies." (citing *Volkswagenwerk*, 486 U.S. at 705)). *See also HCCH Members*, Hague Conference on Private Int'l Law, https://www.hcch.net/en/states/hcch-members (last visited Jan. 31, 2019). Because the United Kingdom is a signatory to the Hague Convention with the United States, Plaintiffs, despite their unwarranted belief, were required to comply with the Hague Convention's procedures and requirements as mandated by Federal Rule of Civil Procedure 4(f)(1). *Volkswagenwerk*, 486 U.S. at 705; *Baskett*, 2018 WL 4757962, at *12. The court must now determine whether Plaintiffs complied with the provisions of the Hague Convention.

As a self-executing treaty, the Hague Convention is of equal dignity with the laws of Congress. *See Vorhees*, 697 F.2d at 575–76; *Randolph v. Hendry*, 50 F. Supp. 2d 572, 575 (S.D.W. Va. 1999). The Hague Convention provides a variety of methods for international service. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention") arts. 2–15, *opened for signature* Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Under Article 2, all signatory countries are required to designate a "Central

Authority" to process the requests for service from parties residing in other signatory countries. *See id.* art. 2, 20 U.S.T. at 362, 658 U.N.T.S. at 165. Pursuant to Articles 3 through 6, judicial officers and the Central Authorities of signatory nations are provided with different procedures to ensure effective service. *See id.* arts. 3–6, 20 U.S.T. at 362–63, 658 U.N.T.S. at 168–69. Article 8 allows signatory nations to effect service directly through their diplomatic or consular agents. *See id.* art. 8, 20 U.S.T. at 363, 658 U.N.T.S. at 169. Article 9 permits a state to use "consular channels to forward documents" or, if exceptional circumstances exist, diplomatic channels for the same purpose. *See id.* art. 9, 20 U.S.T. at 363, 658 U.N.T.S. at 169.

In addition to executing service through a country's Central Authority or diplomatic channels, "member states also determined that states should be free to consent to additional methods of service within their own borders, consistent with their own laws; consequently, Articles 8 and 10 provide for alternative methods of service and allow ratifying states to decide whether they will object to the methods described." *Koehler v. Dodwell*, 152 F.3d 304, 307 (4th Cir. 1998) (citations omitted). Of relevance to the case at hand, Article 10(c) provides that "any person interested in a judicial proceeding [may] effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Hague Convention art. 10, 20 U.S.T. at 363, 658 U.N.T.S. at 171. In reference to Article 10(c), the United Kingdom has declared that "documents for service *through official channels* will be accepted in the United Kingdom *only by the central* or *additional authorities* and *only from judicial, consular or diplomatic officers* of other Contracting States." Declarations Made at the Time of Deposit of the Instruments of Ratification, U.K.-N. Ir., Nov. 17, 1967, 658 U.N.T.S. at 193 (emphasis added), https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=427&disp=resdn (last visited Feb. 1, 2019). Contrary to Defendant

Hynie's belief that the United Kingdom "does not recognize" Article 10(c) as a mechanism for service (ECF No. 81 at 20 n.16), the United States Court of Appeals for the Fourth Circuit has held that the United Kingdom has not rejected the entirety of Article 10(c), and this court is tasked with honoring the Fourth Circuit's determination.[7] *See Koehler*, 152 F.3d at 307–08. Moreover, other federal courts have followed the lead of the Fourth Circuit and declined to view the United Kingdom's reservation of Article 10(c) as a categorical objection to its application. *See also Health Sci. Distribs., Co. v. Usher-Sparks*, No. 6:10–cv–1797–ORL–31KRS, 2012 WL 601148, at *2 (M.D. Fla. Jan. 20, 2012) ("The United Kingdom objected to service of documents 'through official channels' by the means set forth in Article 10(b) and (c)."); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 240 F.R.D. 608, 609 (S.D.N.Y. 2007) ("The United Kingdom, on behalf of Bermuda, took a very limited reservation with regard to paragraphs (b) and (c) of Article 10[] . . . ." (citations omitted)); *IM Partners v. Debit Direct Ltd.*, 394 F. Supp. 2d 503, 511 (D. Conn. 2005) ("American courts have consistently interpreted this declaration not as a[] categorical objection to Article 10, but only as an objection regarding 'documents sent for service through official channels,' which have been defined as 'documents from an embassy or consular official.'" (citations omitted)). Thus, the Hague Convention does not preclude direct service of process, *i.e., service not made through the Central Authority*, in the United Kingdom when the service conforms to the requirements of Article 10(c). *See Koehler*, 152 F.3d at 307–08. *See also U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd.*, No. 07 C 3598, 2008 WL 1883308, at *4–5 (N.D. Ill. Apr. 24, 2008) (applying Article 10(c) of the Hague Convention to the United Kingdom and its territories).

