IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Deanna Brown-Thomas, *an individual and in her capacity as intestate heir and pending Personal Representative of the estate of her sister, the deceased Venisha Brown*; Yamma Brown, *an individual*; Michael D. Brown, *an individual*; Nicole C. Brown, *an individual*; Jeanette Mitchell Bellinger, *an individual*; Sarah LaTonya Fegan, *an individual*; Ciara Pettit, *an individual*; and Cherquarius Williams, *an individual*,<br><br>     Plaintiffs,<br><br>   v.<br><br>Tommie Rae Hynie, *an individual also known as Tommie Rae Brown*; James J. Brown, II, *an individual*; Russell L. Bauknight, *as the Personal Representative of the Estate of James Brown and Trustee of the James Brown I Feel Good Trust*; David C. Sojourner, Jr., *as the Limited Special Administrator of the Estate of James Brown and Limited Special Trustee of the James Brown I Feel Good Trust*; and Does, *1 through 10, inclusive*,<br><br>     Defendants. | Civil Action No.: 1:18-cv-02191-JMC<br><br>**ORDER** |

  This matter is before the court for review of Defendant Tommie Rae Hynie ("Defendant Hynie")[1] and Defendant James J. Brown, II's ("Defendant Brown") Motion to Stay filed on

---

[1] In their pleadings, Plaintiffs Deanna Brown-Thomas, Yamma Brown, Michael D. Brown, Nicole C. Brown, Jeanette Mitchell Bellinger, Sarah LaTonya Fegan, Ciara Pettit, and Cherquarius Williams's (collectively, "Plaintiffs") assert that Defendant Tommie Rae Hynie's ("Defendant Hynie") last name is "Hynie." (ECF Nos. 1, 89, 96.) Defendant Hynie, on the other hand, uses the last name "Brown." (ECF Nos. 81, 99.) Upon careful consideration of the parties' strong opinions on this matter, and given the number of parties with the last name "Brown," the court will utilize "Hynie" within its orders because the action has been filed in the name of "Tommie Rae Hynie" (ECF No. 1).

1

November 5, 2018. (ECF No. 114.) On November 6, 2018, Defendant Russell L. Bauknight ("Defendant Bauknight") filed his Response Supporting the Motion to Stay. (ECF No. 115.) Shortly thereafter, on November 12, 2018, Defendant David C. Sojourner, Jr. ("Defendant Sojourner") filed his Responses in Support of the Motion to Stay. (ECF Nos. 116, 117.) Plaintiffs Deanna Brown-Thomas, Yamma Brown, Michael D. Brown, Jeanette Mitchell Bellinger, Sarah LaTonya Fegan, Ciara Pettit, and Cherquarius Williams's (collectively, "Plaintiffs") responded in opposition to Defendants Hynie and Brown's Motion to Stay on November 19, 2018. (ECF No. 120.) For the reasons set forth herein, the court **GRANTS IN PART** and **DENIES IN PART** Defendants Hynie and Brown's Motion to Stay (ECF No. 114). Specifically, the court **DENIES** a stay of discovery, but **GRANTS** a partial stay of the action as it relates to filing or resolving *future dispositive motions*.

## I. FACTUAL AND PROCEDURAL BACKGROUND

James J. Brown ("James Brown") was an American singer that was born in Barnwell, South Carolina. *See* Harry Weinger & Cliff White, *Biography About James*, JAMES BROWN, http://www.jamesbrown.com/bio (last visited Jan. 20, 2019).[2] He married Defendant Hynie in

---

[2] Under the Federal Rules of Evidence, the court is permitted to "take judicial notice on its own." FED. R. EVID. 201(c). Moreover, the court may take judicial notice of a fact "that is not subject to reasonable dispute" because it is either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(1)–(2). Based upon the pleadings, there is no dispute concerning where James J. Brown ("James Brown") was born or the biographical contents of his website. (ECF Nos. 1, 80, 81, 85, 89, 96, 97, 98, 101, 103, 104.) Additionally, provided that the website on which the facts are based is James Brown's official website, James Brown's birthplace is a fact that may be "accurately and readily determined" from a source "whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). *See generally Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (taking judicial notice of information "publicly announced on a party's website" because the authenticity was not in dispute, and the information was "capable of accurate and ready determination" (quoting FED. R. EVID. 201(b))). The court takes judicial notice of the website only for purposes of indicating the birthplace of James Brown. *See Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*,

