IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Deanna Brown-Thomas, *an individual and in her capacity as intestate heir and pending Personal Representative of the estate of her sister, the deceased Venisha Brown*; Yamma Brown, *an individual*; Michael D. Brown, *an individual*; Nicole C. Brown, *an individual*; Jeanette Mitchell Bellinger, *an individual*; Sarah LaTonya Fegan, *an individual*; Ciara Pettit, *an individual*; and Cherquarius Williams, *an individual*,<br><br>               Plaintiffs,<br><br>v.<br><br>Tommie Rae Hynie, *an individual also known as Tommie Rae Brown*; James J. Brown, II, *an individual*; Russell L. Bauknight, *as the Personal Representative of the Estate of James Brown and Trustee of the James Brown I Feel Good Trust*; David C. Sojourner, Jr., *as the Limited Special Administrator of the Estate of James Brown and Limited Special Trustee of the James Brown I Feel Good Trust*; and Does, *1 through 10, inclusive*,<br><br>               Defendants. | Civil Action No.: 1:18-cv-02191-JMC<br><br>**ORDER AND OPINION** |

      This matter is before the court on Defendant Tommie Rae Hynie ("Defendant Hynie"), Defendant James Brown, II ("Defendant Brown"), and Defendant Russell L. Bauknight's ("Defendant Bauknight") (collectively, "Defendants") Motions to Dismiss (ECF Nos. 80-1, 81, 101).[1] Specifically, Defendants move to dismiss Plaintiffs' Complaint pursuant to a myriad of

---

[1] The court observes that Defendants' respective Motions to Dismiss each made substantially similar arguments regarding their Rule 12(b)(6) analysis. In the interest of judicial economy, the court addresses all three Defendants' Motions (ECF Nos. 80-1, 81, 101) in this order. *Connor v.*

1

Federal Rules of Civil Procedure including Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). The court has already denied challenges brought forth by Defendants within their Motions to Dismiss on Rule 12(b)(1), 12(b)(2), and 12(b)(5) grounds. *See Brown-Thomas v. Hynie*, 367 F. Supp. 3d 452, 469 (D.S.C. 2019); (*see also* ECF No. 183.) The court now decides Defendants' last remaining ground supporting their Motions to Dismiss—the Rule 12(b)(6) challenge. Defendants assert that the action fails to plead a plausible claim under the Copyright Act and, therefore, Plaintiffs' declaratory judgment action (claim 1) must be dismissed.

After careful consideration of all relevant filings, the court **DENIES** Defendants' Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF Nos. 80-1, 81, 101) without prejudice.

## I. FACTUAL, PROCEDURAL, AND STATUTORY BACKGROUND

### A. Relevant Factual Background and State Court Litigation

James J. Brown ("James Brown") was an American singer. He married Defendant Hynie in December 2001. (ECF No. 1 at 10 ¶ 38.) Through the union of Defendant Hynie and James Brown, Defendant Brown was born in 2001. (ECF No. 81 at 10.) On the morning of December 25, 2006, James Brown died. (ECF No. 1 at 3 ¶ 7.) James Brown's will omitted both Defendant Hynie and Defendant Brown. (*Id.* at 11 ¶ 41.)

In 2007, Defendant Hynie and Defendant Brown brought challenges to James Brown's will and trust in the state courts of South Carolina. (*Id.* at 11 ¶ 42.) Defendant Hynie filed for her spousal rights in South Carolina, which would have entitled her to a statutory elective share and a one-half omitted spouse's share, while Defendant Brown asserted his state statutory child share as

---

*Lifewatch, Inc.*, No. CIV.A. 2:13-03507, 2014 WL 4198883, at *1 (D.S.C. Aug. 20, 2014) (where several cases are closely related, involving the same parties, the same causes of action, same facts, and same legal issues—a court is able to address identical issues in the interest of judicial economy).

a lawful heir. (ECF No. 80-1 at 3.) James Brown's adult children also brought challenges to set aside his will. *See Wilson v. Dallas*, 743 S.E.2d 746, 750–51 (S.C. 2013). (*See also* ECF No. 80-1 at 3; ECF No. 80-2 at 29.) As a result of these collective challenges, James Brown's will was submitted to the Probate Court of Aiken County, South Carolina. (ECF No. 1 at 11 ¶ 42.) Eventually, the Probate Court of Aiken County, South Carolina, transferred the administration of James Brown's estate to the Aiken County Court of Common Pleas. (ECF No. 1 at 11 ¶ 43; ECF No. 80-1 at 4.)

