**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| Deanna Brown-Thomas, *an individual and in her capacity as intestate heir and pending Personal Representative of the estate of her sister, the deceased Venisha Brown*; Yamma Brown, *an individual*; Michael D. Brown, *an individual*; Nicole C. Brown, *an individual*; Jeanette Mitchell Bellinger, *an individual*; Sarah LaTonya Fegan, *an individual*; Ciara Pettit, *an individual*; and Cherquarius Williams, *an individual*, <br><br>        Plaintiffs, <br><br>    v. <br><br> Tommie Rae Hynie, *an individual also known as Tommie Rae Brown*; James J. Brown, II, *an individual*; Russell L. Bauknight, *as the Personal Representative of the Estate of James Brown and Trustee of the James Brown I Feel Good Trust*; David C. Sojourner, Jr., *as the Limited Special Administrator of the Estate of James Brown and Limited Special Trustee of the James Brown I Feel Good Trust*; and Does, *1 through 10, inclusive*, <br><br>            Defendants. | Civil Action No.: 1:18-cv-02191-JMC <br><br><br><br><br> **ORDER AND OPINION** |

This matter is before the court upon the above-captioned Plaintiffs' Motion to Compel. (ECF No. 257.) Defendants Tommie Rae Hynie, Russell L. Bauknight, and David C. Sojourner, Jr. (collectively, "Defendants") have filed respective briefs in opposition (ECF Nos. 265, 266, 269), to which Plaintiffs filed reply briefs (ECF No. 275, 276). For the reasons below, the court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion. (ECF No. 257.)

**I. FACTUAL, PROCEDURAL, AND STATUTORY BACKGROUND**

This case befalls against the backdrop of a long-standing personal and legal battle between

several entities (a) Plaintiffs—the adult children to the late African-American singer, James Brown—,(b) Defendant Hynie, (c) Brown II—Brown and Hynie's son, and (d) Bauknight and the Limited Special Administrator of the Estate ("LSA")—Fiduciaries of the James Brown Estate and Trust. The parties are undoubtedly plagued by a panoply of issues, some of which are irrelevant to the instant matter before the court, stemming from the years-long battle.

*The Nature of Plaintiffs' Claims*

Plaintiffs allege*, inter alia*, that Hynie, Brown II, Bauknight, and the LSA have entered into various agreements with one another, and that Hynie and Brown II have entered agreements with third parties, which contain both known and allegedly concealed terms that are intended to deprive Plaintiffs of their inalienable termination rights in violation of the Copyright Act. Plaintiffs allege that the agreements provide Hynie control over Brown's compositions—to the exclusion of Plaintiffs. Plaintiffs specify that the LSA, on behalf of the Estate, entered into a settlement agreement with Hynie, wherein Hynie agreed to withdraw its appeal in pending litigation while the Estate agreed to transfer 65% of all proceeds from Hynie's copyright termination rights ("Disclosed Agreement"). (ECF No. 1 at 11 ¶ 44.) Moreover, after executing the Disclosed Agreement, Plaintiffs state that at least one music publishing company began "actively shopping the [c]ompositions, presumably" for the benefit of Hynie. (ECF No. 96-1.) Plaintiffs also stress the Disclosed Agreement contained incongruous and insignificant consideration, implying the existence of additional terms or agreements. (ECF No. 1 at 11-12 ¶ 45-46.) Thereafter, Plaintiffs moved the state probate court to disclose the complete terms of all agreements between Hynie and the Estate and Trust Fiduciaries, which Defendants vigorously contested ("Undisclosed Agreements"). (*Id.*)

Plaintiffs point to these interactions to conclude "Defendants have conspired to unlawfully

deprive Plaintiffs of their valuable termination interests in Brown's [c]ompositions in violation of the Copyright Act, and/or to convert and substantially dilute Plaintiffs' rightful share of the proceeds from these co[-]owned interests, in violation of state common law." (*Id.* at 12 ¶ 47.)

Moreover, Plaintiffs plead that such agreements are "void under Sections 304(c)'s and 203's protective provisions which safeguard Plaintiffs' termination rights '[n]otwithstanding any agreement to the contrary' and which also place strict time limits on when a statutory heir may assign or encumber his or her termination interests." (*Id.* at 19-22 ¶¶ 68, 73-77); 17 U.S.C. §§ 304(c)(5), 304(c)(6)(D), 203(a)(5), 203(b)(2)-(4). Plaintiffs seek a declaratory judgment under the Copyright Act, 17 U.S.C. §§ 101 *et seq*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, in part declaring certain disclosed and undisclosed agreements regarding copyright termination rights entered into by Defendants are "void, unenforceable, and prohibited as a matter of law and public policy." (ECF No. 1 at 21-22 ¶ 76.) Plaintiffs also seek injunctive relief "enjoining Defendants . . . from entering into or performing any agreement which directly or indirectly settles, waives, conveys or encumbers the termination rights and interests with respect to the Compositions[.]" (*Id.* at 22 ¶ 77.)

