**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | | |
|---|---|---|
| Deanna Brown-Thomas, *an individual and in her capacity as intestate heir and pending Personal Representative of the estate of her sister, the deceased Venisha Brown*; Yamma Brown, *an individual*; Michael D. Brown, *an individual*; Nicole C. Brown, *an individual*; Jeanette Mitchell Bellinger, *an individual*; Sarah LaTonya Fegan, *an individual*; Ciara Pettit, *an individual*; and Cherquarius Williams, *an individual*, | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 1:18-cv-02191-JMC |
| Plaintiffs, | ) ) | **ORDER AND OPINION** |
| v. | ) ) ) | |
| Tommie Rae Hynie, *an individual also known as Tommie Rae Brown*; James J. Brown, II, *an individual*; Russell L. Bauknight, *as the Personal Representative of the Estate of James Brown and Trustee of the James Brown I Feel Good Trust*; David C. Sojourner, Jr., *as the Limited Special Administrator of the Estate of James Brown and Limited Special Trustee of the James Brown I Feel Good Trust*; and Does, *1 through 10, inclusive*, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court upon Defendant Tommie Rae Hynie's ("Hynie") Motion to Compel. (ECF No. 295.) The above-captioned Plaintiffs entered a Response in Opposition to the Motion (ECF No. 298), to which Hynie filed a Reply (ECF No. 299). Hynie takes issue with numerous of Plaintiffs' discovery responses, and requests that the court sanction Plaintiffs. Hynie relatedly filed a Motion for Extension of Time seeking to retroactively justify her untimely Motion to Compel. (ECF No. 300.)

After careful consideration of the record, the court **GRANTS** in part and **DENIES** in part the Motion to Compel as set forth below,[1] and **FINDS AS MOOT** the Motion for Extension of Time. (ECF No. 300.)

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

This case befalls against the backdrop of a long-standing personal and legal battle between several entities: (a) Plaintiffs, who are the adult children to the late African-American singer, James Brown; (b) Defendant Hynie, who, during the pendency of the instant litigation, the Supreme Court of South Carolina determined was "not the surviving spouse of James Brown," *In re Estate of Brown*, No. 2018-001990, 2020 WL 3263381, at *12 (S.C. June 17, 2020); (c) Brown II, who is Brown and Hynie's son; and (d) Bauknight and the Limited Special Administrator of the Estate ("LSA")—Fiduciaries of the James Brown Estate and Trust. Neither Hynie nor Brown II were named as beneficiaries of the will or trust, thus spawning a panoply of issues before various courts in years-long legal battles. (ECF No. 1 at ¶ 43.)

Relevant to the instant case, Plaintiffs allege, *inter alia*, that Hynie, Brown II, Bauknight, and the LSA have entered into various agreements with one another, and that Hynie and Brown II have entered agreements with third parties, which contain both known and allegedly concealed terms that are intended to deprive Plaintiffs of their inalienable termination rights in violation of

---

[1]Specifically, the court denies without prejudice the portions of the Motion to Compel regarding sanctions, Plaintiffs' lack of supplemental responses, Plaintiffs' responses to Interrogatories and RFPs, and Plaintiffs' waiver of privilege, as set forth above. Plaintiffs are ordered to provide a privilege log within seven (7) days of the entry of this Order. Plaintiffs are likewise ordered to provide a calculation of damages within ten (10) days of the entry of this Order. The court further finds as moot Hynie's Motion for Extension of Time. (ECF No. 300.) Moreover, any second Motion to Compel filed by Plaintiffs shall conform to the expedited briefing schedule set forth in the Conclusion section of this Order.

[2] Additional facts are available in the court's prior Order and Opinion regarding Plaintiffs' Motion to Compel. (*See* ECF No. 283.)

the Copyright Act. Plaintiffs allege that the agreements provide Hynie control over Brown's compositions—to the exclusion of Plaintiffs.

In late 2020, the court granted a Motion to Compel filed by Plaintiffs, ordering certain Defendants, including Hynie, to respond to Requests for Production ("RFP") and produce various disclosed and undisclosed agreements and other related documents. (*See* ECF No. 283 at 22.) The court declined to impose sanctions on any party at that time. (*Id.*) Hynie now brings the instant Motion to Compel against Plaintiffs. (ECF No. 295.)

## II.     LEGAL STANDARDS

### A. <u>Discovery Generally</u>

Amended Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense, and (3) proportional to the needs of the case. *E.g.*, *Gordon v. T.G.R. Logistics, Inc.*, Case No. 16-cv-00238-NDF, 2017 WL 1947537, at *2 (D. Wyo. May 10, 2017). "While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed and doing so through 'clarifying, explaining and supporting its objections with competent evidence.'" *Wilson v. Decibels of Or., Inc.*, Case No. 1:16-cv-00855-CL, 2017 WL 1943955, at *2 (D. Or. May 9, 2017) (quoting *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (internal citations omitted)).

