**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | |
|---|---|
| Deanna Brown-Thomas, *an individual and in her capacity as intestate heir and pending Personal Representative of the estate of her sister, the deceased Venisha Brown*; Yamma Brown, *an individual*; Michael D. Brown, *an individual*; Nicole C. Brown, *an individual*; Jeanette Mitchell Bellinger, *an individual*; Sarah LaTonya Fegan, *an individual*; Ciara Pettit, *an individual*; and Cherquarius Williams, *an individual*, <br><br> Plaintiffs, <br><br> v. <br><br> Tommie Rae Hynie, *an individual also known as Tommie Rae Brown*; James J. Brown, II, *an individual*; Russell L. Bauknight, *as the Personal Representative of the Estate of James Brown and Trustee of the James Brown I Feel Good Trust*; David C. Sojourner, Jr., *as the Limited Special Administrator of the Estate of James Brown and Limited Special Trustee of the James Brown I Feel Good Trust*; and Does, *1 through 10, inclusive*, <br><br> Defendants. | Civil Action No.: 1:18-cv-02191-JMC <br><br><br><br><br><br> **ORDER AND OPINION** |

Before the court is the above-captioned Plaintiffs' Second Motion to Compel. (*See* ECF No. 304.) Defendant Tommie Rae Hynie ("Hynie") entered a Response in Opposition to the Motion (ECF No. 308), to which Plaintiffs filed a Reply (ECF No. 309). Plaintiffs allege Hynie again failed to fully respond to certain discovery requests—even after this court's prior Order compelling responses—surrounding the copyright termination interests of certain compositions by James Brown. After careful consideration of the record, the court **GRANTS** in part and **DENIES** in part the Second Motion to Compel as set forth below. (ECF No. 304.) The court **HOLDS IN**

**ABEYANCE** its ruling regarding potential sanctions against Hynie until the resolution of the Motion to Confirm Confidential Designations, Second Motion to Compel against Plaintiffs, and/or mediation scheduled for March 24, 2021.[1] (*See* ECF Nos. 297, 314, 315.)

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

This case befalls against the backdrop of a long-standing personal and legal battle among several entities: (a) Plaintiffs, who are the adult children to the late African American singer, James Brown; (b) Hynie, who, during the pendency of the instant litigation, the Supreme Court of South Carolina determined was "not the surviving spouse of James Brown," *In re Estate of Brown*, No. 2018-001990, 2020 WL 3263381, at *12 (S.C. June 17, 2020); (c) Brown II, who is Brown and Hynie's son; and (d) Bauknight and the Limited Special Administrator of the Estate ("LSA")—Fiduciaries of the James Brown Estate and Trust. Neither Hynie nor Brown II were named as beneficiaries of the will or trust, thus spawning a panoply of issues before various courts in years-long legal conflicts. (ECF No. 1 at ¶ 43.)

Relevant to the instant case, Plaintiffs allege, *inter alia*, that Hynie, Brown II, Bauknight, and the LSA have entered into various agreements with one another, and that Hynie and Brown II have entered agreements with third parties, which contain both known and allegedly concealed terms that are intended to deprive Plaintiffs of their inalienable termination rights in violation of the Copyright Act. Plaintiffs allege that the agreements provide Hynie control over Brown's compositions—to the exclusion of Plaintiffs.

---

[1] Plaintiffs have stated they intend to bring a Motion to Compel against Defendant Bauknight. (*See* ECF No. 316 at 2.) The court's ruling on Hynie's sanctions may likewise be held in abeyance until the resolution of such a Motion.

[2] Additional facts are available in the court's prior Order and Opinion regarding Plaintiffs' First Motion to Compel. (*See* ECF No. 283.)

The parties have been unable to sort out their pretrial discovery issues without repeated court intervention. In late 2020, the court granted Plaintiffs' First Motion to Compel, ordering certain Defendants, including Hynie, to respond to Plaintiffs' Requests for Production ("RFP") and produce various disclosed and undisclosed agreements and other materials. (*See* ECF No. 283 at 22.) The court declined to impose sanctions on any party at that time. (*Id.*) Thereafter, the court granted in part and denied in part Hynie's First Motion to Compel against Plaintiffs, again declining to impose sanctions at that time. (*See* ECF No. 295.) Hynie has since brought a Second Motion to Compel, which remains pending. (ECF No. 314.) Plaintiffs have likewise brought a Second Motion to Compel, which is currently before the court, in essence contending Hynie has not complied with the court's Order regarding Plaintiffs' First Motion to Compel.[3] (*See* ECF No. 304.)