---

[7] "[A] lower court generally is 'bound to carry the mandate of the upper court into execution . . . .'" *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)).

As mentioned above, Article 10(c) permits "*any person interested* in a judicial proceeding to effect service of judicial documents *directly through the judicial officers, officials or other competent persons* of the State of destination." Hague Convention art. 10, 20 U.S.T. at 363, 658 U.N.T.S. at 171 (emphasis added). First, as already decided by the Fourth Circuit, Plaintiffs' undersigned is considered a "person interested in a judicial proceeding" under Article 10(c). *See Koehler*, 152 F.3d at 307. Secondly, a process server is considered a "competent person" that may render such service upon an individual within the United Kingdom. *See id.* at 307–08 (holding that a process server was a "competent person" to render effective service in Bermuda, a territory of the United Kingdom). *See also Selmani v. Kline*, Civ. No. 2:16-cv-00264 (WJM), 2016 WL 5339574, at *2 (D.N.J. Sept. 22, 2016) (holding that, pursuant to the Hague Convention, a party may use a process server to effectuate process within the United Kingdom); *Health Sci. Distribs., Co.*, 2012 WL 601148, at *3 (determining that the use of a process server is permissible in the United Kingdom); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 240 F.R.D. at 609–10 (holding that the United Kingdom did not object to the use of process servers, and the use of a process server was valid in Bermuda). The parties do not dispute that Plaintiffs, through their undersigned, hired a process server in the United Kingdom to attempt service upon Defendant Hynie.[8] (ECF No. 17 at 3; ECF No. 96 at 24.) Therefore, Plaintiffs and their undersigned retained a "competent person" under the Hague Convention to effectuate process. *See Koehler*, 152 F.3d at 307–08 (holding that a plaintiff lawfully "forewent 'official channels' by forwarding the papers directly from his attorney to a private process server in Bermuda"). *See also Baskett*, 2018 WL 4757962, at *13–14 (finding a process server, based in the United Kingdom, as a "competent person" under Article

---

[8] There is no indication that Plaintiffs attempted to serve Defendant Hynie and Defendant Brown through the United Kingdom's Central Authority. (*See* ECF No. 96 at 23; ECF No. 111 at 28.)

10(c) of the Hague Convention).

Because Plaintiffs attempted to serve Defendant Hynie within the United Kingdom through a process server, the court must now decide whether that service was properly executed by the server. *See Volkswagenwerk*, 486 U.S. at 700 ("The legal sufficiency of service of process must be measured against some standard."); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 240 F.R.D. at 609–10 (analyzing whether service was correctly executed under Article 10(c) of the Hague Convention); *Thomas & Thomas Rodmakers, Inc.*, 2007 WL 1057382, at *3–4 (opining that service was valid to the extent it complied with the internal laws of another country). Indeed, the court would lack personal jurisdiction over Defendant Hynie if she was inappropriately served. *See Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 391 (2018) ("Typically, service of process is a precondition to a court's exercise of personal jurisdiction over a defendant." (citing *Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1135–36 (4th Cir. 1984))). In this instance, to determine if service was legally sufficient, the court must examine the laws of the United Kingdom as permitted by Article 19 of the Hague Convention.[9] *See* Hague Convention, 20 U.S.T. at 365, 658 U.N.T.S. at 175. *See*