December 2001. (ECF No. 1 at 10 ¶ 38.) Through the union of Defendant Hynie and James Brown, Defendant Brown was born in 2001. (ECF No. 81 at 10.) On the morning of December 25, 2006, James Brown died. (ECF No. 1 at 3 ¶ 7.) James Brown's will omitted Defendants Hynie and Brown. (*Id.* at 11 ¶ 41.) In 2007, Defendants Hynie and Brown brought challenges to James Brown's will and trust. (*Id.* at 11 ¶ 42.) Defendant Hynie filed for her spousal rights in South Carolina, which would have entitled her to a statutory elective share and a one-half omitted spouse's share, while Defendant Brown asserted his right to a state statutory child share as a lawful heir. (ECF No. 80-1 at 3.) James Brown's adult children also brought challenges to set aside his will. *See Wilson v. Dallas*, 743 S.E.2d 746, 750–51 (S.C. 2013). (*See also* ECF No. 80-1 at 3; ECF No. 80-2 at 29.) As a result of these collective challenges, James Brown's will was submitted to the Probate Court of Aiken County, South Carolina. (ECF No. 1 at 11 ¶ 42.) Eventually, the Probate Court of Aiken County, South Carolina, transferred the administration of James Brown's estate to the Aiken County Court of Common Pleas. (ECF No. 1 at 11 ¶ 43; ECF No. 80-1 at 4.)

In May 2013, following litigation in the Aiken County Court of Common Pleas, the South Carolina Supreme Court reversed the trial court's approval of a family settlement regarding James Brown's estate, upheld the removal of several fiduciaries, and remanded the case for the appointment of new fiduciaries. (ECF No. 85 at 4 (citing *Wilson*, 743 S.E.2d at 768).) On October 1, 2013, the Aiken County Court of Common Pleas appointed Defendant Bauknight to serve as the personal representative of the estate and trustee of the trust. (ECF No. 85-1 at 27–29.) On October 10, 2013, Defendant Sojourner was appointed as a limited special administrator of James Brown's estate and tasked with defending the estate against challenges. (ECF No. 85-1 at 35–36

---

812 F. Supp. 2d 1089, 1093 (E.D. Cal. 2011) ("[J]udicially noticed documents may be considered only for limited purposes.").

3

¶¶ 3–4.)

In 2015, the Aiken County Court of Common Pleas determined that Defendant Hynie was the surviving spouse of James Brown. (ECF No. 80-1 at 6.) During that same year, that lower court held that Defendant Brown was the biological son and a lawful heir to James Brown. (ECF No. 101-4.) In 2018, the South Carolina Court of Appeals also held that Defendant Hynie was the surviving spouse of James Brown. *See In re Estate of Brown*, 818 S.E.2d 770, 776 (S.C. Ct. App. 2018) ("Therefore, we find the trial court did not err in finding [Defendant Hynie] was married to Brown.").[3] Subsequently, in order to obtain review of the South Carolina Court of Appeals' ruling, Plaintiffs[4] filed a Petition for a Writ of Certiorari with the South Carolina Supreme Court.[5] On February 1, 2019, the South Carolina Supreme Court granted Plaintiffs' Petition for a Writ of Certiorari. (ECF No. 151 at 4–5.)

Plaintiffs originally filed their Complaint on January 12, 2018, in the United States District Court for the Central District of California. (ECF No. 1.) First, Plaintiffs seek relief from the court

---

[3] Generally, under the Federal Rules of Evidence, a federal court "may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508–09 (4th Cir. 2015) (citations omitted). *See generally Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record." (citation omitted)); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that '[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'" (citation omitted)).