Following extensive litigation in the Aiken County Court of Common Pleas, in 2013, the South Carolina Supreme Court reversed the trial court's approval of a family settlement regarding James Brown's estate, upheld the removal of several fiduciaries, and remanded the case for the appointment of new fiduciaries. (ECF No. 85 at 4 (citing *Wilson*, 743 S.E.2d at 768).) On October 1, 2013, the Aiken County Court of Common Pleas appointed Defendant Bauknight to serve as the personal representative of the estate and trustee of the trust. (ECF No. 85-1 at 27–29.) On October 10, 2013, Defendant Sojourner was appointed as a limited special administrator of James Brown's estate and tasked with defending the estate against legal challenges. (ECF No. 85-1 at 35–36 ¶¶ 3–4.)

In 2015, the Aiken County Court of Common Pleas determined that Defendant Hynie was the surviving spouse of James Brown. (ECF No. 80-1 at 6.) Currently, Plaintiffs are appealing the spousal status of Defendant Hynie to the South Carolina Supreme Court (ECF No. 151 at 4).[2]

---

[2] During a hearing on January 22, 2019, Plaintiffs and Defendants readily acknowledge that Plaintiffs are seeking review of Defendant Hynie's spousal status by the South Carolina Supreme Court. Pursuant to the Federal Rules of Evidence, the court takes judicial notice that this issue is currently pending before the South Carolina Supreme Court. *See* Fed. R. Evid. 201(b). *See also City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1278 (E.D.N.Y. 1995) ("[T]his [c]ourt is required to take judicial notice of the pending state court action.").

The instant matter does not concern the probate issues before the South Carolina Supreme Court. Instead, this matter focuses exclusively on Defendants' Motions to Dismiss Plaintiffs' declaratory judgment action. (ECF No. 80-1 at 31-33; ECF No. 81 at 20-22; ECF No. 101 at 12-13.)

**Plaintiffs' Allegations and the Current Action**

Plaintiffs originally filed their Complaint on January 12, 2018, in the United States District Court for the Central District of California. (ECF No. 1.) The United States District Court for the Central District of California transferred the matter to this court. (ECF No. 70.)

In the Complaint, Plaintiffs assert that Defendants have wrongfully deprived them of their termination interests pursuant to a Settlement Agreement and Concealed Terms and failed to comply with the appropriate procedures of the Copyright Act. (ECF No. 1 at 17, 20–21 ¶¶ 60–62, 75–76.) Specifically, Plaintiffs allege that Defendants have "conspired…to usurp [their] rights and interests in [James] Brown's [c]ompositions." (*Id.* at 4 ¶ 13.) Accordingly, Plaintiffs seek relief from the court under the Copyright Act and the Declaratory Judgment Act. (*Id.* at 20–22 ¶¶ 74–77.) Plaintiffs seek a declaration establishing, *inter alia*,[3] that a "Settlement Agreement" or any

---

[3] Plaintiffs request the following declarations:
> This declaration should establish that Hynie's Purported Settlement Agreement to sell a majority of the proceeds from the termination interests is void and unenforceable as a matter of law and public policy. 17 U.S.C. §§ 304(c)(5), (c)(6)(D) and 203(a)(5), (b)(4). The declaration should further establish that any agreement by Hynie and/or James II, in the Concealed Terms or otherwise, *not* to exercise the termination right(s) as to any Composition(s) is void, unenforceable and prohibited as a matter of law and public policy. *Id*. The declaration should further establish that any agreement by Hynie, in the Concealed Terms or otherwise, (i) to transfer to anyone the future copyright interests to be recaptured via statutory termination before exercising the respective termination right in any Composition, or (ii) to transfer to anyone that is not an original grantee or its successor-grantee the future copyright interests in any Composition to be recaptured via statutory termination, after service of the applicable termination notice, but before its termination date, is void, unenforceable and prohibited as a

"Concealed Terms" amongst Defendants is unenforceable and void as a matter of law. (*Id.* at 21 ¶ 76.)