*James Brown's Death and Will*

Brown died on December 25, 2006, and left a will disposing of his personal assets, and a trust disposing of his music, commercial, and real estate assets. (*Id.* at 11 ¶ 41.) In January of 2007, Brown's will was submitted for informal probate in the probate court in Aiken County, South Carolina. (*Id.* ¶ 42.) Neither Hynie nor Brown II were named as beneficiaries of the will or trust. (*Id.* ¶ 43.) In 2007, Hynie and Brown II brought challenges to Brown's will and trust. (*Id.* ¶ 42.) Hynie filed for her spousal rights in South Carolina, which would have entitled her to a statutory elective share and a one-half omitted spouse's share, while Brown II asserted his right to a state

statutory child share as a lawful heir. (ECF No. 80-1 at 3.) Plaintiffs, as Brown's adult children, also brought challenges to set aside his will. *See Wilson v. Dallas*, 743 S.E.2d 746, 750-51 (S.C. 2013); (*see also* ECF No. 80-1 at 3; ECF No. 80-2 at 29.) As a result of these collective challenges, Brown's will was submitted to the Probate Court of Aiken County, South Carolina. (ECF No. 1 at 11 ¶ 42.) Eventually, the Probate Court of Aiken County transferred the administration of James Brown's estate to the Aiken County Court of Common Pleas. (ECF No. 1 at 11 ¶ 43; ECF No. 80-1 at 4.)

*Hynie's Spousal Status*

In 2015, the Aiken County Court of Common Pleas determined that Defendant Hynie was the surviving spouse of James Brown. (ECF No. 80-1 at 6.) During that same year, the lower court held that Defendant Brown was the biological son and a lawful heir to James Brown. (ECF No. 101-4.) In 2018, the South Carolina Court of Appeals also held that Defendant Hynie was the surviving spouse of James Brown. *See In re Estate of Brown*, 818 S.E.2d 770, 776 (S.C. Ct. App. 2018) ("Therefore, we find the trial court did not err in finding [Defendant Hynie] was married to Brown."). However, on June 17, 2020, the South Carolina Supreme Court reversed the lower courts and determined that Hynie "is not the surviving spouse of James Brown." *In re Estate of Brown*, No. 2018-001990, 2020 WL 3263381, at \*12 (S.C. June 17, 2020). On June 18, 2020, this court, in consideration of the South Carolina Supreme Court's determination, dismissed Defendant Hynie's Counterclaims, which were all predicated on her status as a surviving spouse because she "has no interests in Brown's Copyrights, and thus has no standing to bring any causes of actions predicated on such interests." Thereafter, Hynie alleges the South Carolina Supreme Court denied her request for a rehearing. (ECF No. 263-1 at 2.)

*Procedural Status*

On June 17 2020, Plaintiffs sent Requests for Production ("RFPs") to Defendants with a responsive deadline of July 20, 2020. (ECF No. 257-1 at 3.) Thereafter, the parties agreed to a one-week extension of this deadline. (*Id.*) Defendants then requested and received from the court an additional three weeks to respond. (*Id.* at 4.) Ultimately, Defendants filed objections to a number of requests by Plaintiffs on August 17, 2020. (*Id.*)

On August 21, 2020, Plaintiffs filed the instant Motion to Compel.[1] (ECF No. 257.) Plaintiffs seek an Order mandating that Defendants respond to Plaintiffs' RFPs and produce the Disclosed Agreement, Undisclosed Agreements, related correspondence and negotiations, and all other responsive documents outlined in the RFPs. (*Id.* at 2.) Plaintiffs also seek reasonable expenses and attorney's fees in bringing the Motion. (*Id.*) Defendants thereafter filed respective briefs in opposition. (ECF Nos. 265, 266, 269.) In reply, Plaintiffs filed a brief addressing Hynie's response (ECF No. 275) and a brief addressing Bauknight's and Sojourner's responses (ECF No. 276).