A discovery request is relevant "if there is any possibility that the information sought might be relevant to the subject matter of [the] action." *Wilson*, 2017 WL 1943955, at *5 (quoting *Jones*

*v. Commander, Kan. Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993)). Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) ("the discovery rules are given 'a broad and liberal treatment'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). That said, discovery is not limitless and the court has the discretion to protect a party from "oppression" or "undue burden or expense." FED. R. CIV. P. 26(c).

**B. <u>Motions to Compel</u>**

If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B).

The court has broad discretion in deciding to grant or deny a motion to compel. *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal

citation omitted); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, No. 3:15-CV-03447-JMC, 2018 WL 573158, at *2 (D.S.C. Jan. 26, 2018).

## III.     ANALYSIS

Hynie takes issue with various discovery responses by Plaintiffs and brings the instant Motion to Compel seeking to address the following categories of topics: Plaintiffs' inadequate discovery responses; Plaintiffs' deficient invocation of privilege; and appropriate sanctions against Plaintiffs.[3] The court examines each of these categories in turn.

### A. **Discovery Responses**

#### 1) *Requests for Admission*

Hynie contends all twelve of Plaintiffs' responses to her Requests for Admission ("RFA") violated Rule 36. "Under Rule 36, the parties to litigation may request from their adversaries

---

[3] A party's failure to comply with the Local Civil Rules is sufficient to deny his or her motion. *See CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 715 (D.S.C. 2017). Regarding Local Rule 37.01, the primary Local Rule at issue, "South Carolina district courts have 'discretion to consider an untimely motion to compel if the movant offers an acceptable explanation for the motion's tardiness.'" *CresCom Bank v. Terry*, No. 2:12-CV-00063-PMD, 2013 WL 3946222, at *2-3 (D.S.C. July 31, 2013) (quoting *U.S. ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 290 (4th Cir.2002)). Hynie states her Motion is justified because she relied in good faith on Plaintiffs' discovery responses, which stated they would offer supplemental discovery in the future; the parties were somewhat engaged in resolving these issues over the past five months; and discovery remains ongoing based upon the Amended Scheduling Order, thus reducing any prejudice to Plaintiffs. (ECF Nos. 295 at 3; 299 at 2-4.) Here, the court finds Hynie's Motion to Compel is clearly untimely. Regardless, in its discretion the court shall review the merits of the Motion based upon the alleged lack of prejudice to Plaintiffs and the continued, if not sporadic, negotiations between the parties. Further supporting this decision is the fact that Plaintiffs state they intend to bring a second Motion to Compel disclosure of certain concealed agreements against Defendants, and several of the issues Hynie raises in the instant Motion are directly related to such concealed agreements.

admissions regarding purely factual matters or the application of law to facts, but not matters of law." *Adventis, Inc. v. Consolidated Property Holdings, Inc.*, 124 Fed. Appx. 169, 172 (4th Cir. 2005) (citing *In re Carney*, 258 F.3d 415, 418 (5th Cir. 2001); 8A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure, § 2255 & n.8 (3d ed. 1999); FED. R. CIV. P. 36(a)). Additionally, "Rule 36 requires the answering party to specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter, and requires a detailed explanation for the inability of the respondent to admit or deny a request." *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, No. 12-CV-2350-SAC, 2015 WL 4478435, at *5 (D. Kan. July 22, 2015). "[A] response that admits in part and denies in part the matter requested is proper." *E.g.*, *Lawrence v. United States*, No. 8:11-CV-2735-T-17AEP, 2012 WL 9491751, at *2 (M.D. Fla. Oct. 3, 2012) (citing FED. R. CIV. P. 36(a)(4) ("[W]hen good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest")). The court examines each disputed RFA below.

    a.  <u>RFA No. 1</u>

> Please admit that in 2016 Warner-Tamerlane Publishing Corp. . . ., and Deanna Brown Thomas, Yamma Brown, Venisha Brown, Michael D. Brown, Jeanette Mitchell Bellinger, Nicole Parris, Ciara Pettit, Cherquarius Williams, and Sarah LaTonya Fergan a.k.a. Tonya Brown (represented by their attorney Marc Toberoff: collectively, the "Toberoff Clients"), . . . [Hynie], and . . . Brown II . . . entered into an agreement regarding the conveyance of the publisher's share for Please, Please, Please; Try Me; I'll Go Crazy; This Old Heart; and You've Got the Power ("compositions").