## II.     LEGAL STANDARDS

### A. <u>Discovery Generally</u>

Amended Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense, and (3) proportional to the needs of the case. *E.g.*, *Gordon v. T.G.R. Logistics, Inc.*, Case No. 16-cv-00238-NDF, 2017 WL 1947537, at *2 (D. Wyo. May 10, 2017). "While the party seeking discovery has the burden to establish its relevancy and proportionality, the party objecting has the burden of showing the discovery should not be allowed and doing so

---

[3] Plaintiffs recently represented they intend to bring a Motion to Compel against Bauknight. (*See* ECF No. 316 at 2.)

3

through 'clarifying, explaining and supporting its objections with competent evidence.'" *Wilson v. Decibels of Or., Inc.*, Case No. 1:16-cv-00855-CL, 2017 WL 1943955, at \*2 (D. Or. May 9, 2017) (quoting *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (internal citations omitted)).

A discovery request is relevant "if there is any possibility that the information sought might be relevant to the subject matter of [the] action." *Wilson*, 2017 WL 1943955, at \*5 (quoting *Jones v. Commander, Kan. Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993)). "Relevance is not, on its own, a high bar[,]" *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019), and "is construed very liberally." *Nat'l Credit Union Admin. v. First Union Capital Markets Corp.*, 189 F.R.D. 158, 161 (D. Md. 1999).

However, Rule 26(b)(1)'s "proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information." *Gilmore v. Jones*, No. 3:18-CV-00017, 2021 WL 68684, at \*3-4 (W.D. Va. Jan. 8, 2021) (citing *Jordan*, 921 F.3d at 188-89). Such considerations include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case. *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) ("the discovery rules are given 'a broad and liberal treatment'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). That said, discovery is not limitless and the court has the discretion to

4

protect a party from "oppression" or "undue burden or expense." FED. R. CIV. P. 26(c).

B. **Motions to Compel**

If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B).

"[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Oppenheimer v. Episcopal Communicators, Inc.*, No. 1:19-CV-00282-MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020); *see Basf Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 2:17-CV-503, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citation omitted). "Thus, once the moving party has made 'a *prima facie* showing of discoverability,' the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought 'is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery.'" *Gilmore v. Jones*, No. 3:18-CV-00017, 2021 WL 68684, at *3-4 (W.D. Va. Jan. 8, 2021) (quoting *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016)).

The court has broad discretion in deciding to grant or deny a motion to compel. *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal citation omitted); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion

to compel discovery is addressed to the sound discretion of the district court."); *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, No. 3:15-CV-03447-JMC, 2018 WL 573158, at *2 (D.S.C. Jan. 26, 2018).

## III.    ANALYSIS

Plaintiffs allege Hynie has failed to fully respond to RFPs 4-8,[4] 17-33, and 36-37, despite this court's prior Order compelling her to do so. (*See* ECF Nos. 283; 304-1 at 5-8.) Plaintiffs again ask the court to compel Hynie to answer[5] and sanction Hynie based on her conduct regarding Plaintiffs' First and Second Motions to Compel. (ECF No. 304-1 at 10.) The court examines the substance of the instant Motion before turning to the request for sanctions.

### A.  RFP Responses

When the moving party claims an opposing party maintains possession, custody, or control of certain responsive documents that have not been produced, the movant "must have a colorable basis for its belief that relevant, responsive documents exist and are being improperly withheld." *Susko v. City of Weirton*, 5:09-CV-0001, 2011 WL 98557, at * 4 (N.D. W. Va. Jan. 12, 2011). "Mere speculation that documents exist is insufficient to compel production."*Knisely v. Nat'l Better Living Ass'n, Inc.*, No. 3:14-CV-15, 2014 WL 12710395, at *2-3 (N.D. W. Va. Oct. 15, 2014) (compiling cases); *see Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 252 (M.D.N.C. 2010) ("[E]ven an informed suspicion that additional non-privileged documents exist

---

[4] Plaintiffs initially state Hynie failed to respond to RFPs 1-8. (ECF No. 304-1 at 6-7.) However, in their Reply, they seem to properly limit their contentions to RFPs 4-8, which concern the undisclosed agreement, rather than RFPs 1-4, which concern other previously disclosed agreements. (*See* ECF No. 309 at 6-7.)

[5] Alternatively, Plaintiffs seek an Order requiring Hynie and her counsel to provide "very detailed sworn declarations" to explain why "material logically in an opposing party's possession remains unaccounted for[.]" (ECF No. 304-1 at 9 (citing *Osucha v. Alden State Bank*, No. 17-CV-1026-LJV, 2020 WL 3055790 (W.D.N.Y. June 9, 2020)).)