---

[9] Article 10(c) of the Hague Convention only states that a "competent person" may "effect service." Hague Convention art. 10, 20 U.S.T. at 363, 658 U.N.T.S. at 171. It does not provide a definition for "effect service." *See Zamora v. JP Morgan Chase Bank, N.A.*, No. 14-CV-05344 (WHP)(SN), 2017 WL 2954680, at *4 (S.D.N.Y. June 21, 2017). Despite the silence of Article 10(c) as to this phrase, Article 19 states the following: "To the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions." Hague Convention, 20 U.S.T. at 365, 658 U.N.T.S. at 175. The United States Court of Appeals for the Fourth Circuit has not yet addressed the meaning and scope of Article 19. However, the court is persuaded by a well-reasoned opinion by Judge Ellis of the Eastern District of Virginia, which concludes that Article 19 "allow[s] only those methods of service explicitly sanctioned by the contracting state." *ePlus Tech., Inc. v. Aboud*, 155 F. Supp. 2d 692, 700 (E.D. Va. 2001). As such, Article 19 provides the court with authority to determine whether Defendant Hynie and Defendant Brown were properly served under the laws of the United Kingdom. *See id.* at 700–01 (applying the Quebec Code of Civil Procedure after determining that Article 19 permits a defendant to be served pursuant to the laws of the foreign nation in which they reside).

*also Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V.*, 384 F.3d 492, 496 (8th Cir. 2004) ("Article 19 allows service by any method of service permitted by the internal law of the country in which service is made."); *Rosen v. Netsaits*, 294 F.R.D. 524, 528–29 (C.D. Cal. 2013) (holding that a party failed to show they properly executed service under the laws of the Netherlands); *Day v. Cornèr Bank (Overseas) Ltd.*, 789 F. Supp. 2d 136, 145 (D.D.C. 2011) ("Where a signatory to the Hague Convention objects to service under Article 10, local methods of service are unavailable to the parties." (citation omitted)); *Humble v. Gill*, C/A No. 1:08-cv-00166-JHM-ERG, 2009 WL 151668, at *2–3 (W.D. Ky. Jan. 22, 2009) (analyzing the service laws of Canada); *Thomas & Thomas Rodmakers, Inc.*, 2007 WL 1057382, at *6 ("Article 19 of the Hague Convention permits service of documents according to the internal laws of the contracting state." (citation omitted)); *ePlus Tech., Inc. v. Aboud*, 155 F. Supp. 2d 692, 700–01 (E.D. Va. 2001) (holding that Article 19 permits any method of service "explicitly sanctioned" by a foreign nation and applying the Quebec Code of Civil Procedure to determine that a defendant was improperly served under the laws of Quebec); *In re Greater Ministries Intern, Inc.*, 282 B.R. 496, 499 (Bankr. M.D. Fla. 2002) ("[T]he provisions of the Hague Convention, along with the local Canadian Rules of Procedure, are applicable to the issue of service herein.").

Rule 6.3(1) of the Civil Procedure Rules of the United Kingdom provides a variety of ways to serve an individual within the United Kingdom. *See* CPR 6.3(1)(a)–(e), *Methods of Service*, Ministry of Justice, https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06#6.3 (last visited Feb. 4, 2019). Rule 6.3(1) permits novel methods of service in comparison to methods within the United States. *Compare* CPR 6.3(1)(a)–(e), *with* Fed. R. Civ. P. 4(e)(1)–(2). For example, it specifically allows service by "fax or other means of electronic communication" or "any method" authorized by a court order. CPR 6.3(1)(d)–(e). However, Rule 6.3(1) mirrors the