[4] The only Plaintiffs involved in the state court litigation and current action before this court are Plaintiffs Deanna Brown-Thomas, Yamma Brown, and Michael D. Brown. (*Compare* ECF No. 151 at 4, *with* ECF No. 1 at 1.)

[5] During a hearing on January 22, 2019, Plaintiffs and Defendants readily acknowledged that Plaintiffs were seeking review of Defendant Hynie's spousal status by the South Carolina Supreme Court. Pursuant to the Federal Rules of Evidence and a recent filing (ECF No. 151) by Defendant Hynie, the court takes judicial notice that Defendant Hynie's marriage to James Brown is a matter currently pending before the South Carolina Supreme Court. *See* FED. R. EVID. 201(b). *See also City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1278 (E.D.N.Y. 1995) ("[T]his [c]ourt is required to take judicial notice of the pending state court action.").

4

under the Copyright Act, 17 U.S.C. §§ 203, 304, and the Declaratory Judgment Act, 28 U.S.C. § 2201. (*Id.* at 20–22 ¶¶ 74–77.) Plaintiffs allege that Defendants have "conspired . . . to usurp [their] rights and interests in [James] Brown's [c]ompositions." (*Id.* at 4 ¶ 13.) Plaintiffs seek a declaration establishing that a "Settlement Agreement" or any "Concealed Terms," specifically among Defendants, is unenforceable and void as a matter of law. (*Id.* at 21 ¶ 76.) Plaintiffs believe that Defendants have wrongfully deprived them of their termination interests pursuant to a Settlement Agreement and Concealed Terms and failed to comply with the appropriate procedures of the Copyright Act. (*Id.* at 17, 20–21 ¶¶ 60–62, 75–76.) Plaintiffs also contend that "any agreement" by Defendant Hynie that "directly or indirectly diverts and/or converts Plaintiffs' share of the financial proceeds" is void, unenforceable, and prohibited by the Copyright Act. (*Id.* at 22 ¶ 76.) Further, Plaintiffs maintain that they are "entitled to a preliminary injunction during the pendency of this action, and thereafter to a permanent injunction . . . ." (*Id.* at 22 ¶ 77.) Secondly, Plaintiffs bring a range of claims arising under South Carolina law. (*Id.* at 22–31 ¶¶ 78–114.) Specifically, Plaintiffs allege the following state law claims: (1) accounting; (2) conversion; (3) unjust enrichment; (4) intentional interference with prospective economic advantage; (5) negligent interference with prospective economic advantage; and (6) common law unfair competition. (*Id.* at 22–23, 27–28, 30 ¶¶ 79, 84, 97, 102, 109.) The United States District Court for the Central District of California transferred this matter to the United States District Court for the District of South Carolina on August 7, 2018. (ECF No. 70.)

Defendants Hynie and Brown filed their Motion to Stay on November 5, 2018. (ECF No. 114.) Defendants Bauknight and Sojourner consent to the Motion to Stay. (ECF Nos. 115, 116, 117.) The Motion to Stay seeks a stay of "discovery, the deadlines, and the entry of scheduling orders . . . ." (*Id.* at 1.) Suggesting that Plaintiffs will "suffer no prejudice from a stay," Defendants

5

Hynie and Brown also seek "a stay of all proceedings" until the South Carolina Supreme Court formally rules upon Defendant Hynie's marital status to James Brown. (ECF No. 114 at 3, 5–8.) Claiming that the spousal status issue is not ripe, Defendants submit that the court should "avoid having any decision based on a non-final ruling" of Defendant Hynie's spousal status. (*Id.* at 7–8.) In addition to the issues regarding Defendant Hynie's spousal status, Defendants Hynie and Brown also seek a stay until the court formally rules upon their pending Motions to Dismiss and substitutes a party for Plaintiff Venisha Brown, who is now deceased. (*Id.* at 9–10.)