Secondly, Plaintiffs maintain that they are "entitled to a preliminary injunction during the pendency of this action, and thereafter to a permanent injunction…" (*Id.* at 22 ¶ 77.) Finally, Plaintiffs bring a range of claims arising under South Carolina law. (*Id.* at 22–31 ¶¶ 78–114.)[4]

Defendant Bauknight filed his Motion to Dismiss on September 10, 2018, while Defendant Hynie filed her Motion to Dismiss on September 11, 2018. (ECF Nos. 80, 81.) Defendant Brown filed his Motion to Dismiss on October 10, 2018. (ECF No. 101.) On October 4, 2018 Plaintiffs filed their response (ECF No. 96) to Defendant Hynie's Motion to Dismiss (ECF No. 81). On October 8, 2018, Plaintiffs filed their response (ECF No. 97) to Defendant Baucknight's Motion to Dismiss (ECF No. 80), and on October 24, 2018, Plaintiffs filed their response to Defendant Brown's Motion to Dismiss (ECF No. 101). As mentioned, the court has already denied challenges brought forth by Defendants within their Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(5). *See Brown-Thomas v. Hynie*, 367 F. Supp. 3d 452, 469 (D.S.C. 2019); (*see also* ECF No. 183.) The court now decides Defendants' last remaining ground brought forth in

---

       matter of law and public policy. 17 U.S.C. §§ 304(c)(6)(D) and 203(b)(4). The declaration should further establish that any agreement by any Defendant that directly or indirectly diverts and/or converts Plaintiffs' share of the financial proceeds as a co-owner of the termination interests in the Compositions is void, unenforceable and prohibited as a matter of law and public policy under the Act and state common law.

(ECF No. 1 at 21 ¶ 76.)

[4] Plaintiffs allege the following state law claims: (1) accounting; (2) conversion; (3) unjust enrichment; (4) intentional interference with prospective economic advantage; (5) intentional interference with prospective economic advantage; (6) negligent interference with prospective economic advantage; and (7) common law unfair competition. (*Id.* at 22–23, 27–28, 30 ¶¶ 79, 84, 97, 102, 109.) Defendants assert that, "if the First Claim is dismissed, the seven supplemental state law claims must be dismissed as well." (ECF No. 80-1 at 33; ECF No. 81 at 22; ECF No. 101 at 12.) The court will, therefore, only address Plaintiffs' first claim for declaratory judgment.

their Motions to Dismiss—the Rule 12(b)(6) challenge. Defendants assert that Plaintiffs' Complaint fails to plead a plausible claim under §§ 203 and 304 of the Copyright Act and, therefore, Plaintiffs' declaratory judgment action must be dismissed.

## II. LEGAL STANDARDS AND APPLICABLE STATUTES

### A. <u>Declaratory Judgment Action</u>

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (2012).

A court should not grant a Rule 12(b)(6) motion unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.*, 7 F.3d at 1134.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id.*) Courts

6

commonly refer to this as the *Twombly/Iqbal* standard for federal pleadings, which a plaintiff needs to overcome to survive a Rule 12(b)(6) dismissal.

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–42 (1937)). "[T]he dispute [must] be 'definite and concrete, touching the legal relations of parties having adverse legal interests." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting *Haworth*, 300 U.S. at 240–41).

The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

Generally speaking, however, "a motion to dismiss 'is rarely appropriate in a declaratory judgment action.'" *Palmer v. Audi of Am., Inc.*, No. GJH-14-03189, 2015 WL 222127, at *2 (D. Md. Jan. 13, 2015).

When evaluating a motion to dismiss an action for a declaratory judgment, courts in this circuit have advised that:

> Where a bill of complaint shows a subject matter that is within the contemplation of the relief afforded by the declaratory decree statute, and it states sufficient facts to show the existence of the subject matter and the dispute with reference thereto, upon which the court may exercise its declaratory power, it is immaterial that the ultimate ruling may be unfavorable to the plaintiff. The test of the sufficiency of the bill is not whether it shows that the plaintiff is entitled to the declaration of rights or interest in accordance with his theory, but whether he is entitled to a declaration at all; so, even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory decree.

*Palmer*, 2015 WL 22212, at *2 (quoting *Broadwater v. State*, 494 A2s. 934, 936 (Md.1985)).

When a complaint fails to allege a justiciable controversy, however, a motion to dismiss is proper. *Id*.