## II. LEGAL STANDARDS

### A. <u>Discovery Generally</u>

Amended Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2)

---

[1] Plaintiffs do not seek to compel the production of discovery from Defendant Brown II. Plaintiffs make no specific or direct reference to any failures of Brown II to produce discovery. Plaintiff further categorizes Hynie, Bauknight, and Sojourner as the "principal Defendants" in the case. (ECF No. 257-1 at 1 n.1.)

relevant to a claim or defense, and (3) proportional to the needs of the case. *E.g.*, *Gordon v. T.G.R. Logistics, Inc.*, Case No. 16-cv-00238-NDF, 2017 WL 1947537, at \*2 (D. Wyo. May 10, 2017). "While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed and doing so through 'clarifying, explaining and supporting its objections with competent evidence.'" *Wilson v. Decibels of Or., Inc.*, Case No. 1:16-cv-00855-CL, 2017 WL 1943955, at \*2 (D. Or. May 9, 2017) (quoting *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (internal citations omitted)).

A discovery request is relevant "if there is any possibility that the information sought might be relevant to the subject matter of [the] action." *Wilson*, 2017 WL 1943955, at \*5 (quoting *Jones v. Commander, Kan. Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993)). Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) ("the discovery rules are given 'a broad and liberal treatment'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). That said, discovery is not limitless and the court has the discretion to protect a party from "oppression" or "undue burden or expense." FED. R. CIV. P. 26(c).

### B. Motions to Compel

If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B).

The court has broad discretion in deciding to grant or deny a motion to compel. *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal citation omitted); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, No. 3:15-CV-03447-JMC, 2018 WL 573158, at *2 (D.S.C. Jan. 26, 2018).

### III. ANALYSIS

Plaintiffs seek to compel Defendants to respond to a number of RFPs. The crux of Plaintiffs' request centers on the Undisclosed Agreements, but extends to various other documents and agreements as well. The court inspects each batch of Plaintiffs' requests to determine whether Plaintiffs have demonstrated their sought information is relevant to a claim or defense and proportional to the needs of the case, as well as whether Defendants have shown such information is privileged. The court begins by examining Hynie's responses to the RFPs before turning to the responses of the remaining Defendants.

(1) Hynie's Responses to RFPs

    *A.  Requests 1-8*

Plaintiffs' RFPs 1-4 seek materials surrounding the Disclosed Agreement, while RFPs 4-8 implicate the Undisclosed Agreements and related materials. (ECF No. 257-1 at 16-17.)  Although Hynie initially objected to RFPs 1-4 involving the Disclosed Agreement, (*See* ECF No. 257-18 at 3-5), Hynie's response to the instant Motion appears to only argue that certain materials within RFPs 1-4 are privileged. (ECF No. 269 at 20-26.)

For RFPs 4-8 covering the Undisclosed Agreements, Hynie initially objected *inter alia* that (1) "the state courts have three times denied Plaintiffs' requests for these documents"; (2) Plaintiffs would gain an unfair advantage in other pending litigation against the Estate, as well as when asserting their own claims against the Estate; and (3) producing confidential settlements "would discourage settlements, contrary to public policy." (ECF No. 110 at 9-10.) In her responsive brief to the instant Motion, Hynie reiterates these contentions and adds the Undisclosed Agreements are irrelevant because she does not intend to use them for her claims or defenses, and regardless, producing such agreements would be unduly burdensome. (ECF No. 269 at 8-20.) She also claims the common interest doctrine shields these documents. (*Id.* at 20-26.)

A confidential settlement agreement is discoverable when it is "at least[] reasonably calculated to lead to the discovery of admissible evidence." *Oakridge Assocs., LLC v. Auto-Owners Ins. Co.*, No. 310CV145DCK, 2010 WL 3788058, at *2 (W.D.N.C. Sept. 23, 2010) (quoting *Polston v. Eli Lilly And Company*, 2010 WL 2926159 at *1 (D.S.C. July 23, 2010)). Moreover, the United States Court of Appeals for the Fourth Circuit "has never recognized a settlement privilege or required a particularized showing in the context of a subpoena for confidential settlement documents . . . . Accordingly, the only question before the court is whether any information in the

. . . agreement is relevant, and not unduly burdensome to produce." *Polston*, 2010 WL 2926159, at *1; *see Townsend v. Nestle Healthcare Nutrition, Corp.*, No. 3:15-CV-06824, 2016 WL 1629363, at *5 (S.D.W. Va. Apr. 22, 2016) ("[C]ourts within the Fourth Circuit have generally declined to recognize a federal settlement privilege.") (compiling cases); *Wilshire v. WFOI, LLC*, No. 4:13-CV-3614-RBH, 2015 WL 1643456, at *3 (D.S.C. Apr. 14, 2015) (similar).