(ECF No. 295-8 at 4.) Hynie argues Plaintiffs' objection to this RFA as "vague and ambiguous," as well as their partial admission and denial, violated Rule 36. (ECF No. 295 at 6-7.) Yet the court finds Plaintiffs' response was proper. Plaintiff admitted the Toberoff Clients entered into an agreement, qualified its admission by referring to the explicit terms of the agreement, and denied

the remainder of the RFA. Therefore, the court **DENIES** the Motion to Compel a response to RFA No. 1.

    b.  <u>RFA No. 2</u>

> Please admit that in the agreement described in [RFA No. 1], the Toberoff clients released, discharged, and forever held harmless [Hynie], from any and all claims, losses, damages, demands and liabilities, previously, now or in the future, arising out of said conveyance (except for the right to continue disputing [Hynie's] status as the surviving spouse in state court).

(ECF No. 295-8 at 5.) Hynie states "[t]he same failure [of Plaintiffs' deficient response] appears in [RFA No. 2.]" (ECF No. 295 at 7.) However, the court again finds Plaintiffs properly admitted that they entered into an agreement, referenced the explicit terms of the agreement, and denied Hynie's summation of the agreement's terms that appeared in RFA No. 2. Moreover, Hynie previously defined the term "Toberoff Clients," which included capitalized lettering, yet failed to employ this term in RFA No. 2. The court thus **DENIES** the Motion to Compel a response to RFA No. 2.

    c.  <u>RFA No. 3</u>

> Please admit that in the agreement described in [RFA No. 1], the Toberoff clients agreed that the purchase price of said agreement was fair and reasonable.

(ECF No. 295-8 at 5.) Hynie flatly asserts "Plaintiffs refuse[d] to answer" RFA No. 3. (ECF No. 295 at 7.) Yet as Plaintiffs emphasize, the phrase "purchase price of said agreement" literally reads as "the purchase and assignment of an agreement," rather than the purchase price of compositions within the agreement at issue. (ECF No. 298 at 8.) Plaintiffs again admitted they entered into an agreement, referenced the terms of the agreement, and denied the remainder of the RFA. Moreover, Hynie previously defined the term "Toberoff Clients," which included capitalized lettering, yet failed to employ this term in RFA No. 3. As the wording Hynie chose to submit was indeed vague, ambiguous, and confusing, the court **DENIES** the Motion to Compel a response to RFA No. 3.

d. <u>RFA No. 4</u>

Please admit that the Toberoff clients accepted and received a share of the purchase price from said conveyance resulting from the agreement described in [RFA No. 1.]

(ECF No. 295-8 at 5-6.) Hynie again simply asserts "Plaintiffs refuse[d] to answer" RFA No. 4. (ECF No. 295 at 7.) The court finds this RFA is vague, ambiguous, and confusing, particularly when reviewing the phrasing that Plaintiffs "received a share of the purchase price from said conveyance resulting from the agreement[.]" Moreover, while RFA No. 1 does state that Hynie and Brown II "entered into an agreement regarding the conveyance of the publisher's share for" certain compositions, nowhere does RFA No. 1 establish that this conveyance included a purchase price. Adding to this ambiguity is the fact that Hynie defined the term "Toberoff Clients," which included capitalized lettering, yet failed to employ this term in RFA No. 4. Lastly, Plaintiffs' response admitted to an agreement, "reference[d] the explicit terms of such agreement for its true and complete contents," and otherwise denied the RFA. (ECF No. 295-8 at 6.) Given this RFA's ambiguous wording and Plaintiffs' admission, the court therefore **DENIES** the Motion to Compel a response to RFA No. 4.

e. <u>RFA No. 5</u>

Please admit that in 2019, Plaintiffs were represented by their attorney Marc Toberoff in negotiations with [Warner-Tamerlane Publishing Corp., Hynie, and Brown II] for the conveyance of the writer's share of said compositions and that Plaintiffs accepted and received a share of the purchase price from said conveyance.

(ECF No. 295-8 at 6.) Hynie claims that "Plaintiffs refuse to admit they received a share of the purchase price" in relation to the aforementioned agreement. (ECF No. 295 at 7.) The court finds this RFA is vague, ambiguous, and confusing. For one, Hynie defined the term "compositions" in RFA No. 1 using lowercase lettering, yet here Hynie confusingly denotes "said compositions," making it unclear to which compositions she is actually referring. Second, the RFA is vaguely

drafted by referencing "negotiations," and then moving to "accept[ing] and receiv[ing] a share of the purchase price from said conveyance," without actually establishing or referencing that an agreement was reached or a conveyance occurred. Third, in their response Plaintiffs admitted Marc Toberoff represented them in certain negotiations, and referred to "the explicit terms of any agreement in 2019 between these parties for its true and complete contents[.]" (ECF No. 295-8 at 6.) Thus, as this RFA is vague, ambiguous, and confusing, and given Plaintiffs' partial admission to this RFA, the court **DENIES** the Motion to Compel a response to RFA No. 5.

f.   RFA No. 6

Please admit that other than the conveyances set forth in responses to Requests for Admission1 [sic] through 5 above, Plaintiffs are unaware of any other conveyance of termination right interests in compositions by James Brown.