. . . cannot alone support an order compelling production of documents."). "Instead of presenting merely a theoretical possibility that documents exist, 'courts have insisted that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed.'"[6] *Knisely*, 2014 WL 12710395, at *2-3 (first citing *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008), and then citing *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 313 (S.D.N.Y. 2003) (holding additional discovery was mandated where plaintiff knew that defendant's production was insufficient because plaintiff herself produced numerous responsive documents)). *See also Paull Assocs. Realty, LLC v. Lexington Ins. Co.*, No. 5:13-CV-80, 2014 WL 12596397, at *4 (N.D.W. Va. Jan. 9, 2014) ("By stating to [p]laintiff that it has produced all documents it determines to be nonobjectionable or not confidential, Defendant's response 'hides the ball' by leaving Plaintiffs 'wondering . . . what documents are being withheld.'") (quoting *Athridge v. Aetna Casualty and Surety Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998)).

*(1) RFPs 4-8*

RFPs 4-8 focused on undisclosed agreements related to certain termination rights, terminations, notices, and compositions, and sought all non-identical copies of such agreements, as well as any documents or communications related to the agreements (including the negotiations or interpretations thereof). (ECF No. 257-10 at 10-11.) The court previously ordered Hynie to answer these RFPs and "produce the [u]ndisclosed [a]greements, [d]isclosed [a]greement, and

---

[6] Moreover, according to Rule 26(g), "by signing discovery requests, parties certify that after reasonable inquiry they believe that their responses to discovery requests are complete and correct as of the time made and that those responses and or objections are warranted by existing law." *Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 WL 3895933, at *4 (E.D. Va. Aug. 8, 2014), *objections overruled*, 39 F. Supp. 3d 752 (E.D. Va. 2014), and *aff'd sub nom. Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572 (4th Cir. 2015) (citing *In re Outside Wall Tire Litigation*, No. 1:09-CV-01217, 2011 WL 5357913 (E.D.Va. Nov. 7, 2011)); *see Knisely*, 2014 WL 12710395, at *2-3.

other responsive, non-privileged materials consistent with this Order and subject to the terms of a protective order[.]" (ECF No. 283 at 15.) In response to these RFPs, it appears Hynie's only newly-produced materials were three copies of a one-page, previously undisclosed agreement.

Plaintiffs stress "it strains all credulity that Hynie and/or her counsel lack possession, custody[, or] control of" any other responsive documents, such as "those relating to the negotiations and workings of her centrally important and financially significant [u]ndisclosed [a]greement."[7] (ECF No. 304-1 at 8.) Plaintiffs point out that Hynie produced "[n]o drafts, no emails or other correspondence, whatsoever, not even correspondence enclosing the [u]ndisclosed [a]greement for signature or enclosing the executed agreement—all of which logically comport with the experience of civilians and attorneys alike." (ECF No. 309 at 7.) Highlighting the absurd lack of production, Plaintiffs continue, is the fact that Hynie produced 478 pages of "drafts and versions of the [d]isclosed [a]greement containing digital redlines and comments, as well as extensive email communications whereby the parties negotiated and discussed its terms, that had far less economic consequences than those in the [u]ndisclosed [a]greement." (*Id.*) Relatedly, Plaintiffs posit that even if the undisclosed agreement "was created during an informal in-person mediation session under time pressures" as Hynie insists, at minimum Hynie should have produced "the correspondence setting up (and corroborating) this multi-party meeting [because it] is obviously related to the [u]ndisclosed [a]greement[.]" (*Id.* at 7-8 (emphasis removed).) Plaintiffs go on to assert Hynie's lack of production is even more egregious when considering the "implication that in *the years* between the [u]ndisclosed [a]greement and the commencement of this action . . . Defendants Hynie and Bauknight (including their respective counsel) *never*

---

[7] Plaintiffs also insists that Hynie has demonstrated a "pattern of concealment" and repeatedly "bent the truth to suit her objectives" throughout litigation at the state and federal level. (ECF No. 309 at 2-6.) Plaintiffs outline various examples they believe support this assertion. (*See id.*)

discussed or mentioned the [u]ndisclosed [a]greement in correspondence, despite its critical significance to them and to the Estate and Charitable Trust." (*Id.* at 8 (emphasis in original).)