Federal Rules of Civil Procedure to the extent it authorizes personal service upon an individual and permits a plaintiff to "leave" a "claim form"[10] at an individual's last known or usual residence. *Compare* CPR 6.3(1)(a)–(c), *with* FED. R. CIV. P. 4(e)(2)(A)–(C). As it specifically concerns the delivery of a claim form, Rule 6.3(c) states that a plaintiff can accomplish service by "leaving it at a place specified in rule 6.7, 6.8, 6.9, or 6.10 . . . ." Rule 6.8 allows service at a specific address provided by a defendant, while Rule 6.9 permits service at an individual's "usual or last known residence" when the plaintiff does not wish to effect personal service pursuant to Rule 6.5 and other service rules are inapplicable. CPR 6.8(a), 6.9(1)–(2). Therefore, construing Rule 6.3(1) with Rule 6.9(2), there are circumstances in which it is permissible for a plaintiff to simply leave a complaint at an individual's residence within the United Kingdom. However, as it relates to foreign documents, there is a wrinkle to this otherwise straight-forward scheme. Specifically, Rule 6.48 mandates further procedural requirements for "any document in connection with civil or commercial proceedings in a foreign court." *See* CPR 6.48, 6.50. When Rule 6.48 applies, a "Senior Master will serve a document," and he or she "will determine the method of service." CPR 6.50. If a party follows these provisions, he or she should have "a certificate, sealed with the Seal of the Senior Courts for use out[side] of the" United Kingdom. *See* CPR 6.52(2). These provisions specifically apply to signatory countries of the Hague Convention, including the United States. *See* CPR 6.31(c), 6.49(a).

Here, the process server, under penalty of perjury, testifies that he attempted to personally serve Defendant Hynie on two different days and was unable to obtain a reply. (ECF No. 17 at 3

---

[10] Rule 6.2(c) of the Civil Procedure Rules of the United Kingdom defines a "claim" as a "petition and any application made before action or to commence proceedings and 'claim form' . . . [is] to be construed accordingly." Despite nuances in terminology, there is not a substantive difference between the United Kingdom's "claim form" and the United States' "complaint" because both may be used to initiate a lawsuit or civil action. *Compare* CPR 6.2(c), *with* FED. R. CIV. P. 3.

¶¶ 3–4.) In a third attempt, the process server was met by "an adult male . . . who confirmed that [Defendant Hynie]" resided at the address where the process server was trying to accomplish personal service. (*Id.* at 3 ¶ 5.) The process server tried to personally serve Defendant Hynie for a fourth time, but was unsuccessful yet again. (*Id.* at 4 ¶ 6.) During his fifth visit to Defendant Hynie's residence, the process server inserted the Complaint and Summons through Defendant Hynie's "letterbox." (*Id.* at 4 ¶ 7.) Under Rules 6.3(1)(c) and 6.9, the process server was permitted to "leave" Plaintiffs' Complaint at Defendant Hynie's last known residence. There is no evidence suggesting that Defendant Hynie provided another address to properly effect service, which would have required the process server to act pursuant to Rule 6.8 as opposed to Rule 6.9. Additionally, there is no evidence suggesting that Defendant Hynie was required to have personal service, which would have narrowed the permissible methods of service at the process server's disposal. *See* CPR 6.5(1).

Although it seems that the process server acted properly under some of the laws of the United Kingdom, the process server did not comply with Rule 6.48. (*See* ECF No. 17.) When Rule 6.48 applies, it specifically requires a Senior Master to serve a foreign document and specify the method of service upon a defendant. *See* CPR 6.50, 6.51. Based upon the affidavit of Plaintiffs' process server, there is no indication that he acted pursuant to the directions of a Senior Master. (*See* ECF No. 17.) Instead, the process server testifies that he was exclusively authorized to serve Defendant Hynie by Plaintiffs' undersigned, not by a Senior Master. (*See id.*) Moreover, Plaintiffs have not provided the court with a certificate stating how and when the Complaint was served, which should have been provided under CPR 6.52. (*See* ECF No. 17.) At least one other federal court has determined that a process server's failure to work with a Senior Master renders service of process defective within the United Kingdom. *See Miramontes v. Mills*, No. CV 11–08603

MMM (SSX), 2014 WL 12738922, at *5–6 (C.D. Cal. June 25, 2014). For these reasons, Defendant Hynie was not properly served under the provisions of the Hague Convention and the Civil Procedure Rules of the United Kingdom.