Plaintiffs responded in opposition to Defendants' Motion to Stay on November 19, 2018. (ECF No. 120.) Plaintiffs, describing the Motion to Stay as "baseless," contend that their harm will not cease if Defendant Hynie's marital status to James Brown is reversed by the South Carolina Supreme Court. (*Id.* at 14–17.) Plaintiffs further submit that the Motion to Stay fails to address "current and ongoing harms" they are currently suffering. (*Id.* at 17.) As it relates to Defendant Hynie's spousal status and arguments of ripeness, Plaintiffs maintain that their claims and injuries exist irrespective of whether Defendant Hynie is the lawful spouse to James Brown. (*Id.* at 15–16.) Lastly, Plaintiffs argue that, as permitted by the court, Plaintiff Deanna Brown-Thomas has already been substituted as a party in place of Plaintiff Venisha Brown, and therefore Defendants Hynie and Brown's argument is no longer meritorious. (*Id.* at 24–25.)

## II. LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Whether a federal district court should grant or deny a motion to stay "calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of

action on the court's docket." *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977) (citing *Landis*, 299 U.S. at 254). The court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55 (citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931); *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382 (1935)). Traditionally, a court may consider the following factors when deciding whether to stay legal proceedings: "(1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the case is in fact stayed." *Mitchell v. Lonza Walkersville, Inc.*, C/A No. RDB–12–3787, 2013 WL 3776951, at *2 (D. Md. July 17, 2013) (citing *Yearwood v. Johnson & Johnson, Inc.*, C/A No. RDB–12–1374, 2012 WL 2520865, at *3 (D. Md. June 27, 2012)). *See also Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018); *Brandt v. BP, P.L.C.*, C/A No. 2:10–cv–01460, 2010 WL 2802495, at *2 (D.S.C. July 14, 2010). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 862 (9th Cir. 1979). The decision to grant a stay is within the "sound discretion" of a federal district court. *Ryan v. Gonzales*, 568 U.S. 57, 74 (2013) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Generally, the party seeking a stay "must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). In other words, the proponent of a stay "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

As it specifically relates to staying discovery, a federal district court has a "broad inherent power to stay discovery until preliminary issues can be settled which may be dispositive of some

7

important aspect of the case." *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988) (citing *Petrus v. Bowen*, 833 F.2d 581 (5th Cir. 1987)). In many instances, "[a] motion to stay discovery is tantamount to a request for a protective order prohibiting or limiting discovery pursuant to Rule 26(c) [of the Federal Rules of Civil Procedure]." *Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 637 (M.D.N.C. 1988). Motions to stay discovery are "generally disfavored because delaying discovery may cause case management problems as the case progresses or impede the court's responsibility to expedite discovery." *Kennedy v. Fed. Nat'l Mortg. Ass'n*, No. 4:13–CV–203–F, 2013 WL 5885154, at *1 (E.D.N.C. Oct. 31, 2013). The filing of a dispositive motion does not, by itself, warrant the issuance of a stay. *See Herring v. Lapolla Indus., Inc.*, No. 2:12-cv-02705-RMG, 2013 WL 12148769, at *1 (D.S.C. Aug. 30, 2013) (citing *Hollings v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006)). The moving party bears the burden of showing good cause and that a stay of discovery in reasonable. *See Kron Med. Corp.*, 119 F.R.D. at 637.

### III. DISCUSSION

Upon review of Defendants Hynie and Brown's Motion to Stay, the court discerns two different stay requests.[6] (ECF No. 14.) Defendants first request the court to stay "discovery, the deadlines, and the entry of scheduling orders . . . ." (*Id.* at 1.) In addition, Defendants seek "a stay of all proceedings" until the South Carolina Supreme Court issues a final ruling on Defendant Hynie's spousal status. (*Id.* at 3, 5–8.) The court first addresses whether there should be "a stay of

---

[6] In the future, the court urges all the parties to provide briefs with *legal standards by which the court should be governed* and *specific requests for relief. See* D.S.C. Civ. R. 7.05(A) ("A memorandum shall contain: (1) [a] *concise* summary of the nature of the case; (2) [a] *concise* statement of the facts *that pertain to the matter* before the [c]ourt for filing with reference to the location in the record; (3) [t]he argument . . . relating to the matter before the [c]ourt for ruling *with appropriate citations* . . . ." (emphasis added)).