**B. The Copyright Act of 1976**

The Copyright Act of 1976 contains two provisions expressly relating to the termination of copyright grants. *See* 17 U.S.C. §§ 203, 304(c). *See also* Lydia Pallas Loren, *Renegotiating the Copyright Deal in the Shadow of the "Inalienable" Right to Terminate*, 62 FLA. L. REV. 1329, 1331 (2010) ("Few people realize that many contracts that purport to transfer 'all right, title and interest' in a copyright can be terminated by the author of the copyrighted work after thirty-five years (in some cases), after fifty-six years (in other cases), and sometimes even after seventy-five years."). Congress enacted these statutory provisions to address "the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited" and safeguard authors from the "unremunerative transfers" of copyright grants. H.R.

8

REP. NO. 94-1476, at 124 (1976). *See also Mills Music, Inc. v. Snyder*, 469 U.S. 153, 172–73 (1985) ("[T]he termination right was expressly intended to relieve authors of the consequences of ill-advised and unremunerative grants that had been made before the author had a fair opportunity to appreciate the true value of his work product." (footnote omitted)); Peter S. Menell & David Nimmer, *Judicial Resistance to Copyright Law's Inalienable Right to Terminate Transfers*, 33 COLUM. J.L. & ARTS 227, 227 (2010) ("For a century, Congress has sought to protect authors and their families by allowing them to grant their copyrights for exploitation and then, decades later, recapture those same rights."). As to the special nature of these provisions, the United States Supreme Court has noted that the Copyright Act of 1976 "provides an inalienable termination right" for both authors and his or her statutory heirs. *Stewart v. Abend*, 495 U.S. 207, 230 (1990) (citing 17 U.S.C. §§ 203, 304).

   1. Section 203

Section 203 of the Copyright Act of 1976 concerns, besides a work made for hire, "the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright" made "on or after" January 1, 1978. 17 U.S.C. § 203(a). It only applies to copyright grants executed by the author. *Id.* § 203(a). As expressly contemplated by this provision, a previous copyright grant may be terminated if certain conditions are met. *See id.* §§ 203(a)(1)–(5). For example, as one condition, section 203 permits holders of the termination right to only effect termination "during a period of five years beginning at the end of thirty-five years from the date of execution of the grant." *See id.* § 203(a)(3). Additionally, if an author is deceased, the termination right is intricately divided among an author's issue, which inevitably impacts whether or not a termination right may be exercised because one-half of an author's termination interest is required for termination. *See id.* §§ 203(a)(1)–(2). If an author, or his or her statutory heirs,

9

successfully terminates a grant of a copyright, or any right thereunder, by complying with the appropriate conditions, then those previous rights "that were covered by the terminated grants revert to the author, authors, and other persons owning termination interests . . . , including those owners who did not join in signing the notice of termination . . . ," but subject to some statutory limitations. *Id.* §§ 203(b)(1)–(6). "Termination of [a copyright] grant may be effected *notwithstanding any agreement to the contrary*, including an agreement to make a will or to make a future grant." *Id.* § 203(a)(5) (emphasis added).

    *2. Section 304*

Section 304(c) of the Copyright Act of 1976 is "a close but not exact counterpart of section 203." H.R. REP. NO. 94-1476, at 140. Differentiating it from section 203, section 304(c) only applies to "any copyright subsisting in either its first or renewal term on January 1, 1978," and, "other than a copyright in a work made for hire," it only permits the termination of "the exclusive or nonexclusive grant of a transfer or license of the renewal copyright or any right under it, executed before January 1, 1978[] . . . ." 17 U.S.C. § 304(c). Similar to section 203, under section 304(c), terminations may be executed "at any time during a period of five years", but "beginning at the end of fifty-six years from the date [the] copyright was originally secured, or beginning on January 1, 1978, whichever is later." *Id.* § 304(c)(3). A termination under this provision may be exercised by a simple majority of the holders of the termination right. *Id.* § 304(c)(1). Subject to some limitations, when a successful termination is executed, "all rights . . . that were covered by the terminated grant revert, upon the effective date of [the] termination, to all those entitled to terminate the grant . . . ." *Id.* § 304(c)(6). In contrast to section 203, section 304(c) "extends to grants executed by those beneficiaries of the author who can claim renewal under the present law: his or her widow or widower, children, executors, or next of kin." H.R. REP. NO. 94-1476, at 140.