Here, the materials within RFPs 4-8, including the Undisclosed Agreements, are discoverable and must be produced. For one, Plaintiffs have shown the Undisclosed Agreements are relevant to a claim or defense. Plaintiffs claim Hynie harmed them by entering into certain agreements that gave her control over Brown's compositions to Plaintiffs' exclusion, and then improperly transacting the compositions of the Estate. This claim appears bolstered by the lack of meaningful consideration within the Disclosed Agreement and the fact that, thereafter, at least one music company began "actively shopping the [c]ompositions[,]" likely on Hynie's behalf. (ECF No. 96-1.) Moreover, Hynie has at least acknowledged the existence of the Undisclosed Agreements and has largely disclaimed any potential wrongdoing therein as moot. (*See* ECF No. 269 at 8-20.) It thus appears the Undisclosed Agreements clear the low bar of possibly containing "information relevant to the case" to authorize their production. *Oakridge Assocs.*, 2010 WL 3788058, at *3 (finding a confidential settlement agreement "should be subject to discovery due to the possibility it contains information relevant to this case"). Accordingly, the Undisclosed Agreements and other materials outlined in RFPs 4-8 are directly relevant.

Hynie posits the Undisclosed Agreements are irrelevant because she does not intend to use them for her claims or defenses. Yet, as underscored by Plaintiffs, Hynie has already relied upon such agreements to aid her defense. For instance, at least three of Hynie's affirmative defenses implicate the Undisclosed Agreements:

(Authorization) . . . Any such use or sale by Mrs. Brown and/or James Brown II of the terminated interests and proceeds is and has been lawful and authorized by use, for which Plaintiffs are entitled to no relief.

. . .

(Absence of Damages) . . . Any unfair or deceptive trade practice alleged in Plaintiffs' Complaint, although specifically denied, did not cause Plaintiffs any ascertainable loss of money or injure Plaintiffs; therefore, Plaintiffs are barred from recovery.

. . .

(Unfair Trade Practices) . . . Any unfair or deceptive trade practices alleged in Plaintiffs' Complaint, which are specifically denied, do not have an impact upon the public interest and there is no injury from any alleged unfair or deceptive conduct; therefore, the unfair trade practices claims should be dismissed.

(ECF No. 191 at 14-15 ¶¶ 59, 61, 63.) Relatedly, Hynie further denied the allegations concerning the Undisclosed Agreements in her Answer. (*Id.* at 7-9 ¶¶ 26, 28, 30.) Given that evidence of such defenses and claims may likely be found in the Undisclosed Agreements, it thus appears their production is "at least[] reasonably calculated to lead to the discovery of admissible evidence." *Oakridge Assocs.*, 2010 WL 3788058, at *2. Indeed, the Undisclosed Agreements appear central to Plaintiffs' case and, in turn, Hynie's defense.

Additionally, producing the Undisclosed Agreements are proportional to the needs of the case. Particularly, the importance of the issues at stake and amount in controversy appear high, as both are connected to copyright termination rights stemming from Brown's numerous, popular, and valuable compositions. Plaintiffs have no other means to access the Undisclosed Agreements, and nothing in Hynie's response indicates she lacks the resources to disclose them. As discussed above, the discovery's importance is paramount and directly relevant to resolving the issues in the case. Nor does it seem such requests are unreasonable in scope or time.

Moreover, the burden or expense of the proposed discovery does not outweigh its likely benefit. Although Hynie claims producing the Undisclosed Agreements "would allow Plaintiffs to gain an unfair advantage in settlement negotiations," she does not explain why this would be

unduly burdensome beyond claiming it would provide a "road map" to settle with the Estate. (ECF No. 269 at 11, 19-20.) Likewise, Hynie points to "pending claims against the Estate from other claimants, including Plaintiffs," to justify withholding the Undisclosed Agreements as unduly burdensome. (ECF Nos. 257-18 at 3; 269 at 6, 8, 12-13, 20, 34 n.10.) Yet Hynie also asserts that "all of Plaintiffs' contentions and allegations [are] moot" based on a recent ruling (and a denial of rehearing) by the South Carolina Supreme Court, implying that litigation with Plaintiffs at the state level has ended.[2] Plaintiffs likewise articulate that their state claims against Defendants have concluded. (ECF No. 275 at 8.) And to the extent the Estate remains involved in ongoing litigation against other parties, the court observes a standard protective order (discussed further below) will sufficiently protect Hynie's interest in confidentiality.[3] Thus, while "a court may deny discovery of sensitive or confidential information on public policy grounds after weighing all of the factors" under Rule 26(b), a weighing of such factors in the instant case compels production. *Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 519 (M.D.N.C. 1989) (citation omitted). Accordingly, Plaintiffs have shown RFPs 4-8, including the Undisclosed Agreements, are relevant and proportional.