(ECF No. 295-8 at 6-7.) Hynie posits that this RFA is not vague or ambiguous. (ECF No. 295 at 8.) In response, Plaintiffs point out that (1) RFA Nos. 1 through 5 make no reference to termination rights; (2) Hynie appears to confusingly conflate a copyright interest, which is conveyable to third parties, with "termination rights," *see* 17 U.S.C. § 304(c); and (3) the RFA improperly anticipated Plaintiffs' responses before they had offered any. (ECF No. 298 at 9-10.) The court finds the wording of this RFA is vague, ambiguous, and confusing as drafted, and consequently **DENIES** the Motion to Compel a response to RFA No. 6.

g.   RFA No. 7

Please admit that other than the conveyances set forth in responses to Requests for Admission1 [sic] through 5 above, Plaintiffs have not attempted to convey any termination right interests in compositions by James Brown.

(ECF No. 295-8 at 7.) The parties repeat their arguments from RFA No. 6. For the same reasons as discussed for RFA No. 6, the court **DENIES** the Motion to Compel a response to RFA No. 7.

h.   RFA No. 8

Please admit that Plaintiffs, through their counsel Marc Toberoff, were aware of the payments made for the conveyances set forth in 1 through 5 above, and along with [Brown II] received and accepted 50 percent of said payments while [Hynie] received the other 50 percent.

(ECF No. 295-8 at 7.) Hynie again argues nothing about this RFA is vague, ambiguous, or confusing. (ECF No. 295 at 8.) The court assumes "1 through 5" refers to the respective RFAs. However, RFA Nos. 1-2 do not reference any payments. The court further found RFA Nos. 3-5 were vague, ambiguous, and confusing, including these RFAs' references to certain payments and conveyances. Moreover, Plaintiffs insist Hynie's math regarding a 50-50 split is incorrect, as Plaintiffs and Brown II comprise only eleven out of twelve of James Brown's statutory heirs. (ECF No. 298 at 11.) The court **DENIES** the Motion to Compel a response to RFA No. 8 as vague, ambiguous, and confusing.

i.   RFA No. 9

Please admit that a surviving spouse of James Brown would be entitled to 50 percent of the payments from the conveyances set forth in 1 through 5 above, and Plaintiffs asserted for purposes of this lawsuit that [Hynie] was the surviving spouse of James Brown.

(ECF No. 295-8 at 8.) The court **DENIES** the Motion to Compel a response to RFA No. 9 for the same reasons as set forth in RFA No. 8.

j.   RFA No. 10

Please admit that Plaintiffs have never demanded that [Hynie] or [Brown II] engage in the conveyance of any specific termination right for any specific composition.

(ECF No. 295-8 at 8.) Hynie contends Plaintiffs improperly qualified their admission of this RFA by stating the RFA was admitted "to the extent of Plaintiffs' understanding of it." (ECF No. 295 at 8.) In that vein, Plaintiffs objected to this RFA as vague and ambiguous because a "termination right" under the Copyright Act cannot generally be conveyed, and, although Hynie defined the

term "compositions" as four particular songs in RFA No. 1, the reference to "any specific composition" here makes it unclear to what songs Hynie is referring. (ECF No. 298 at 12.) The court agrees with Plaintiffs and **DENIES** the Motion to Compel a response to RFA No. 10.

      k.   <u>RFA No. 11</u>

      Please admit that heirs' termination rights under the Copyright Act are absolutely vested.

(ECF No. 295-8 at 9.) Hynie again insists this RFA is not vague, ambiguous, or confusing. (ECF No. 295 at 9.) Yet as Plaintiffs point out, it is unclear to which "heirs" Hynie is referring, as this reference could mean statutory heirs under the Copyright Act, or testamentary or intestate heirs. (ECF No. 298 at 13.) Plaintiffs further stress both the definition and timeframe regarding whether certain termination rights "are absolutely vested" are unclear. The court concurs with Plaintiffs and **DENIES** the Motion to Compel a response to RFA No. 11 because it is vague, ambiguous, and confusing.

      l.   <u>RFA No. 12</u>

      Please admit that a spousal heir may not adversely impact a child heir's vested termination rights.