Plaintiffs' contentions do not stop there, as they next turn to Hynie's own responses to the instant Motion and supporting attachments as proof that additional responsive documents exist.[8] Plaintiffs emphasize that "[i]n Bauknight's Affidavit, he contends that there was a 'second unsigned [w]ill' which supposedly motivated the parties to quickly agree to, create[,] and execute the [u]ndisclosed [a]greement." (*Id.* at 9.) Plaintiffs assert this purportedly unsigned will would be relevant and responsive to RFPs 4-8, as it was related to the creation of the undisclosed agreement. (*Id.*) Likewise, and somewhat by contrast, Plaintiffs claim that "Medlin's Declaration raises serious questions as to whether an actual unsigned [w]ill even exists" because "Medlin merely assert[ed] that he received an affidavit from an unnamed 'respected entertainment lawyer from Illinois' stating that 'to the best of his recollection' that James Brown had come to the Illinois lawyer and told him to draft a new will." (*Id.* at 9-10.) Plaintiffs observe that Medlin goes on to highlight the terms that the unsigned will *would have* provided, despite not attaching any unsigned will or affidavit from said Illinois lawyer. (*Id.* at 10.) Plaintiffs insist this alleged affidavit from an unnamed Illinois lawyer is responsive to the undisclosed agreement. (*Id.*) Plaintiffs also emphatically stress the Medlin Declaration and Bauknight Affidavit do not "affirm that they conducted any investigation or search for such documents" except for Bauknight's assertion that he searched for 'electronic and hard copy *drafts*' of the undisclosed agreement[,]" which is significantly narrower than the documents sought by the relevant RFPs. (*Id.* at 11 (emphasis

---

[8] In support of her Response, Hynie offered the affidavit of Thomas Haffey ("Haffey Affidavit") and the declaration of Alan Medlin ("Medlin Declaration"), both of whom are her counsel. (*See* ECF Nos. 308-1, 308-3.) She also offers the Affidavit of co-Defendant Bauknight ("Bauknight Affidavit"). (*See* ECF No. 308-2.)

added).) Finally, Plaintiffs exasperatedly point out that Hynie again claims certain documents dated on or after March 8, 2017, are subject to a "common interest privilege." (*Id.* at 12.) Plaintiffs note Hynie has failed to invoke any particular privilege or provide a privilege log for these materials. (*Id.*)

In her Response, Hynie declares she "produced every document in her possession regarding the '[u]ndisclosed [a]greement' that was created in 2015 and in existence prior to the date of the filing of the Summons and Complaint." (ECF No. 308 at 3.) She also claims the dearth of relevant documents surrounding the undisclosed agreement is because the agreement "was created in a short period of time during in-person discussions." (*Id.*) To justify not producing responsive documents dated after the initiation of this case, Hynie simply asserts "[t]he [c]ourt . . . held that the common interest doctrine/joint defense was not available to counsel for the Defendants for negotiations and communications related to the '[u]ndisclosed [a]greement' as they were on opposite sides of the agreement until it was executed." (*Id.*) Hynie also points to the statements within the Medlin Declaration and Bauknight Affidavit for support.

Here, the court finds Hynie violated the court's prior Order compelling her to respond to RFPs 4-8. Specifically, Plaintiffs' above contentions have raised more than a "colorable basis" and permit at bare minimum a "reasonable deduction" that other responsive documents exist but were not produced. *See Knisely*, 2014 WL 12710395, at *2-3. It seems wholly implausible that Defendants created only two copies of a financially significant, one-page agreement after an "informal mediation" and did not write a single word related to the undisclosed agreement either before or after its execution.

Hynie's reasoning as to why no drafts or related communications exist—i.e., because the undisclosed agreement "was created in a short period of time during in-person discussions"—is

wholly deficient. (ECF No. 308 at 3.) Her attached documentation supporting this assertion likewise falls short. By affidavit, Bauknight claims the undisclosed "agreement was drafted during an [in person,] informal mediation session on December 15, 2015[,] between . . . Medlin, and [Bauknight's] law firm[.]" (ECF No. 308-2 at 3.) He further states "time was of the essence because, absent the settlement, [Hynie] . . . intended to file a second unsigned [w]ill of James Brown and . . . said [w]ill did not include a charitable residuary clause for scholarships." (*Id.* at 4.) Bauknight further insists that this arm twisting, "coupled with the [state] court's determination [in 2015] that [Hynie] was the surviving spouse of James Brown[,] made the timing important." (*Id.*) As an apparent justification for the absence of drafts or other communications, Bauknight simply claims it "was a confidential settlement agreement that was hand-delivered by my attorneys and to me and to the Attorney General for signature." (*Id.*) The court does not find this account particularly helpful in explaining why no other versions, or at least *any* relevant correspondence, exist regarding the undisclosed agreement.