Even though Defendant Hynie was not properly served, it would be a pointless exercise for the court to dismiss Plaintiffs' Complaint when service could be properly effectuated at a later date. *See Freeze-Dry Prods., Inc. v. Metro Park Warehouse, Inc.*, 159 F.R.D. 45, 46 (D. Kan. 1994) (declining to dismiss a plaintiff's complaint when it would be "relatively pointless" because it would not bar the plaintiff's claim and simply require the plaintiff to "refile and re-serve [the] defendant"). Under Federal Rule of Civil Procedure 4(m), parties do not face any time limits for effecting service upon an individual residing in a foreign country. *See* FED. R. CIV. P. 4(m). Accordingly, were the court to dismiss the Complaint, Plaintiffs could properly serve Defendant Hynie and initiate second proceedings, in this very court, with very little effort. *See id. See also Mitchell v. Theriault*, 516 F. Supp. 2d 450, 457–58 (E.D. Pa. 2007) (declining to dismiss a complaint because the plaintiffs were "not time-barred" from properly serving a defendant in Canada and there was a "reasonable prospect" that service could be obtained). Therefore, the court finds itself in a situation where it may exercise its discretion in deciding whether to dismiss Plaintiffs' Complaint. *See Ashmore*, C/A No. 8:15-cv-04484-JMC, 2016 WL 4555340, at *2. Because Plaintiffs can properly serve Defendant Hynie, particularly when they seem to know her location, there is no justification for dismissing Plaintiffs' Complaint. *See Plant Genetic Sys., N.V.*, 933 F. Supp. at 526–27. *See also Kexuan Yao v. Crisnic Fund, S.A.*, No. SACV 10–1299 AG (JCGx), 2011 WL 3818406, at *8 (C.D. Cal. Aug. 29, 2011) ("[T]he [c]ourt should only dismiss the complaint for failure of service when there is no reasonable prospect that service may be completed." (citation omitted)). In addition, based upon its alleged delivery, there is no evidence

that Defendant Hynie did not receive the Complaint despite the process server's mistake. (*See* ECF Nos. 81, 81-2.) In her own affidavit, Defendant Hynie does not state that she either did not receive or is unaware of Plaintiffs' Complaint that was allegedly delivered to her residence. (*See* ECF No. 81-2 at 3–4 ¶¶ 11–21.) Additionally, during the hearing, Defendant Hynie's counsel did not make any argument claiming that his client was never provided with the Complaint. If anything, the evidence suggests that Defendant Hynie possesses the Complaint because an "adult male" at her alleged residence confirmed that she lived there, which was just a few days before the process server returned to deliver the Complaint. (*See* ECF No. 17 at 3 ¶¶ 5–7.) Therefore, beyond a technical defect with service, nothing suggests that Defendant Hynie was not given "reasonably calculated . . . notice," the chief aim of Rule 4. *See* Fed. R. Civ. P. 4(f). *See generally Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316–17 (1988) ("[T]he requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits." (quoting *Foman v. Davis*, 371 U.S. 178, 181 (1962))). As such, the court declines to dismiss Plaintiffs' Complaint under Rule 12(b)(5) because of such a nuanced issue involving a Senior Master, but orders Plaintiffs to properly serve Defendant Hynie pursuant to the Hague Convention and Civil Procedure Rules of the United Kingdom within one hundred twenty (120) days. *See Cent. United Life, Inc. v. Burwell*, 128 F. Supp. 3d 321, 326 (D.D.C. 2015) ("Dismissing plaintiffs' Complaint without prejudice for lack of standing and waiting for them to refile would be pointless."); *Mitchell*, 516 F. Supp. 2d at 458 (providing plaintiffs with one hundred twenty (120) days to properly serve a foreign defendant and to "ensure that the case proceeds in a timely manner").