all proceedings" until the South Carolina Supreme Court's ruling and then turns to whether a stay of discovery is warranted.[7]

A. **Defendants' Motion to Stay All Other Proceedings**

Defendants vigorously argue that the court should grant "a stay of all proceedings" because Defendant Hynie's marriage to James Brown is an issue currently pending before the South Carolina Supreme Court. (*Id.* at 3, 5-8.) Defendants assert that the court will "embark on a speculative exercise" if this action commences alongside the proceedings of the South Carolina Supreme Court, thereby wasting valuable time and resources. (*Id.* at 6–7.) Additionally, Defendants also repeat ripeness arguments already argued within their Motions to Dismiss.[8] (*Compare* ECF Nos. 81, 101, *with* ECF No. 114.)

As an initial matter, the termination provisions within the Copyright Act "allow[] an author, if he is living, or his widow or children, if he is not, to recapture . . . the rights that had previously been transferred to third parties." *Classic Media, Inc. v. Mewborn*, 532 F.3d 978, 983 (9th Cir. 2008). *See also* 17 U.S.C. §§ 203(a), 304(c). The Copyright Act specifically contemplates that a "widow . . . owns one-half of the author's [termination] interest." 17 U.S.C. §§ 203(a)(2)(A),

---

[7] In their Motion to Stay, Defendants maintain that the court should stay this action because a living party must be a substitute for Plaintiff Venisha Brown, a deceased party. (*See* ECF No. 114 at 9–10.) However, this argument is rendered moot because the court permitted Plaintiff Deanna Brown-Thomas to serve as a substituted party for Plaintiff Venisha Brown on November 15, 2018. (*See* ECF Nos. 118, 119.)

[8] Because ripeness is a constitutional doctrine that will be considered within Defendants' Motions to Dismiss (ECF Nos. 81, 101), the court will consider those arguments when it addresses Defendants' Motions to Dismiss, which implicate numerous jurisdictional issues, as opposed to entertaining them for purposes of a stay. *See generally Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) ("Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967))).

9

304(c)(2)(A). When there is not a living widow or widower, an author's surviving children "own the author's entire termination interest . . . ." 17 U.S.C. §§ 203(a)(2)(B), 304(c)(2)(B). In addition to delineating the interests possessed by an author's heirs, the Copyright Act states that an "author's 'widow' or 'widower' is the author's surviving spouse *under the law of the author's domicile at the time of his or her death*, whether or not the spouse has later remarried." 17 U.S.C. § 101 (emphasis added). The United States Supreme Court has held that "decid[ing] who is the widow or widower of a deceased author, or who are his executors or next of kin, requires a reference to the law of the [s]tate which created those legal relationships." *De Sylva v. Ballentine*, 351 U.S. 570, 580 (1956). *See generally Bell v. Tug Shrike*, 332 F.2d 330, 336–37 (4th Cir. 1964) (holding that, under the Jones Act, a "surviving widow" was determined by "the law of the domicile").

i. The Interest of Judicial Resources

The South Carolina Supreme Court's anticipated review of Defendant Hynie's spousal status only impacts whether Defendant Hynie is James Brown's "widow" under the Copyright Act. *See* 17 U.S.C. § 101. On the one hand, if Defendant Hynie remains a lawful "widow" to James Brown, as she has been declared in the current South Carolina state court proceedings, then, pursuant to the Copyright Act, she owns a one-half interest in James Brown's termination interests. *See In re Estate of Brown*, 818 S.E.2d at 776 ("Therefore, we find the trial court did not err in finding [Defendant Hynie] was married to Brown."). On the other hand, if the South Carolina Supreme Court finds that Defendant Hynie is not a lawful spouse to James Brown, then she has never held any of James Brown's termination interests because she was never a lawful widow under the Copyright Act. *See* 17 U.S.C. §§ 101, 203(a)(2)(B), 304(c)(2)(B). The South Carolina Supreme Court's ruling may have important ramifications for the court's substantive interpretation