Nevertheless, further corresponding to section 203, section 304(c) proclaims that "[t]ermination of [a copyright] grant may be effected *notwithstanding any agreement to the contrary*, including an agreement to make a will or to make a future grant." 17 U.S.C. § 304(c)(5) (emphasis added).

In sum, both sections 203 and 304(c) allow authors or their statutory heirs "to terminate the rights of a grantee to whom the author had transferred rights in the original work." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 284 (2d Cir. 2002) (citations omitted). Of note, sections 203 and 304(c) do not mention *who* may challenge the existence of "an agreement to the contrary" that impacts termination rights or the validity of termination notices. *See* 17 U.S.C. §§ 203, 304(c). *See also Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1113 (9th Cir. 2015) ("Both § 203 and § 304(c) are silent on who may challenge the validity of termination notices."). Finally, an original grant will remain in effect "[i]f the termination right is not exercised" during the applicable statutory window. *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 199 (2d Cir. 2008). *See also* 17 U.S.C. §§ 203(a)(3), 304(c)(3).

### III. DISCUSSION

Defendants originally brought forth their Motions to Dismiss under Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). Because the court has already denied all other grounds for dismissal, the instant action solely addresses Defendants' Rule 12(b)(6) challenge. In Defendants' respective Memorandums in support (ECF Nos. 80-1, 81, 101), Defendants each devote a few paragraphs to their 12(b)(6) analysis. (ECF No. 80-1 at 31-33; ECF No. 81 at 20-22; ECF No. 101 at 12-13.) Defendants argue that Plaintiffs' "First Claim for Relief" must be dismissed because the allegations are "insufficiently particularized", and Defendants focus their entire Rule 12(b)(6) analysis on Plaintiffs' declaratory judgment action (First Claim). (*Id.*) Thus, the court narrowly construes Defendants' Rule 12(b)(6) challenge as applying only to Plaintiffs' declaratory judgment

action (ECF No. 1 at 18-21 ¶¶ 1-77). Consequently, the court is guided by the legal principals analyzing motions to dismiss a declaratory judgment action.

The Fourth Circuit has identified three elements to determine whether a plaintiff has stated a claim under the Declaratory Judgment Act. First, the complaint must allege "an actual controversy" between the parties' 'of sufficient reality to warrant issuance of a declaratory judgment.'" *Volvo Const. Equip. North America, Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201); *see also MedImmune, Inc.*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Second, there must be an independent basis for jurisdiction. *Volvo*, 386 F.3d at 592. Third, the court cannot abuse its discretion in exercising jurisdiction. *Id*.

In an already decided companion opinion, the court ruled that an independent basis for jurisdiction under the Copyright Act and 28 U.S.C. § 1338(a) exists because "Plaintiffs' Complaint requires a construction of the Copyright Act and because distinctive federal policies control the disposition of the action." (ECF No. 183 at 36-39.); *See also T.B. Harms*, 339 F.2d at 828 (explaining that a court's review of the exercise of statutory termination rights assumes subject matter jurisdiction under the Copyright Act). Thus, the court must only consider the dispute as it relates to the first and third prongs of the *Volvo* test— (prong 1) actual controversy under §§ 203 and 304 of the Copyright Act and (prong 3) abuse of discretion.

1. **<u>Actual Controversy</u>**

The court first addresses whether the declaratory action in Plaintiffs' Complaint establishes an actual case or controversy under the Copyright Act. To state a case or controversy, a plaintiff must establish a dispute that is "definite and concrete, touching the legal relations of parties with adverse interests." *MedImmune, Inc.,* 549 U.S. at 127. In other words, the basic question is

"whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127 (quoting *Md. Cas. Co.*, 312 U.S. at 273); *see also Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1027-28 (C.D. Cal. 2012). A claim under § 203 of the Copyright Act establishes "adverse legal interests…if [they are] not hypothetical, conjectural, conditional, or based upon the possibility of a factual situation that may never develop." *Coconut Grove House, Inc. v. U.S. Dept. of Health & Human Servs.*, 805 F. Supp. 39, 41 (S.D. Fla. 1992).