Next, Hynie has failed to show the materials sought in RFPs 4-8 are privileged. Hynie's main thrust is that the Undisclosed Agreements and related documents and communications are covered by the attorney-client privilege, work product doctrine, and common interest/joint defense

---

[2] Specifically, Hynie asserts that such agreements are irrelevant because the South Carolina Supreme Court ruled she was not the surviving spouse, thus mooting Plaintiffs' claims because Hynie now lacks any termination rights. (ECF No. 269 at 12-16.) The court has previously examined and rejected this argument. (*See, e.g.,* ECF Nos. 246 at 7; 282 at 9.) Nor does the South Carolina Supreme Court's ruling make the Undisclosed Agreements undiscoverable in the instant case.

[3] Hynie emphasizes that a protective order would do little good because Plaintiffs are the precise individuals who should not receive the Undisclosed Agreements. (ECF No. 269 at 19-20.) Yet as the court previously discussed, producing the Undisclosed Agreements to Plaintiffs is not unduly burdensome.

doctrine. (ECF No. 269 at 20.) Hynie specifies that she and the other Defendants "shared a common interest throughout the State probate proceedings . . . and shared a common defense against Plaintiffs." (*Id.* at 23.) Plaintiffs counter that such negotiations, communications, and agreements are not covered by any attorney-client privilege because Defendants were adverse parties at the time of its execution. In turn, Plaintiffs stress that the common interest/joint defense doctrine is unavailing because no applicable privilege covers the Undisclosed Agreements and related documents.

The attorney-client privilege "affords confidential communications between lawyer and client complete protection from disclosure." *Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir. 1998); *Upjohn Co. v. United States,* 449 U.S. 383, 390 (1981) (explaining the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice"); *In re Allen,* 106 F.3d 582, 601 (4th Cir. 1997) (applying *Upjohn* ).

> The attorney-client privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Hawkins,* 148 F.3d at 383; *Nix v. Holbrook*, No. 5:13-02173-JMC, 2015 WL 631155, at *3 (D.S.C. Feb. 13, 2015).

The work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R.

C𝐼𝑉. P. 26(b)(3)(A). For a document to be created "in anticipation of litigation" it must be "prepared because of the prospect of litigation when the preparer faces an actual claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 (4th Cir. 1992). To qualify as work product shielded from discovery, the evidence must be: (1) documents or tangible things otherwise discoverable; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party to the lawsuit or by or for the party's representative. *See, e.g., Collins v. Mullins,* 170 F.R.D. 132, 134 (W.D. Va. 1996); *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.,* 123 F.R.D. 198, 201 (M.D.N.C. 1988) (citation omitted).

The party opposing discovery bears the burden of showing that information or materials withheld from discovery meet these three criteria and, thus, are protected by the work-product doctrine. *Sandberg v. Va. Bankshares, Inc.,* 979 F.2d 332, 355 (4th Cir. 1992). "The party seeking protection must make this showing with a specific demonstration of facts supporting the requested protection, preferably through affidavits from knowledgeable persons." *E.I. Du Pont de Nemours and Co. v. Kolon Indus., Inc.,* No. 3:09cv58, 2010 WL 1489966, at *3 (E.D. Va. Apr. 13, 2010) (internal quotations omitted).

Here, the court finds Hynie has not demonstrated any privilege covers the materials in RFPs 4-8, including the Undisclosed Agreements, primarily because it appears Defendants were adverse when they executed such agreements. The Undisclosed Agreements, and related communications and negotiations among Defendants' attorneys, thus simply could not have been covered by attorney-client or work product privilege. Hynie contends the settlement negotiations were not adverse, claiming she and LSA "held a common interest during any and all settlement negotiations as they were vested in an outcome that was beneficial to all involved." (ECF No. 269

13

at 25.) Yet beyond this scant, general statement, Hynie does not offer any affidavits or other supporting evidence to show such negotiations were privileged. Nor does it seem plausible that a settlement among Defendants, which involved divvying up the Estate's assets, would be "beneficial to all involved" or otherwise invoke attorney-client or work product privilege. (*Id.*) The mere fact that all Defendants are on the same side of the aisle does not mean their past, adverse settlement negotiations and agreements are privileged. Thus, Hynie has not demonstrated an applicable privilege attaches to the information in RFPs 4-8. As no underlying privilege exists, the common interest/joint defense doctrine is likewise inapposite. *See In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990) (explaining the common interest/joint defense doctrine is an exception to the waiver of privilege, and "*presupposes the existence of an otherwise valid privilege*") (emphasis added).