(ECF No. 295-8 at 9.) Plaintiffs objected to this RFA as ambiguous, primarily because "not one of these terms are defined . . . and . . . the phrase 'vested termination rights' renders the RFA objectionable[.]" (ECF No. 298 at 13.) Plaintiffs otherwise denied this RFA, explaining "an author's surviving spouse can indeed adversely impact the termination rights of the author's surviving child by forming a majority with one other alleged child and thereby control whether or not to even exercise the termination right(s) or control all transactions to exploit the copyrights recaptured via any such exercise, all as set forth in Plaintiffs' Complaint." (*Id.* at 13-14.) The court

finds nothing improper with this answer, and therefore **DENIES** the Motion to Compel a response to RFA No. 12.[4]

### 2) *Requests for Production*

Next, Hynie in essence brings two challenges to Plaintiffs' RFP responses. First, Hynie complains that Plaintiffs did not properly segregate their responsive documents according to each particular RFP. (ECF No. 295 at 21-23.) Second, Hynie takes issue with 30 of Plaintiffs specific responses to the RFPs. (*Id.* at 23-26.)

As an initial matter, despite Hynie's assertion to the contrary, Plaintiffs were under no obligation to sort their responsive documents according to Hynie's RFPs. Rule 34 states that

> (i) A party must produce documents as they are kept in the usual course of business **or** must organize and label them to correspond to the categories in the request;
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms[.]

FED. R. CIV. P. 34 (emphasis added). Plaintiffs state they produced documents in the manner in which they were kept in the ordinary course of business. Indeed, Plaintiffs point out that Sojourner, Hynie's co-Defendant, produced his responsive documents in the same PDF format as Plaintiffs. (ECF No. 298 at 30.) The court thus finds Plaintiffs did not improperly produce their responsive documents.

Next, Hynie takes issue with Plaintiffs' responses to the RFPs. Specifically, Hynie disputes Plaintiffs' various objections to all the RFPs. (ECF No. 295 at 23-26.) Hynie also notes Plaintiffs provided no documents in response to RFP Nos. 3-6. (*Id.* at 24-25.) Lastly, for RFP Nos. 7-30,

---

[4] The court observes Plaintiffs advised Hynie that if she "simply redraft[ed] these RFAs with [Plaintiffs'] responses in mind, so that the RFAs are proper and unambiguous, [P]laintiffs will be more than happy to specifically and substantively respond to them. This will entail a small fraction of the time and attention required to litigate an ill-advised motion to compel." (ECF No. 298-1 at 6.)

Hynie states "Plaintiffs have produced almost nothing except emails, draft agreements, and letters, 90% of which [Hynie] already has." (*Id.* at 26.) Since bringing the instant Motion, Hynie admits that "Plaintiffs have produced additional . . . emails between S. Alan Medlin and Marc Toberoff [but] in no way constitute a full and complete response to [Hynie's] discovery requests." (ECF No. 299 at 6.)

In response, Plaintiffs "specifically confirmed to Hynie's counsel, and <u>hereby confirm to the [c]ourt</u>, that with the exception of documents withheld on the basis of the attorney-client privilege or the attorney work product doctrine for which a proper privilege log will soon be provided (see below), <u>no documents were withheld on the basis of Plaintiffs' other objections</u>." (ECF No. 298 at 31 (emphasis in original).) Plaintiffs further point to a responsive document they provided for RFP Nos. 3-5. For RFP No. 6, Plaintiffs insist they do not have any documents related to an attempt to "divert financial proceeds from [Brown's music]," and suggest that, if anyone has such documents, it would be Hynie. (*Id.* at 31.) Lastly, Plaintiffs observe they fully responded to RFP Nos. 7-30, despite Hynie's unhappiness with the content of the responsive documents. (*Id.* at 30.)

Here, the court **DENIES WITHOUT PREJUDICE** the Motion to Compel responses to RFP Nos. 1-30. Plaintiffs have asserted they withheld no documents on the basis of any of their objections beyond privilege.[5] Hynie's only reply is to in essence broadly claim this cannot be true. (*See* ECF No. 299 at 6.) Yet beyond Hynie's bare allegation, the court finds no basis to grant the instant Motion related to Plaintiffs' RFP responses. The court simply cannot compel Plaintiffs to

---

[5] The court dismisses this challenge without prejudice because Plaintiffs have been ordered to provide a privilege log within seven (7) days of the entry of this Order, as discussed further below.

produce documents they do not possess. Hynie's Motion to Compel regarding her RFPs is consequently denied.

### 3) Interrogatories

Hynie again brings two main challenges to Plaintiffs' responses to Interrogatories. Hynie challenges Plaintiffs' specific responses, as Plaintiffs only answered what appears to be 14 of her Interrogatories. Moreover, Hynie claims that, when including all subparts, she sent a total of only 25 Interrogatories to Plaintiffs. Yet for support, Hynie only briefly proclaims "[t]he subparts of [her] interrogatories are clearly tied to the common theme of each interrogatory and should not be counted separately." (ECF No. 295 at 19.) Alternatively, Hynie asks the court to expand the number of allowable Interrogatories to 35 due to "the complexity of the issues and the over 15-year history of the litigation associated with this case."[6] (*Id.* at 21.) Hynie also states that if the court does not grant her Motion, she has already "restated and amended her interrogatories to advise Plaintiffs which of the 25 interrogatories she requests that they answer[,] and served them on February 12, 2021." (ECF No. 299 at 6.)