Medlin's Declaration is even more perplexing. Rather than referencing the purportedly unsigned will, he claims he "obtained" an affidavit "from a respected entertainment lawyer from Illinois, who stated under oath that [the Illinois lawyer] had a trusted relationship with James Brown [and] that James Brown had come to [the Illinois lawyer], to the best of his recollection, in 2006 to have that lawyer draft a will that James Brown told him he intended to execute." (ECF No. 308-3 at 4.) This affidavit purportedly claimed the unsigned "will would provide a 17 percent share to [Hynie] and a 5 percent share to James Brown II[,]" while providing "no share for Plaintiffs[.]" (*Id.*) The affidavit also allegedly asserted the unsigned will "would have reduced any charitable share in the probate estate by at least one third and did not include a charitable residuary clause for scholarships." (*Id.*) And as for the lack of additional responsive documents, Medlin

11

expounds that the undisclosed agreement was a confidential settlement agreement, and he "kept written communications related to the litigation to a minimum" based on a prior incident whereby Hynie's personal diary "was taken from [her] home without permission . . . . and published[.]" (*Id.* at 5.)

Yet even assuming that an unnamed Illinois lawyer swore he drafted a new, unsigned will at James Brown's direction in 2006; this unsigned will contained the terms that Medlin outlines; and Hynie leveraged either the affidavit or an unsigned will into a one-page, financially significant settlement from the Estate after one "informal mediation," the court finds Medlin's account insufficiently explains the lack of responsive materials to RFPs 4-8 beyond those produced by Hynie.

Indeed, even more troubling is the fact the Medlin Declaration and Bauknight Affidavit, which Hynie filed in support of her Response, reveal additional responsive documents to RFPs 4-8. According to Medlin and Bauknight, Hynie has in her possession either an unsigned will drafted at the direction of James Brown or, at minimum, an affidavit by an unnamed Illinois lawyer that attests to the will's existence. Medlin and Bauknight explicitly acknowledge one or both of these materials directly influenced the undisclosed agreement's creation and execution. Consequently, the court finds these materials meet the threshold of being relevant, proportional, and therefore responsive to RFPs 4-8.[9] Hynie likewise offers no reason to suggest otherwise. *See Oppenheimer*, 2020 WL 4732238, at *2 ("[T]he party or person resisting discovery . . . bears the burden of persuasion.").

Further responsive (and unproduced) materials are potentially revealed by the revelation that an "informal mediation session" led to the undisclosed agreement's creation. (ECF No. 308-

---

[9] As noted above, discoverable material is not required to be admissible. FED. R. CIV. P. 26(b)(1).

12

2 at 3.) Plaintiffs correctly assert that any communications scheduling this mediation are relevant, proportional, and thus responsive to RFPs 4-8, as, at minimum, such correspondence would corroborate the session in which the undisclosed agreement was purportedly drafted actually occurred.

Lastly, Hynie has insufficiently invoked privilege for responsive documents to RFPs 4-8 dated after the initiation of this case. The fact Hynie says so little but relies so heavily on privilege and the common interest doctrine is puzzling, particularly after the court's prior analysis on this very issue and considering the instant matter is Plaintiffs' *Second* Motion to Compel. As the court previously noted, "the common interest/joint defense doctrine is an exception to the waiver of privilege, and '*presupposes the existence of an otherwise valid privilege*.'" (ECF No. 283 at 14 (quoting *In re Grand Jury Subpoenas*, 89-3 & 89-4, John Doe 89-129, 902 F.2d 244, 249 (4th Cir. 1990)).) *See Hunton & Williams v. U.S. Dep't of Just.*, 590 F.3d 272, 277 (4th Cir. 2010) ("The common interest doctrine permits parties whose legal interests coincide to share *privileged* materials with one another in order to more effectively prosecute or defend their claims." (emphasis added) (citation omitted)).

Yet Hynie has again responded inadequately, apparently believing a blanket, unspecified privilege automatically covers all responsive documents created after the initiation of this lawsuit. Her belief is mistaken. *See Carolina Power & Light Co. v. 3M Co.*, 278 F.R.D. 156, 159 (E.D.N.C. 2011) (discussing the circumstances in which the work-product privilege is inapplicable, despite the fact this privilege normally extends to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative"); *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996) (listing the required elements to apply the attorney-client privilege and noting "the privilege is not favored by federal courts and is to be strictly

13

confined within the narrowest possible limits consistent with the logic of its principle" (citation and internal marks omitted)). Hynie does not identify which specific responsive documents she is withholding, which privilege she claims is applicable to these documents, why she believes the privilege is applicable, and/or why such documents should not otherwise be produced. In fact, Hynie offers little to nothing else on this topic beyond the one sentence quoted above. As Hynie has again failed to assert any privilege, the common interest doctrine is again inapposite.