B. Service of Process upon Defendant Brown

Indistinguishable from Defendant Hynie, Defendant Brown also contends that he was

improperly served under Federal Rule of Civil Procedure 4(f), which requires the dismissal of Plaintiffs' Complaint under Rule 12(b)(5). (ECF No. 101 at 13.) Defendant Brown argues that Plaintiffs failed to comply with the procedures outlined in the Hague Convention. (*Id.*) Once again, Plaintiffs submit that they were not required to comply with the mandates of the Hague Convention. (ECF No. 111 at 28–32.) Defendant Brown's argument is misguided because it is without basis in the Federal Rules of Civil Procedure. Plaintiffs, on the other hand, assume too much.

Rule 4(f) of the Federal Rules of Civil Procedure specifically states that it applies to any "individual" not within the United States, but it does not apply to "*a minor*, an incompetent person, or a person whose waiver has been filed." *See* FED. R. CIV. P. 4(f) (emphasis added). There is no dispute among the parties that Defendant Brown is a minor under eighteen (18) years old. (*See* ECF No. 1 at 6; ECF No. 111 at 1.) Because Defendant Brown is a minor, Rule 4(f) does not apply to him outright, and, thereby, does not implicate the Hague Convention under Rule 4(f)(1). *See* FED. R. CIV. P. 4(f).

The Federal Rules of Civil Procedure contemplate different avenues of service for minors and incompetent persons. *See* FED. R. CIV. P. 4(g). Under Rule 4(g), "[a] minor or an incompetent person who is not within any judicial district of the United States must be served in the manner prescribed by Rule 4(f)(2)(A), (f)(2)(B), or (f)(3)." *Id.* Rule 4(f)(2)(A) permits service by a method that is "reasonably calculated to give notice," which may be "prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction . . . ." As decided by the court in the preceding section, Defendant Hynie, the mother of Defendant Brown, was not properly served under the laws of the United Kingdom, but the technical defect does not warrant dismissal of the Complaint. *See supra* Part III.A. Because Defendant Brown lives with Defendant

Hynie (ECF No. 17 at 3 ¶ 5), and based upon the legal analysis in the preceding section, the court finds that Defendant Brown's service of process was not legally sufficient under the laws of the United Kingdom. *See supra* Part III.A. More specifically, there is no indication that the process server complied with CPR 6.50, which is required by CPR 6.48. (*See* ECF No. 17.) However, the court declines to dismiss the Complaint because of Plaintiffs' freedom to serve Defendant Brown within an unlimited amount of time under Rule 4(m). *Mitchell*, 516 F. Supp. 2d at 457–58. As such, the court declines to dismiss Plaintiffs' Complaint, but also orders Plaintiffs to properly serve Defendant Brown pursuant to the Hague Convention and Civil Procedure Rules of the United Kingdom within one hundred twenty (120) days. *Id.*

## IV. CONCLUSION

After a careful examination of Defendant Hynie's Motion to Dismiss (ECF No. 81), Defendant Brown's Motion to Dismiss (ECF No. 101), Plaintiffs' Memoranda in Opposition to Defendants Hynie and Brown's Motions to Dismiss (ECF Nos. 96, 111), and the parties' arguments at the hearing, the court **DENIES IN PART** Defendant Hynie's Motion to Dismiss (ECF No. 81) and Defendant Brown's Motion to Dismiss (ECF No. 101), both under Federal Rule of Civil Procedure 12(b)(5). The court **ORDERS** Plaintiffs to serve Defendant Hynie and Defendant Brown pursuant to the provisions of the Hague Convention and laws of the United Kingdom within one hundred twenty (120) days.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

February 6, 2019
Columbia, South Carolina