10

of the Copyright Act, a federal statute foreclosed from state court review, and the respective legal strategies of the parties. *See* 28 U.S.C. § 1338(a) ("No [s]tate court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights."). *See generally Stone v. Williams*, 970 F.2d 1043, 1054–60 (2d Cir. 1992) (holding that the parties were "bound" by a "prior adjudication" of a paternity issue in the Alabama Supreme Court as it related to determining whether one party was a "child" under the Copyright Act).

Given that the South Carolina Supreme Court's ruling implicates the Copyright Act in one specific respect, "judicial resources [] would be saved" by forgoing a decision on the substantive merits of this case or resolving future dispositive motions, other than the pending Motions to Dismiss, because a decision from the South Carolina Supreme Court could upend any summary judgment or trial proceedings conducted by this court. *See PMS Foods, Inc. v. Ralston Purina Co.*, C/A No. 89-2478-0, 1990 WL 81074, at *1 (D. Kan. May 24, 1990) (denying a stay for discovery and granting a stay for filing future dispositive motions when a patent issue was pending in the United States Court of Appeals for the Federal Circuit). At the same time, however, the South Carolina Supreme Court's decision cannot and will not concern any of the intricacies of the Copyright Act. *See* 28 U.S.C. § 1338(a). As such, the conservation of judicial resources weighs heavily toward partially staying the filing or resolution of *future dispositive motions*, other than the pending Motions to Dismiss, but not an entire stay of the proceedings. *See Assurance Co. of Am. v. Legendary Home Builders, Inc.*, 305 F. Supp. 2d 1272, 1277 (S.D. Ala. 2004) (declining to lift a stay for an action under the Declaratory Judgment Act when the court was "required to delve into issues of Alabama State Law which [were] *presently pending*" before a state trial court because the court would waste judicial resources by doing so (emphasis added)). *See also Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518 (E.D. Va. 2018) ("Although denying a stay can risk

waste, the opposite can also be true: *granting* a stay may waste judicial resources." (citation omitted)). In other words, judicial resources support a partial stay, as opposed to a complete stay, and only a stay of the filing or resolution of *future dispositive issues* under the Copyright Act. *See Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) ("A variety of circumstances may justify a district court stay pending the resolution of a related case in another court. A stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court." (citation omitted)).

ii. <u>The Potential Prejudice to Plaintiffs in the Event of a Stay</u>

Secondly, as it relates to the *potential prejudice* to the non-moving party if a stay is granted, Plaintiffs maintain that Defendant Hynie's "*ongoing conduct*" will continue to cause "immediate injury *without [c]ourt intervention*." (ECF No. 120 at 15 (emphasis added).) If Plaintiffs are indeed experiencing "ongoing" harm from Defendant Hynie, then a stay of "all proceedings" is plainly against their interests, weighing strongly against a complete stay of the proceedings. *See Int'l Refugee Assistance Project*, 323 F. Supp. 3d at 735–36 (holding that Proclamation No. 9645, which "separated children from parents and husbands from wives," was against the interests of the plaintiffs and weighed against a stay in the proceedings because it was "more significant"). However, Plaintiffs, some of whom have freely chosen to litigate in the South Carolina Supreme Court's case, will not be prejudiced if the court's stay only concerns the filing of *future dispositive motions* and not "all proceedings" as requested by Defendants. *See McCarn v. HSBC USA, Inc.*, No. 1:12–cv–00375–LJO–SKO, 2012 WL 1232334, at *3–4 (E.D. Cal. Apr. 12, 2012) (recognizing that a federal district court can fashion the "scope" of a stay, partially staying a case's proceedings, and allowing the parties to proceed with litigating their motions to dismiss). In other words, Plaintiffs will continue to have access to the court at this early stage of the litigation, and