Examining the allegations within Plaintiffs' first claim, Plaintiffs carry their burden of establishing an actual controversy. Plaintiffs contend that Defendants have engaged in certain actions that, if true, would violate §§ 203 and 304 of the Copyright Act. Taking these allegations as true, as is required in consideration of a Rule 12(b)(6) motion, the court concludes that this claim has been sufficiently pleaded to survive Defendants' motion to dismiss. Indeed, no conjecture must occur to create adverse legal interests between the parties here. Plaintiffs allege that "Hynie's disclosed agreement—to transfer to the Trust the majority of proceeds from the termination interests (inclusive of the 2013 Hynie Terminations) or Concealed Terms to transfer the copyright interests to be recaptured via notices of termination (inclusive of the 2013 Hynie Terminations) prior to the effective dates thereof"— is a violation of the Copyright Act's provisions proscribing the ability to make grants of a copyright until after the effective date of a termination. (*See* ECF No. 1 at 20–21 ¶¶ 74–75 (citing 17 U.S.C. §§ 304(c)(6)(D), 203(b)(4)).)

Not only do Plaintiffs allege violations of the Copyright Act, Plaintiffs also maintain that "in the Concealed Terms, Hynie, . . . , improperly agreed, . . . that she would not exercise the termination rights as to some or all of the remaining Compositions as to which she had not yet

13

served termination notices, **to circumvent Plaintiffs' statutory termination interests while using the leverage of termination to enhance Hynie's compensation**." (*Id.* at 19 ¶ 71.) (emphasis added). In this same vein, Plaintiffs submit that Defendants' "improper agreements **convert Plaintiffs' share of the financial proceeds from their termination interests in the [c]ompositions, encumbering, diluting and/or effectively destroying Plaintiffs' termination interests**." (*Id.* at 19–20 ¶ 72.) (emphasis added).

Plaintiffs clearly allege adverse legal interests in terms of both termination interests granted by the Copyright Act and financial proceeds flowing from their proportionate ownership of copyright interests under state and federal law, as legal heirs to James Brown. (*Id.* at 12, 16, 18, 23, 27–28, 30 ¶¶ 47, 58, 65); *see Cottrell v. Alcon Labs.*, 874 F.3d 154, 164 (3d Cir. 2017) ("Both federal law and state law–including state statutes–'can create [legally cognizable] interests.'" (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001)).

By purporting to have their termination rights adversely affected by Defendants' actions, in violation of § 203, which Defendants have repudiated, Plaintiffs have created a controversy as to whether Plaintiffs will be entitled to their full share of "[t]he future rights…upon termination of the grant," as provided by the statute. 17 U.S.C. § 203(b)(2). This controversy is therefore non-speculative, and actual. *Baldwin v. EMI Feist Catalog, Inc.*, No. 11-81354-CIV, 2012 WL 13019195, at *3 (S.D. Fla. Dec. 11, 2012) (stating that Plaintiffs' § 203 claim established an actual controversy where complaint put the stability of future termination rights at issue under 17 U.S.C. §203(b)(2)).

Similarly, Plaintiffs have demonstrated that the controversy is "of sufficient immediacy and reality" to survive Defendants' Motions to Dismiss, and to sustain their declaratory judgment action. *MedImmune, Inc.,* 549 U.S. at 127. Indeed, Plaintiffs' Complaint alleges that Defendants

14

*have already* engaged in unlawful agreements under the Copyright Act and Defendant Hynie has already engaged in statutory terminations, which may have deprived them of proceeds. (*See id.* at 18–22 ¶¶ 66–77); *see also Cottrell*, 874 F.3d at 168 (holding that an injury was actual and imminent when the "claimed financial harm . . . *already* occurred"). Moreover, of particular relevance, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Here, the court observes that during the multiple hearings on the pending Motions to Dismiss, Defendants have *never denied* the existence of these alleged, secret agreements, which directly undermines any argument that Plaintiffs' claims are "conjectural or hypothetical." (ECF Nos. 144, 180.)

Defendants, in a somewhat conclusory fashion, contend that Plaintiffs' declaratory judgment action should be dismissed because Plaintiffs' claim is "insufficiently particularized or plausible to avert dismissal." (ECF No. 80-1 at 33; ECF No. 81 at 22; ECF No. 101 at 12.) Defendants briefly mention that Plaintiffs' "conspiracy allegations"—allegations that Defendants conspired to deprive Plaintiffs of their interest in termination rights in Mr. Brown's Compositions—are unsupported by concrete facts. (*Id.*) Defendants do not elaborate on their assertion nor do they put forth any authoritative support for their argument. Defendants do, however, rely on *Unigestion Holdings, S.A. v. UPM Tech., Inc* 160 F. Supp. 3d 1214 (D. Or. 2016), by arguing that the *Twombly* doctrine somehow "requires dismissal [of an action] if there is **any** alternative explanation to [Plaintiff's] allegations." (*Id.*) But *Unigestion* does not support Defendants' position—not only do Defendants advance an incorrect iteration of *Twombly's* pleading requirements, Defendants inaccurately state the standard articulated in *Unigestion.* Indeed, *Unigestion* stated the exact opposite: "if two alternative explanations exist, 'one advanced