Moreover, the fact a state probate court declined to order the production of the Undisclosed Agreements without discussion does not preclude their disclosure in the instant case. *Spencer v. Earley*, 278 F. App'x 254, 261 (4th Cir. 2008) ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (citation and quotations omitted). The prior probate matter was a different case litigating different issues. Indeed, it appears Hynie acknowledges these differences, as she previously represented to the state probate court that "federal termination rights . . . are not probate assets . . . . They are outside of the probate matter." (ECF No. 59-2 at 14:18-20, 22). Nor does any privilege arise simply from the fact the Undisclosed Agreements are confidential. *Polston*, 2010 WL 2926159, at *1 (explaining the Fourth Circuit "has never recognized a settlement privilege or required a particularized showing in the context of a subpoena for confidential settlement documents").

14

Lastly, the court finds RFPs 1-4—the requests surrounding the Disclosed Agreement—are relevant and proportional to the needs of the case. Further, for the reasons discussed *supra*, Hynie has not shown these materials are covered by any privilege. The court thus orders Hynie to respond to RFPs 1-4.

At bottom, Hynie is **ORDERED** to answer Plaintiffs' RFPs 1-8. Hynie shall produce the Undisclosed Agreements, Disclosed Agreement, and other responsive, non-privileged materials consistent with this Order and subject to the terms of a protective order to be submitted by the parties as discussed below.

### B. Requests 9-16

In RFPs 9-16, Plaintiffs seek the disclosure of 124 communications between Peter Afterman, a non-attorney music consultant, and Hynie's defense counsel. (ECF Nos. 257-1 at 20; 275 at 10.) Plaintiffs observe Hynie included these communications on her privilege log. In her initial answer to Plaintiffs' RFPs, Hynie argued these requests were "premature as [they are] keyed to contentions in the Complaint," "overbroad and unduly burdensome and not reasonably limited in scope or time," as well as protected by attorney-client privilege. (ECF No. 257-18 at 9-13.) Moreover, in her brief in opposition to the instant Motion, Hynie claims Afterman was essentially an agent of her attorney whom defense counsel engaged "as a consultant on behalf of [Hynie] to provide information and advice about copyrights and termination rights to assist them in providing legal advice to her." (ECF No. 269 at 26-27.) Hynie specifically points to Afterman's short declaration that states his "assistance as an agent involved helping [Hynie's] counsel provide [Hynie] with . . . legal advice about music, copyright, and termination matters." (ECF No. 269-6.)

As explained above, the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to

enable him to give sound and informed advice." *Upjohn Co.*, 449 U.S. at 390; *In re Allen,* 106 F.3d at 601. The attorney-client privilege "must be strictly construed" because it "is inconsistent with the general duty to disclose and impedes investigation of the truth[.]" *Atwood v. Burlington Indus. Equity, Inc.*, 908 F. Supp. 319, 323 (M.D.N.C. 1995) (citation omitted). "[A] client may convey confidential information to an agent—such as an accountant or tax consultant—without waiving the [attorney-client] privilege, as long as that disclosure is made to facilitate the attorney's provision of legal services to the client." *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 446 (E.D. Va. 2018) (citation omitted); *United States v. Adlman*, 68 F.3d 1495, 1500 (2d Cir. 1995); *United States v. Bornstein*, 977 F.2d 112, 116 (4th Cir. 1992); *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1191 (4th Cir. 1991); *Black & Decker Corp. v. United States*, 219 F.R.D. 87, 90 (D. Md. 2003).

When determining whether privilege applies, the court may look to various factors such as "to whom was the advice provided—counsel or the client, and which parties initiated or received the communications." *Williams*, 303 F. Supp. 3d at 446 (citations and internal marks omitted). The key factor, however, is "the nature of the work performed" by the agent. *Id.* (citation omitted). "The communications to the agent must be made for the purpose of the agent assisting the client in the rendition of legal services rather than merely for the purpose of receiving . . . [non-legal] advice" from the agent. *Id.* (citing *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) ("If what is sought is not legal advice but only accounting service, . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists."); *Samuels v. Mitchell*, 155 F.R.D. 195, 199 (N.D. Cal. 1994) ("If privileged documents or communications are disclosed to accountants for a purpose other than securing legal advice, the privilege is waived.")).

Here, the court finds Plaintiffs' request is relevant and proportional to the needs of the case.

16

Such communications are directly relevant to the agreements discussed above, and would not be unduly burdensome for Defendants to produce. Moreover, in her response to the instant Motion, it appears Hynie does not contest that such communications are relevant and proportional.