A party cannot serve more than 25 interrogatories, including all discrete subparts, without leave of the court. *Holcombe v. Helena Chem. Co.*, No. 2:15-CV-2852-PMD, 2016 WL 2897942, at *1-2 (D.S.C. May 18, 2016) (citing FED. R. CIV. P. 33(a)(1)). To obtain leave to do so, the moving party must demonstrate "the proposed interrogatories seek information that is nonprivileged and relevant to a claim or defense, and that the interrogatories are 'proportional to the needs of the case.'" *Holcombe*, 2016 WL 2897942, at *1-2 (quoting FED. R. CIV. P. 26(b)(1)).

> "[A]n interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question," but "an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of

---

[6] Hynie does not specify which Interrogatories she seeks to ask Plaintiffs, as Plaintiffs contend she submitted 45 Interrogatories in total. (ECF No. 298 at 16 n.5.)

> limitation." 8A Charles A. Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Fed. Prac. & Proc. § 2168.1 at 261 (2d ed.1994); see Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, Discovery Problems and their Solutions 16–22 (ABA 2d ed.2009).

*Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 572-73 (D. Md. 2010).

Here, the court finds Hynie obviously submitted over 25 Interrogatories to Plaintiffs without leave of the court. (*See* ECF No. 295-4.) In fact, Interrogatory No. 25 alone appears to have five distinct and separate subparts. (*See id.* at 9.) Moreover, Hynie has not demonstrated why additional Interrogatories should be allowed in this matter. Although other litigation preceded this case, the instant action was filed in 2018. Further, the complexity of the Copyright Act has little to do with factual discovery. Thus, the court declines to extend the number of allowable Interrogatories at this time.

Next, nearly all of Hynie's challenges to Plaintiffs' specific responses stem from either Plaintiffs' refusal to provide any answer—which was based upon the excessive number of interrogatories they received—or Plaintiffs' refusal to answer Interrogatories related to certain concealed agreements they claim are central to the case, which was due to Defendants' failure to produce the agreements in question. Despite these issues, Plaintiffs represent they initially answered 14 Interrogatories and have offered to answer an additional 11 of Hynie's choosing. (ECF No. 298-1 at 5.) Consequently, the court grants leave for Hynie to identify and submit additional Interrogatories to Plaintiffs from her list of initial Interrogatories so that Plaintiffs answer 25 Interrogatories in total, if Hynie has not already done so. In turn, Plaintiffs are ordered to respond to and/or supplement responses to these Interrogatories in compliance with the Federal Rules of Civil Procedure.[7]

---

[7] The court observes many of Plaintiffs' initial responses included objections to Hynie's Interrogatories as "premature." While Plaintiffs may well bring a second Motion to Compel critical discovery, at minimum it appears such responses should be supplemented under Rule 26(e). *See*

Given that Plaintiffs have been ordered to respond to 25 Interrogatories in total, Plaintiffs represented they intend to bring a second Motion to Compel for certain concealed agreements against Defendants,[8] and the above developments may well resolve Hynie's current challenges to the Interrogatory responses,[9] the court **DENIES WITHOUT PREJUDICE** the instant Motion to Compel responses to the Interrogatories. Once Plaintiffs' forthcoming Motion to Compel is resolved and they have responded to and/or supplemented responses to the 25 Interrogatories, Hynie may thereafter bring a Motion to Compel Interrogatory responses in accordance with the Federal Rules of Civil Procedure and this court's Local Civil Rules, if necessary.

### 4) Duty to Supplement Responses

Hynie seeks to compel Plaintiffs to supplement their responses under Rule 26. Hynie broadly claims that Plaintiffs have not properly supplemented their responses, despite the fact that Plaintiffs initially objected to several requests as being "premature." (ECF No. 295 at 27.) Yet as

---

also In re Urethane Antitrust Litig., No. 04-MD-1616-JWL, 2009 WL 2058759, at *2 (D. Kan. July 15, 2009) ("Although plaintiffs' expert *may* identify additional [information] that support plaintiffs' claims, plaintiffs may not shirk their duty of answering Interrogatory No. 7 now with whatever information they have. If more information responsive to this interrogatory becomes available, plaintiffs should supplement their answer in accordance with Fed. R. Civ. P. 26(e)." (citations and internal quotation marks omitted)).