Additionally, the Haffey Affidavit does not aid the court's analysis on this issue. Haffey states that "[t]he privilege log produced by the Estate on August 17, 2020[,] did not identify any communications between or among Defendants' counsel drafted after January 12, 2018 and did not contain any documents related to the [u]ndisclosed [a]greement . . . other than" the agreement itself. (ECF No. 308-1 at 4.) Haffey further asserts "[t]he privilege logs produced by the LSA and the Plaintiffs also did not identify any communications after the date of filing of the Complaint, nor did they identify any documents related to the [u]ndisclosed [a]greement[.]" (*Id.*) But glaringly absent from these statements are whether *Hynie* possesses responsive documents to RFPs 4-8 created after the initiation of the instant lawsuit. (*See id.* at 3 (Haffey stating that he, "together with . . . Medlin . . . produced all responsive documents that were created *prior* to the date of filing of Plaintiffs' Summons and Complaint (January 12, 2018)." (emphasis added)).)

At bottom, the court finds Hynie violated its prior discovery Order compelling her to respond to RFPs 4-8. Hynie is again ordered to fully respond to RFPs 4-8 in accordance with this Order, including any responsive communications scheduling the informal mediation at which the undisclosed agreement was purportedly drafted. Moreover, Hynie is further ordered to produce responsive documents to RFPs 4-8 that were created or dated on or after the initiation of the instant

suit in accordance with this Order, as she has not demonstrated that any privilege attaches to such documents.[10] The court discusses sanctions for Hynie's discovery violations below.

### (2) RFPs 17-20

RFPs 17-20 concerned certain communications with Plaintiffs regarding a potential settlement agreement, certain communications related to Plaintiffs' counsel Marc Toberoff, and communications between Hynie and Plaintiffs related to certain compositions. (ECF No. 257-10 at 13-14.) The court previously ordered Hynie to answer these RFPs "consistent with [the] Order . . . to supplement any incomplete responses, including to the extent she withheld materials solely because they were alleged to be confidential." (ECF No. 283 at 18.)

Plaintiff claims that "Hynie produced just a few responsive emails, and no otherwise responsive documents appear to be listed on her privilege log." (ECF No. 304-1 at 7.) They further observe "[i]t is very unlikely that this [production] is the full extent of her responsive documents[,]" and that Hynie did not address RFPs 17-20 in her Response. (ECF No. 309 at 12-13.) Hynie indeed does not appear to respond to Plaintiffs' contentions regarding RFPs 17-20. Regardless, the court finds that Plaintiffs have not offered a colorable basis for their belief that additional responsive documents have been withheld regarding these RFPs. *See Kinetic Concepts*, 268 F.R.D. at 252 ("[E]ven an informed suspicion that additional non-privileged documents exist . . . cannot alone support an order compelling production of documents.").

---

[10] Were this Hynie's first discovery violation, or if the parties had any benefit of the doubt left unspent, the court might have been inclined to address these matters differently. However, given the continued pattern of discovery concerns, the rapidly approaching trial date, and the fact this case is over three years old, the court believes its ruling on these matters is appropriate.

*(3) RFPs 21-33, 36-37*

RFPs 21-33 and 36-37 requested materials involving certain music publishers and entities for various compositions, termination notices, agreements, negotiations or interpretations of such agreements, and other communications. (ECF No. 257-10 at 14-17.) Specifically, RFPs 21-23 sought all communications and agreements between Defendants and Shot Tower Capital ("Shot Tower") regarding certain compositions and termination notices. (*Id.* at 14.) RFPs 24-27 requested all non-identical copies of a 2015 agreement with Warner Chappell Music ("WCM"), any documents related to negotiating or interpreting the agreement, and all other communications related to the agreement. (*Id.* at 14-15.) RFPs 28 and 29 focused on all communications related to WCM and certain compositions or termination notices. (*Id.* at 15.) RFP 30 concerned all communications between Peter Afterman[11] and WCM regarding certain compositions and termination notices. (*Id.*) RFPs 31 and 32 addressed all communications between Medlin and WCM regarding certain compositions, termination notices, and Hynie. (*Id.* at 15-16.) RFP 33 asked for all communications between Medlin and/or Afterman regarding either WCM or Toberoff. (*Id.* at 16.) RFP 36 expansively asked for all communications with any music publisher regarding termination notices. (*Id.*) Lastly, RFP 37 sought all communications with music publishers ASCAP or BMI regarding the termination notices. (*Id.* at 16-17.)

The court previously ordered Hynie to answer these RFPs "consistent with [the] Order . . . to supplement any incomplete responses, including to the extent she withheld materials solely because they were alleged to be confidential." (ECF No. 283 at 18.)

Plaintiff insists Hynie did not produce:

---

[11] Peter Afterman is a non-attorney music consultant who Hynie has claimed was an agent of her attorney. (*See* ECF No. 283 at 15.)