the court can decide *issues unrelated* to Defendant Hynie's marital relationship to James Brown. *See id.* at *4. As such, there is not potential prejudice to Plaintiffs if the court only stays the proceedings as it relates to *future dispositive* motions, but there would be potential prejudice to Plaintiffs if the court granted a stay of "all proceedings." (*See* ECF No. 120 at 15.) In essence, this factor permits a partial stay, but not a complete stay. *See generally RSUI Idem. Co. v. Goldco, Inc.*, C/A No. 09–00776–B, 2010 WL 2683381, at *1–2 (S.D. Ala. July 2, 2010) (granting a stay in part when there were ongoing administrative proceedings); *Stanford v. Caesar's Entm't, Inc.*, C/A No. 05-2230, 2006 WL 156981, at *2 (E.D. La. Jan. 20, 2006) (holding that a limited stay in scope would not prejudice the non-moving party).

    iii. <u>The Hardship or Inequities to Defendants Without a Stay</u>

Lastly, Defendants would suffer no "hardship[s] or inequit[ies]" if the court does not stay "all proceedings" because, in the event of a partial stay, this matter would simply proceed to discovery and then halt, pursuant to the partial stay, when the time comes for *future dispositive* filings. Most notably, Defendants fail to identify any "hardship or inequity" that they may suffer without a complete stay to these proceedings. (*See* ECF Nos. 114, 122.) As opposed to explaining their own "hardship[s] or inequit[ies]" that may exist without a stay, Defendants only emphasize how the court would "waste resources" by allowing the litigation to proceed. (*See* ECF Nos. 114, 122.) Moreover, merely because Defendants may experience "potential inconvenience" from litigating in this court and the South Carolina Supreme Court, that alone does not rise to the level of a "hardship or inequity." *See Gibbs*, 331 F. Supp. 3d at 526–27. Therefore, Defendants have failed to carry their burden as it relates to showing how the absence of a complete stay will cause them harm, making this factor inconsequential at best. *See Clinton*, 520 U.S. at 708; *Williford*, 715 F.2d at 127.

iv. Balance of the Factors

Here, the court finds that the conservation of judicial resources weighs heavily in favor of a partial stay to the proceedings as it relates to *future dispositive motions*, but not a complete stay of "all proceedings." *See supra* Part III.A.i. Additionally, while a complete stay would substantially harm Plaintiffs, a partial stay, however, would not harm Plaintiffs' interest because they could proceed with this litigation and have access to the court. *See supra* Part III.A.ii. Once the South Carolina Supreme Court has formally spoken on Defendant Hynie's relationship to James Brown, the litigants would likely have more informed legal strategies regarding the Copyright Act. *See Landis*, 299 U.S. at 254 (holding that a federal court's power to stay is designed to "control the disposition of the causes on its docket with economy of time and effort for itself, *for counsel, and for litigants*" (emphasis added)). Lastly, Defendants have failed to identify any "hardships or inequities" that they would suffer without a complete stay. (*See* ECF Nos. 114, 122.) *See also supra* Part III.A.iii. Upon reviewing the balance of the factors and "maintain[ing] an even balance," the court will partially stay the filing of *future dispositive motions*, other than the pending Motions to Dismiss, but not "all proceedings" as requested by Defendants. *See Landis*, 299 U.S. at 254–55. *See also Howard v. City of Albuquerque*, 349 F. Supp. 3d 1137, 1144 (D.N.M. 2018) ("A court has broad discretion in managing its docket, which includes decisions regarding issuing stays *for all or part of a proceeding*." (emphasis added) (citation omitted)).

**B. Defendants' Motion to Stay Discovery, Deadlines, and Scheduling Orders**

Defendants Hynie and Brown have also requested the court to stay "discovery, the deadlines, and the entry of scheduling orders . . . ." (ECF No. 114 at 1.) Defendants seem to argue that a stay is warranted, as it relates to discovery, because of Defendant Hynie's pending spousal status. (*Id.* at 5–9.) Moreover, Defendants contend that their Motions to Dismiss "should be heard

before any discovery is commenced in this case." (*Id.* at 9.) Beginning with Defendants' concern about their pending Motions to Dismiss, the court addresses each contention below.