by the defendant and the other advanced by the plaintiff, both of which are plausible, **plaintiff's complaint survives a motion to dismiss under 12(b)(6)**.'" *Unigestion Holdings,* 160 F. Supp. 3d at 1219 (emphasis added). Instead of supporting their case, Defendants have directed the court to additional case law that undermines their motion to dismiss.

Relying on their incorrect reading of *Unigestion*, Defendants argue that the action should be dismissed because Plaintiffs have not "offered facts to tending to show that Defendants alternative explanation is not true". (ECF No. 80-1 at 33; ECF No. 81 at 22; ECF No. 101 at 12.) However, at this stage, Plaintiffs are not required to make such a showing. Plaintiffs need only allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. Under the Rule 12(b)(6) analysis set forth in *Unigestion*, and under the analysis in *Iqbal*, Plaintiffs' Complaint firmly establishes that a case or controversy exists between the parties and is 'of sufficient reality to warrant issuance of a declaratory judgment.'" *Volvo*, 386 F.3d at 592.

### 2. <u>Abuse of Discretion</u>

The court turns to the third prong under *Volvo*, which states that "the court cannot abuse its discretion in exercising jurisdiction." *Volvo*, 386 F.3d at 592. The court must balance several factors when deciding whether discretion is being appropriately exercised: "(1) whether the judgment will serve a useful purpose in clarifying the legal relations in issue; (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding; (3) considerations of federalism, efficiency, and comity; and (4) whether the declaratory judgment action is merely being used…for procedural fencing." *Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 848 (E.D. Va. 2014) (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co*, 139 F.3d 419, 422-23 (4th Cir. 1998)).

Here, Plaintiffs' action for a declaratory judgment clearly serves a "useful purpose in clarifying legal relations in issue." *Id*. Plaintiffs allege that they are entitled to proceeds from James Brown's copyright grants, they allege that they have been deprived of possible proceeds, and a declaration would return those proceeds to them and clarify the allocation of their termination rights. (*See* ECF No. 1.) Likewise, Plaintiffs' Complaint requests a declaration invalidating the alleged, secret agreements that impact their termination interests or any proceeds therefrom. (*See Id*. at 21–22 ¶¶ 76–77.) Such a declaration would provide clarity surrounding questions related to the proceeds of which they are, or were, allegedly deprived. This would also allow for efficient litigation.

For these reasons, Plaintiffs, in their Complaint, have pleaded sufficient facts to state a claim for a declaratory judgment. In holding that these claims survive a motion to dismiss under Rule 12(b)(6), the court expresses no opinion on the ultimate merits of these claims. *Republican Party of N.C.*, 980 F.2d at 952 ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** Defendants' Motions to Dismiss (ECF No. 80-1, 81, 101) under Federal Rules of Civil Procedure 12(b)(6) without prejudice. Specifically, Plaintiffs' First Claim for a declaratory judgment relating to §§ 203 and 304 of the Copyright Act of 1976[5] remains before the court (ECF No. 1 at 18-22 ¶¶ 1-77).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 12, 2019
Columbia, South Carolina

---

[5] In this court's Order and Opinion entered on August 21, 2019 (ECF No. 183), the court observed that "as it relates to Plaintiffs' request for declaratory relief, Plaintiffs moved under the provisions, [of the Declaratory Judgment Act] and not any of the Copyright Act['s] provisions, for a declaration of their rights." (ECF No. 183 at 33. (internal citation omitted).) The court stands by its previous observation and further observes that this prior observation does not preclude the instant ruling. As a point of clarification, because a declaration of rights is not an enumerated remedy within §§ 203 and 304, and because these provisions are not self-enforcing, Plaintiffs brought their declaratory judgment action pursuant to The Declaratory Judgment Act to establish their termination rights under the Copyright Act.