Next, Hynie has not provided sufficient evidence to demonstrate these requests cover privileged material. Incredibly, Hynie failed to include even an affidavit from defense counsel outlining at least a general enumeration of the nature of the information Afterman provided, whether such information aided or otherwise affected their dispensation of legal advice, why defense counsel relied on such information, or any other relevant considerations to determine whether Afterman gave assistance "for the purpose of facilitating the rendition of legal services." *Grand Jury Proceedings Under Seal*, 947 F.2d at 1191. Instead, the only evidence supporting Hynie's assertion of attorney-client privilege is the scant, conclusory declaration of Afterman, who proclaims his assistance "helped [defense] counsel provide [Hynie] with . . . legal advice about music, copyright, and termination matters." (ECF No. 269-6.) Yet Afterman's four-sentence declaration does not sufficiently explain the nature of his assistance, how he in fact knew his assistance aided defense counsel, how he knew that defense counsel used his assistance when formulating legal advice to Hynie, or how, as a non-attorney, Afterman could even determine what constitutes legal advice. Hynie has consequently failed to demonstrate privilege covers the communications with Afterman.

In short, Hynie is **ORDERED** to produce the 124 communications between Hynie's counsel and Afterman sought by RFPs 9-16, subject to the terms of a protective order to be submitted by the parties as discussed below.

### C.  Requests 17-33, 36-37

Plaintiffs take issue with a portion of Hynie's responses to RFPs 17-33 and 36-37, as Hynie

purportedly withheld certain documents solely because they were "confidential" but not privileged. (ECF No. 257-1 at 20-21.) Plaintiffs further allege Hynie's responses were incomplete. (*Id.*) Moreover, it again appears Hynie has not disputed these particular contentions in her response to the instant Motion. As discussed above, the fact a document may be "confidential" alone does not insulate it from discovery. Accordingly, as such requests appear relevant, proportional, unprivileged, and uncontested, Hynie is **ORDERED** to answer RFPs 17-33 and 36-37 consistent with this Order, subject to the terms of a protective order to be submitted by the parties as discussed below, in order to supplement any incomplete responses, including to the extent she withheld materials solely because they were alleged to be confidential.

(2) <u>Responses of Remaining Defendants</u>

Plaintiffs assert the LSA deficiently answered RFPs 1-10, which the court examined *supra*. (ECF No. 257-1 at 27-31.) The court observes the LSA repeats some arguments made by Hynie, which have been addressed above. (ECF No. 266 at 11-13.) The LSA adds that it withheld numerous documents simply because other Defendants stated their intention to invoke various privileges and protections to justify nonproduction. (*Id.* at 8-10.) The LSA does not invoke such privileges or protections itself. (*Id.*) The LSA further stresses it is not a party to, nor has in its possession, any Undisclosed Agreements or communications with other third parties that Plaintiffs seek. (*Id.* at 6-7, 10-11.) Given that the court has addressed Hynie's assertions and alleged privileges and protections *supra*, and the remainder of the LSA's contentions do not oppose production, the LSA is thus **ORDERED** to answer RFPs 1-10 consistent with this Order and subject to the terms of a protective order to be submitted by the parties as discussed below.

Lastly, the court notes it previously ordered that Bauknight, as the personal representative of the Estate, was not required to respond to the RFPs until Plaintiffs receive Defendants' other

responses in order to avoid duplicative discovery. (ECF No. 250.) Bauknight is thus **ORDERED** to promptly answer the RFPs consistent with this Order and subject to the terms of a protective order to be submitted by the parties as discussed below after Plaintiffs receive the discovery responses of the other Defendants.

(3) _In Camera_ Review

The court declines to perform an _in camera_ review of the responsive materials. The steps to obtain _in camera_ review are as follows: To start, a party may assert a privilege or protection by preparing an adequate privilege log. _Sky Angel U.S., LLC v. Discovery Commc'ns, LLC_, 28 F. Supp. 3d 465, 483 (D. Md. 2014), _aff'd_, 885 F.3d 271 (4th Cir. 2018) (citation omitted). If challenged,

> the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category of document. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden.

_Id._ (citation omitted). But if the asserting party makes such a showing and the challenging party still seeks disclosure of the allegedly privileged/protected material, "then the dispute is ready to submit to the court, which, after looking at the evidentiary support offered by the asserting party, can rule on the merits of the claim _or_ order that the disputed documents be produced for _in camera_ inspection." _Id._ (emphasis added) (citation omitted).

Here, as previously discussed, Defendants have not established a sufficient evidentiary basis on which to moor their claimed privileges and protections. The court thus declines to review the requested materials _in camera_.