[8] As Plaintiffs state it:

> [Defendants] were ordered on November 17, 2020[,] to produce the Undisclosed Agreement and all related documents (ECF No. 283). But Defendants solely produced a single one-page agreement. Incredibly, despite the tremendous importance of this agreement, Hynie and her counsel claimed with a straight face that they possessed no other drafts, correspondence or any other documents regarding (or even attaching) their highly significant agreement—as if it simply fell from the sky. Accordingly, Plaintiffs informed Hynie's counsel that they would soon bring a motion to enforce the Court's Order.

(ECF No. 298 at 2.)

[9] The court sets forth the expedited briefing schedule for Plaintiffs' Second Motion to Compel in the Conclusion section below.

explained above, Plaintiffs stated that privilege was the only basis on which they withheld responsive documents. Further, the court has denied without prejudice Hynie's request to compel responses to certain Interrogatories, including those that Plaintiffs contested as premature, due to the initially excessive number of Interrogatories and the potentially forthcoming Motion to Compel by Plaintiffs. The court therefore **DENIES WITHOUT PREJUDICE** the Motion to Compel supplemental responses for the above issues.

Hynie's only specific argument on a lack of supplementation is Plaintiffs' failure to compute each category of damages pursuant to Rule 26. (*Id.* at 5-6.) Plaintiffs have represented their intention to bring a second Motion to Compel certain concealed agreements against Defendants, and Plaintiffs assert such agreements are critical to a calculation of damages. Even so, Plaintiffs may not decline to calculate their damages simply because they lack discovery. "Federal Rule of Civil Procedure 26(a)(1)(A) requires a party, 'without awaiting a discovery request,' to provide 'a computation of each category of damages claimed by the disclosing party.'" *Albert S. Smyth Co. v. Motes*, No. CV CCB-17-677, 2019 WL 10959830, at *1 (D. Md. May 9, 2019) ("While Motes argues that his damages calculation is dependent on financial and accounting information he has yet to receive from Smyth, Motes has a duty to provide a calculation of his damages at this stage in the litigation, although it may be subject to future supplementation.") (citing *Dickman v. Banner Life Ins. Co.*, Civil No. RDB-16-192, 2017 WL 4342064, at *6 (D. Md. Sept. 28, 2017) (response that "the question is 'premature at this early stage in the litigation' is a totally inadequate response")). Accordingly, the court **GRANTS** the Motion to Compel supplemental responses related to a calculation of damages. Plaintiffs are **ORDERED** to provide a calculation of damages according to Rule 26, subject to their objections and duty to supplement all discovery responses, within ten (10) days of the entry of this Order.

B. **Privilege**

Hynie claims that Plaintiffs have not yet provided a privilege log, and she has consequently been "unable to determine the relevancy of any privilege asserted by Plaintiffs[.]" (ECF No. 295 at 21-22.) In essence, Hynie asks the court to find that Plaintiffs waived privilege based upon this failure. (*See id.* at 23.)

A party asserting a privilege must provide a privilege log containing sufficient information to allow opposing parties to assess the claim of privilege. *See Wellin v. Wellin*, No. 2:13-CV-1831-DCN, 2018 WL 2604867, at *4 (D.S.C. May 25, 2018). In general, a party satisfies this requirement by furnishing a privilege log that lists the documents withheld along with the pertinent information for each document. *See Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, No. 6:14-CV-749-ORL-41, 2015 WL 1470971, at *7 (M.D. Fla. Mar. 31, 2015). At issue is whether Plaintiffs' ongoing failure to provide a privilege log amounts to a waiver of privilege.

> Courts apply several different standards to determine whether a party has waived a privilege or the work-product doctrine. Sometimes the failure to object properly or produce a privilege log justifies a waiver with no further consideration. *Westchester Surplus Lines Ins. Co. v. Clancy & Theys Const. Co.*, No. 5:12-CV-636-BO, 2013 WL 6058203, at *5 (E.D.N.C. Nov. 15, 2013); *Progressive Se. Ins. Co. v. Arbormax Tree Serv., LLC*, No. 5:16-CV-662-BR, 2018 WL 4431320, at *7 (E.D.N.C. Sept. 17, 2018). Other times, courts will consider whether there has been "unjustified delay, inexcusable conduct[,] or bad faith in responding to discovery." *Herbalife Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. CIV.A. 5:05CV41, 2006 WL 2715164, at *4 (N.D.W. Va. Sept. 22, 2006). And yet other courts will decide "on a case-by-case basis after consideration of all the circumstances." *Smith v. James C. Hormel Sch. of Virginia Inst. of Autism*, No. 3:08CV00030, 2010 WL 3702528, at *4-7 (W.D. Va. Sept. 14, 2010).

*Futreal v. Ringle*, No. 7:18-CV-00029-FL, 2019 WL 137587, at *8 (E.D.N.C. Jan. 8, 2019) (choosing to examine the totality of the circumstances).