16

> [M]any responsive communications by her counsel . . . Medlin or "agent" Afterman
> with WCM and there were literally no communications regarding other music
> publishers as requested, or correspondence with Bauknight or the Estate/Trust's
> counsel regarding the sale of Hynie's termination interest even though[,] according
> to the Disclosed Settlement Agreement[,] . . . Medlin was intimately involved along
> with Afterman in efforts to monetize Hynie's perceived termination interests. That
> Hynie possesses no such responsive documents is again not the least bit credible,
> as her final agreements with WCM, according to WCM's head of business affairs,
> were the result of a bidding war with other music publishers over the same
> terminated compositions. It is also not credible that Hynie has no documents
> concerning Shot Tower, as it is widely known that the investment banking firm
> Shot Tower . . . was actively soliciting buyers for the subject compositions—
> including Hynie's termination interests.

(ECF No. 304-1 at 8 (internal citations omitted).)

Hynie offers a scattered and incomplete retort. She insists she produced communications

between Afterman and Medlin in response to RFPs "9-16, 24, 25, 28, 30, 33, and 37[.]"[12] (ECF

No. 308 at 4.) She also cites to the Haffey Affidavit, which broadly states that Hynie "produced

118 emails and documents from her privilege log that were in addition to the 124 emails between

. . . Medlin and . . . Afterman[.]" (ECF No. 308-1 at 3.) From there, Hynie claims she does not

"have any documents or communications involving Shot Tower[.]" (ECF No. 308 at 4.) She further

maintains she produced two agreements with WCM, as well as all drafts of the agreements, and is

"unaware of any versions that were not produced." (*Id.*) She also points out that Bauknight has

stated under oath that he is "unaware of any further responsive documents other than was

previously produced by other Defendants." (*Id.* at 6 (emphasis removed).) Although not cited, the

court notes the Medlin Declaration likewise echoes these assertions. (ECF No. 308-3 at 6-7.)

Otherwise, the only remaining support Hynie tangentially offers is her general claim elsewhere in

her Response that she has "assiduously complied with the [c]ourt's Order, is not in possession of

---

[12] RFPs 30 and 37 do not appear to request, or potentially cover, communications between Medlin
and Afterman.

any other responsive materials, and cannot produce documents which [she does] not have or do not exist." (ECF No. 308 at 1.)

Here, the court finds Hynie violated portions of the court's prior discovery Order. As an initial matter, the court finds Plaintiffs have not raised a colorable basis that additional responsive communications between Afterman and Medlin exist. The court reaches the same conclusion regarding any other potential versions of the WCM agreement. *See Kinetic Concepts*, 268 F.R.D. at 252 (explaining an "informed suspicion" alone is insufficient to order documents be compelled).

However, Plaintiffs have raised a colorable basis that at least some responsive communications exist regarding Shot Tower and are—or should be—in Hynie's possession. In October 2018, Plaintiffs provided the declaration of Toberoff, their counsel, who, under penalty of perjury, stated that he

> was informed by representatives of three music publishing companies in Los Angeles and New York that the investment banking firm Shot Tower Capital LLC had recently contacted them, offering to sell or license rights to James Brown's musical compositions, on behalf of the Estate and Trust of James Brown and Hynie without disclosing that such rights are contested, in whole or in part, in this lawsuit and substantially impacted by the appeal of Hynie's spousal claim in South Carolina state court.

(ECF No. 96-1.) In her Response, Hynie simply offers a conclusory, one sentence repudiation of possessing any responsive materials regarding Shot Tower. Toberoff's declaration and Hynie's thoroughly unsatisfactory response leads to the reasonable deduction that at minimum communications should exist between Hynie and Shot Tower.

Further, Hynie has entirely failed to mention, much less address, whether she possesses numerous categories of documents sought by the instant RFPs. Such categories include those in RFPs 24-29 requesting all communications related to the WCM agreement, certain compositions, or termination notices; RFP 30 specifically requesting communications between Afterman and

WCM; RFPs 31 and 32 specifically requesting communications between Medlin and WCM; RFP 36 requesting all communications with any music publisher regarding termination notices; and RFP 37 requesting all communications with ASCAP or BMI regarding termination notices. (*See* ECF No. 257-10 at 14-17.) Hynie's silence on whether she possesses any responsive documents within these categories—at this stage in the case's litigation and after previously being ordered to respond—is inexplicably deafening. The court finds Hynie's failure to respond amounts to violations of its prior discovery Order. *See Basf Plant Sci., LP*, 2019 WL 8108060, at *2 ("When a motion to compel discovery is filed, the party resisting the discovery generally bears the burden to prove why the requested evidence is not discoverable." (citation omitted)).