First, as it relates to the pending Motions to Dismiss, it is well-established that "[t]he filing of a dispositive motion does not, by itself, warrant the issuance of a stay." *Herring*, 2013 WL 12148769, at *1. Further, at this early stage of the litigation, even if Defendants have "good cause" for staying discovery, they have not shown why staying discovery is "reasonable." *See Kron Med. Corp.*, 119 F.R.D. at 637. Upon the court's review, Defendants' request to stay discovery largely rests upon the presumption that their Motions to Dismiss will be successful, and the request almost mirrors the substance of their pending Motions to Dismiss. (*Compare* ECF Nos. 114, 122, *with* ECF Nos. 81, 101.) Regardless, Defendants' request to stay discovery is not persuasive or reasonable because it was filed almost a month after their pending Motions to Dismiss (ECF Nos. 81, 101, 114). *See Baker v. Bank of Am., N.A.*, No. 5:13–cv–92–F, 2013 WL 6408221, at *1 (E.D.N.C. Dec. 6, 2013) (holding that the defendants did not establish reasonableness when they did not seek a stay in discovery "shortly after filing its motion to dismiss"). Additionally, upon taking a careful "peek" at the pending Motions to Dismiss (ECF Nos. 81, 101), there is no indication that they are "clearly meritorious and truly case dispositive" because Plaintiffs vehemently oppose those Motions with substantial arguments. *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006) (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652–53 (M.D. Fla. 1997)). *See also Baker v. Swift Pork Co.*, C/A No. 3:15–CV–663–JHM, 2015 WL 6964702, at *1 (W.D. Ky. Nov. 10, 2015) (denying a motion to stay discovery when it was "not patently apparent" whether a dispositive motion would be granted or denied). Given that this matter was recently transferred to this court a few months ago, a stay would "impede the court's responsibility to expedite discovery." *Kennedy*, 2013 WL 5885154, at *1. Even though the Motions to Dismiss are still

pending, the court finds that staying discovery does not promote the "expeditious and comprehensive disposition of the causes of action on the court's docket." *Ga. Pac. Corp.*, 562 F.2d at 296. The court declines to undercut the "general policy disfavoring the staying of discovery" and does not perceive Defendants' Motions to Dismiss as warranting an exception to that sound preference. *Kron Med. Corp.*, 119 F.R.D. at 638.

Secondly, there is no reason to stay discovery solely because Defendant Hynie's marriage to James Brown is pending before the South Carolina Supreme Court for review. As explained earlier, the South Carolina Supreme Court's ruling will only implicate whether Defendant Hynie is James Brown's "widow" under the Copyright Act. *See supra* Part III.A. Notwithstanding that issue and its relationship to the Copyright Act, the South Carolina Supreme Court's ruling will have no bearing on the substance of the Copyright Act, including the Act's provisions regarding renewal rights, termination rights, and other procedures. *See* 28 U.S.C. § 1338(a). For these reasons, Defendants' request to stay discovery is premature and fails to promote the "expeditious and comprehensive disposition of the causes of action on the court's docket." *Ga. Pac. Corp.*, 562 F.2d at 296. Accordingly, the court declines to stay discovery, deadlines, or scheduling orders for these proceedings.

## IV. CONCLUSION

After a careful examination of Defendants Hynie and Brown's Motion to Stay (ECF No. 114), Plaintiffs' Response to Defendants' Motion to Stay (ECF No. 120), and the parties' arguments at the hearing, the court **GRANTS IN PART** and **DENIES IN PART** Defendants Hynie and Brown's Motion to Stay (ECF No. 114). Specifically, the court **DENIES** a stay of discovery, but **GRANTS** a partial stay of the action as it relates to filing or resolving *future dispositive motions*.

**IT IS SO ORDERED.**

_J. Michelle Childs_
United States District Judge

March 5, 2019
Columbia, South Carolina