(4) <u>Sanctions</u>

Federal Rule of Civil Procedure 37(c) allows for sanctions "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)[.]" When deciding whether to impose sanctions, the court should examine "(1) whether a party violated a discovery order or Federal Rule of Civil Procedure; (2) whether the violation was 'harmless' or 'substantially justified;' and (3) which sanction is appropriate for the violation." *Certain Underwriters at Lloyd's, London Subscribing to Policy No. BO823PP1308460 v. AdvanFort Co.*, No. 1:18-CV-1421-TSE-TCB, 2019 WL 3366103, at *4 (E.D. Va. July 25, 2019) (quoting *Vir2us, Inc. v. Invincea, Inc.*, 235 F. Supp. 3d 766, 772 (E.D. Va. 2017)). The court must further determine the type of sanctions to impose by reviewing "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Id.* (quoting *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998)).

Hynie declares that "[n]o section of Rule 37 authorizes sanctions for [her] Rule 26(a) disclosures" and proceeds to list why several such sections are inapplicable. (ECF No. 269 at 29-30.) For Rule 37(c), Hynie does not undertake a specific analysis of the above prongs, but instead essentially repeats her contentions above that all of her disclosures under Rule 26 were proper. (ECF No. 269 at 30-32.)

The court begins with an examination of Hynie's actions in this case. Hynie violated the Federal Rules of Civil Procedure rather than an outstanding discovery order. Moreover, although not harmless, there exists at least some justification for Hynie's behavior. In essence, Hynie confidently clung to her legal arguments—some of which appear dubious at best—and, when

pressed, failed to substantiate her contentions with competent evidence. Yet the court stops short of finding Hynie acted in bad faith. Nor does the court find the prejudicial impact of or need for deterring Hynie's conduct necessitates sanctions, as the court believes this Order will sufficiently motivate all parties to conduct the remainder of the pretrial process effectively, efficiently, and without unnecessary court intervention. The court thus declines to impose sanctions under Rule 37(c) against Hynie at this time.

In the same vein, the court finds an award of costs or other sanctions against the remaining Defendants would be inapt. The LSA refused to produce many documents based on other co-Defendants' representations that they would be invoking various privileges or protections. Moreover, the LSA stated it does not have possession of or access to various other responsive documents, was not a party to the Undisclosed Agreements, and did not communicate with the third parties identified by Plaintiffs. Plaintiffs likewise offer no specific arguments that the LSA should be sanctioned. The court thus finds an award or sanction against the LSA is unfitting. Regarding Bauknight, the court finds its prior Order "suspend[ing] the Estate's obligation to respond to Plaintiffs' RFPs until Plaintiffs receive the other Defendants' responses" precludes sanctions against him at this time.[4] (ECF No. 250.)

(5) Protective Order

Finally, the court observes many of the RFPs discussed above implicate materials that are sensitive or confidential but not privileged. As the Fourth Circuit has explained,

> [t]here is an important distinction between privilege and protection of documents, the former operating to shield the documents from production in the first instance, with the latter operating to preserve confidentiality when produced. An appropriate

---

[4] Given the court's reasoning in declining to impose sanctions under Rule 37(c), the court likewise declines to impose an award of attorney's fees against any Defendant under Rule 37(a). FED. R. CIV. P. 37(a)(5)(A)(iii) (stating a court may decline to award expenses for preparing a motion to compel where "other circumstances make an award of expenses unjust").

protective order can alleviate problems and concerns regarding both confidentiality
and scope of the discovery material produced in a particular case.

*Virmani v. Novant Health Inc.*, 259 F.3d 284, 288 n.4 (4th Cir. 2001). Plaintiffs have agreed to stipulate to a standard productive order. The parties are therefore **ORDERED** that any such discoverable confidential information shall be subject to a joint standard protective order as outlined below.

## IV. CONCLUSION

After careful consideration, the court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion to Compel. (ECF No. 257.) The court declines to impose sanctions on any party at this time.

The parties are further **ORDERED** that any confidential or sensitive information provided in response to the RFPs shall be subject to a standard protective order. The parties shall submit a joint proposed protective order within fourteen (14) days of the filing of the instant Order. Thereafter, within ten (10) days of the court filing the protective order, Defendants Hynie and the LSA shall respond to the RFPs consistent with the instant Order, and subject to the terms of the court's protective order. After Plaintiffs have received the responses of the other Defendants, Defendant Bauknight shall thereafter promptly respond to the RFPs consistent with the instant Order and subject to the terms of the court's protective order. (*See* ECF No. 250.)

An Amended Conference and Scheduling Order with new deadlines concerning mediation, pretrial disclosures under Rule 26(a)(3), motions *in limine*, and the date on which the case will be subject to jury selection and trial with be forthcoming.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

November 17, 2020
Columbia, South Carolina