Here, the court is inclined to examine the totality of the circumstances, and concludes Plaintiffs have not waived privilege for certain discovery documents they withheld. As Hynie

observes, discovery is still open based upon the Amended Scheduling Order, thus any prejudice to Defendants is minimal. Moreover, Hynie waited to challenge Plaintiffs' failure to provide a privilege log for over five months, despite the fact she in all likelihood could have confronted this matter much earlier. Based on the totality of the circumstances in this case, the court finds Plaintiffs have not waived privilege by failing to submit a privilege log. Indeed, Plaintiffs openly concede "they owe Hynie a privilege log and would provide one shortly." (ECF No. 298 at 32.) The court therefore **DENIES WITHOUT PREJUDICE** the Motion to Compel regarding a waiver of privilege and **ORDERS** Plaintiffs to provide a privilege log within seven (7) days of the entry of this Order.[10]

### C. Sanctions

Federal Rule of Civil Procedure 37(c) allows for sanctions "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)[.]" When deciding whether to impose sanctions, the court should examine "(1) whether a party violated a discovery order or Federal Rule of Civil Procedure; (2) whether the violation was 'harmless' or 'substantially justified;' and (3) which sanction is appropriate for the violation." *Certain Underwriters at Lloyd's, London Subscribing to Policy No. BO823PP1308460 v. AdvanFort Co.*, No. 1:18-CV-1421-TSE-TCB, 2019 WL 3366103, at *4 (E.D. Va. July 25, 2019) (quoting *Vir2us, Inc. v. Invincea, Inc.*, 235 F. Supp. 3d 766, 772 (E.D. Va. 2017)). The court must further determine the type of sanctions to impose by reviewing "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been

---

[10] Hynie does not ask the court to compel Plaintiffs to produce a privilege log. (*See* ECF Nos. 295 at 21-23, 29.) Rather, she asks the court to find Plaintiffs'' failure to provide such a log amounts to a waiver of privilege.

effective." *Id.* (quoting *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998)).

Hynie seeks sanctions against Plaintiffs for "their knowingly evasive discovery responses," lack of supplements, and delayed responses. (ECF No. 295 at 27-28.) Hynie also appears to request "the reasonable costs of preparing this [M]otion." (*Id.* at 29.)

Here, the court finds sanctions are not appropriate against Plaintiffs. Plaintiffs' responses to Hynie's RFAs and RFPs were proper. Plaintiffs' deficient responses to certain Interrogatories appear to have stemmed at least in part from Hynie's conduct, including an ongoing dispute over producing previously-undisclosed agreements. It is true Plaintiffs failed to provide a privilege log and failed to calculate damages without sufficient justification. However, based upon the totality of the circumstances in this case, and for the reasons discussed *supra*, the court declines to impose any sanction for these failures at this time. (*See* ECF No. 283 at 20-22 (granting Plaintiffs' Motion to Compel yet declining to impose sanctions against Hynie or any other Defendant).) *See also* FED. R. CIV. P. 37(a)(5)(A)(iii) (stating a court may decline to award expenses for preparing a motion to compel where "other circumstances make an award of expenses unjust"). The court therefore **DENIES WITHOUT PREJUDICE** the Motion to Compel sanctions.

### D. Hynie's Motion for Extension of Time

Lastly, Hynie recently filed a Motion for Extension of Time seeking to retroactively validate her untimely-filed Motion to Compel. (ECF No. 300.) But as discussed above, the court decided it would consider the merits of the Motion to Compel despite its untimeliness, primarily for the reasons Hynie discussed in the Motion to Compel and her Reply. (*See* ECF Nos. 295, 299.) Accordingly, the court **FINDS AS MOOT** Hynie's Motion for Extension of Time. (ECF No. 300.)

#### IV.     CONCLUSION

After careful consideration, the court **GRANTS** in part and **DENIES** in part Defendant Hynie's Motion to Compel as set forth herein. (ECF No. 295.) Specifically, the court **DENIES WITHOUT PREJUDICE** the portions of the Motion to Compel regarding sanctions, Plaintiffs' lack of supplemental responses, Plaintiffs' responses to Interrogatories and RFPs, and Plaintiffs' waiver of privilege, as set forth above.

Plaintiffs are **ORDERED** to provide a privilege log within seven (7) days of the entry of this Order. Plaintiffs are likewise **ORDERED** to provide a calculation of damages within ten (10) days of the entry of this Order. The court further **FINDS AS MOOT** Hynie's Motion for Extension of Time. (ECF No. 300.)

Plaintiffs state they intend to bring a second Motion to Compel against Defendants. Given that trial in this matter is set to begin on June 14, 2021 (ECF No. 290), any such Motion shall be filed no later than **February 21, 2021**. Defendants' response to a second Motion to Compel shall be filed no later than **February 28, 2021**. Plaintiffs' reply is due on **March 4, 2021**.

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

February 19, 2021
Columbia, South Carolina