In sum, the court finds Hynie violated its prior discovery Order compelling her to fully respond to RFPs 21-32[13] and 36-37. Hynie is again ordered to fully respond to RFPs 21-32 and 36-37 in accordance with this Order. The court discusses sanctions for Hynie's discovery violations below.

### B. <u>Sanctions</u>

Rule 37(c) allows for sanctions "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)[.]" When deciding whether to impose sanctions, the court should examine "(1) whether a party violated a discovery order or Federal Rule of Civil Procedure; (2) whether the violation was 'harmless' or 'substantially justified;' and (3) which sanction is appropriate for the violation." *Certain Underwriters at Lloyd's, London Subscribing to Policy No. BO823PP1308460 v. AdvanFort Co.*, No. 1:18-CV-1421-TSE-TCB, 2019 WL 3366103, at *4

---

[13] As explained *supra*, Hynie adequately responded to RFP 33, which sought communications between Medlin and Afterman.

(E.D. Va. July 25, 2019) (quoting *Vir2us, Inc. v. Invincea, Inc.*, 235 F. Supp. 3d 766, 772 (E.D. Va. 2017)).

> When determining whether a violation was harmless or substantially justified,
>
> a district court *should be guided* by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (citation and internal marks omitted) (emphasis in original) (noting district courts retain "broad discretion" and are "not required to tick through each" factor).

The court must further determine the appropriate sanctions by reviewing "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Id.* (quoting *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998)).

Plaintiffs allege that Hynie again failed to fully respond to certain RFPs and has now violated the court's prior discovery Order. (ECF No. 304-1 at 10.) Further, "given the contents of the [u]ndisclosed [a]greement, [the actions of Hynie and her counsel] . . . can no longer objectively be viewed as having been taken in good faith." (*Id.*) Moreover, as such violations are not substantially justified, and coupled with Hynie's history of discovery abuses, Plaintiffs posit that the need for deterrence is high. (*Id.*) Plaintiffs also reference the "considerable expense and delay" Hynie and her counsel have caused based on the two Motions to Compel. (*Id.*) In her Response,

Hynie does not appear to address the matter of sanctions against her, instead simply insisting it is Plaintiffs who should be sanctioned.[14] (ECF No. 308 at 5.)

Here, the court holds in abeyance its ruling on sanctions against Hynie, including whether Hynie's conduct is sanctionable and, if so, the appropriate sanctions to impose against her. Moreover, as Hynie's own Second Motion to Compel against Plaintiffs and Motion to Confirm Confidential Designations remain pending (*see* ECF Nos. 297, 314); Plaintiffs have represented they intend to bring yet *another* Motion to Compel—this time against Bauknight (*see* ECF No. 316 at 2); and mediation is scheduled to occur on March 24, 2021 (*see* ECF No. 315), the court finds it suitable to hold its analysis of possible sanctions against Hynie in abeyance.[15]

## IV.    CONCLUSION

After careful consideration, the court **GRANTS** in part and **DENIES** in part Plaintiffs' Second Motion to Compel as set forth herein. (ECF No. 304.) The court **HOLDS IN ABEYANCE** its ruling on potential sanctions against Hynie until the resolution of the Motion to Confirm Confidential Designations, Second Motion to Compel against Plaintiffs, and/or mediation

---

[14] Hynie briefly and vaguely hurls accusations of sanctionable conduct against Plaintiffs. (ECF No. 308 at 5.) The court finds these particular assertions are without merit.

[15] The court intends to review Hynie's arguments made in opposition to the First Motion to Compel, particularly as the court has now read the produced undisclosed agreement and can more readily determine if any prior contentions were brought in bad faith. The court notes a broad array of sanctions are available to remedy discovery misconduct. *See also Flame S.A. v. Indus. Carriers, Inc.*, No. 2:13-CV-658, 2014 WL 3895933, at *4 n.6 (E.D. Va. Aug. 8, 2014), *objections overruled*, 39 F. Supp. 3d 752 (E.D. Va. 2014), *and aff'd sub nom. Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572 (4th Cir. 2015) ("As a general proposition, the trial court has broad discretion to permit a [fact-finder] to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence. While a finding of bad faith suffices to permit such an inference, it is not always necessary." (quoting *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993))).

scheduled for March 24, 2021.[16] (*See* ECF Nos. 297, 314, 315.)

       **IT IS SO ORDERED.**

                                                 *J. Michelle Childs*

                                          United States District Judge

March 19, 2021
Columbia, South Carolina

---

[16] As previously noted, Plaintiffs have stated they intend to bring a Motion to Compel against Bauknight. (*See* ECF No. 316 at 2.) The court's ruling on Hynie's sanctions may likewise be held in abeyance until the resolution of such a Motion.

22